# EXHIBIT B

ORIGINAL FILED
Los Angeles Superior Court

MAY 07 2009

John A. Clarke, Clerk
By A. Kidder, Deputy

## Final Decision

Plaintiff filed his Complaint against Defendants Silberstein, ("Silberstein") Double S Development, LLC (hereinafter "Double S"), DSD Homes, LLC ("DSD"), Syndicate Exchange Corp., ("SEC"), and DROY Properties, LLC ("DROY") alleging causes-of-action: (1) breach of contract (2) Common Count-Money Lent, (3) Common Count-Money Had and Received, (4) Fraud, (5) Set Aside Fraudulent Conveyance, (6) Constructive Trust. Defendants filed his answers containing several affirmative defenses. The court granted a Plaintiff motion for Summary Judgment against Double S as to 1st, 2nd and 3rd causes of action. Double S is currently in bankruptcy. Upon submission of the case, counsel stipulated that court's decision shall serve as a Statement of Decision pursuant to CCP §632.

The Court finds as follows with respect to the Complaint (hereinafter "Complaint"):

| | |
|---|---|
| Paragraph 1: | True |
| Paragraph 2: | True |
| Paragraph 3: | True |
| Paragraph 4: | True. Further SE is a corporation controlled by Defendant Silberstein. |
| Paragraphs 5-6: | True |
| Paragraphs: 7-8: | The alter ego allegations are deferred until later in this ruling |
| Paragraphs 9-10: | no findings |
| Paragraph 11: | Alleges as follows: In or about May 2004, Silberstein and Plaintiff met to discuss the making of a loan by Plaintiff to Silberstein. Silberstein represented that money would be used in connection [sic] various real estate investments, including that certain real property owned by Double S, located in Montgomery County, State of Texas, consisting of approximately 800 lots, with a value that Silberstein represented to be $6,000,000.00 (the "Double S Property"). Silberstein represented that, as a result of its substantial assets, there was no risk that Plaintiff would not be repaid. Silberstein was to prepare a note to represent the debt. |

The Court finds the above paragraph true. The facts establish that Defendant Silberstein and Richard Segal, Plaintiff's accountant, were business partners involved with the Double S Property. Plaintiff testified that Richard Segal "set up" a meeting in May of 2004 at Jerry's Deli with Defendant Silberstein. At this meeting Defendant Silberstein handed Plaintiff Exhibit 14, which is a false balance sheet of Double S's alleged assets. Exhibit 14 overstates Double S assets by more than 6 million dollars representing that Double S owned assets that had been transferred to another corporation months before.

EXHIBIT "B"
[Page 1 of 9]

Page 2 of 9
Final Decision
May 7, 2009, 2009

Defendant argues that he did not attend this meeting. Although Defendant posed hostile questions to Plaintiff when Plaintiff was testifying, Defendant offered no testimony contradicting Plaintiff's version of events. At best there is Exhibit 52, Silberstein's declaration setting forth Silberstein's denials. The Court finds no credibility to such denials when Silberstein neglected to testify and thereby subject himself to cross examination on these issues.

Defendant next argues that responsibility for the fraud lies with his business partner Richard Segal, because Segal brought Plaintiff into this transaction and knew everything Silberstein knew. Defendant's arguments are meritless. Merely because Silberstein's partner knew of the fraud does not change the fact that Silberstein personally participated and directed the fraud. See below Paragraphs 30-31, United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 594-595. Defendant Silberstein by his own admission prepared Exhibit 14 and used same to obtain financing. The $250,000.00 loan from Plaintiff was financing, if only a small part of the total amount allegedly sought by Double S. Therefore, Plaintiff was lured into the fraudulent trap set up by Plaintiff whether Plaintiff attended the meeting or not.

Paragraphs 12-15: Allege as follows:

> 12. On or about June 1, 2004, Silberstein, by and through Double S, executed and delivered to Plaintiff, a Promissory Note for the sum of two hundred and fifty thousand dollars ($250,000.00) (the "Double S Note") bearing an interest rate of 8.00% per annum from June 1, 2004 to September 1, 2004 the date of maturity.
> 13. On the basis of the representations of Silberstein, Plaintiff delivered a check to Silberstein in the amount of $250,000.00 (the "Double S Loan")
> 14. The Double S Note became due and payable on September 1, 2004. Plaintiff has made several demands for payment. On or about February 15, 2005, Silberstein wrote Plaintiff a letter, advising that he was unable to pay the Double S Note. Enclosed with the letter was a check drawn on SEC's account in the amount of $25,000.00, for accrued interest.
> 15. The Double S Note remains due, unpaid and outstanding.

The Court finds each of the above paragraphs are true. The Double S Note is Exhibit 1 and the February 15, 2005 letter and check constitute Exhibit 2.

The complaint's next paragraphs 16-27 deal with the first three contractual causes of action against all defendants. Since these paragraphs have already been found to be true with

Page 3 of 9
Final Decision
May 7, 2009, 2009

respect to Defendant Double S, the Court will defer ruling on these paragraphs as to Defendant Silberstein until later in this decision.

**Fourth Cause of Action for Fraud against all Defendants**
Paragraph 28: no findings
Paragraph 29: True. This Paragraph basically restates Paragraph 11. Further, the Court finds that Plaintiff was never advised that Double S assets would be or could be held or secured by other entities controlled by Defendant Silberstein, including DSD Holmes, Adventure Development, Port Adventure, Sage Village LLC., or SEC. Further, Plaintiff was told he would be paid back when Double S received its bank financing and that such financing was "imminent" and would come through "anytime." However, the testimony established neither Double S nor Defendant Silberstein or any entity controlled by Defendant Silberstein had ever been advised that such financing was pending or available.

Paragraphs 30-31: True. Defendant admitted that he transferred the Double S property out of the corporation on February 19, 2004 and that Double S was not an "operating entity" thereafter. At the trial Defendant denied that Double S was a non-operating entity, but was impeached with his own deposition testimony. Such a factual showing clearly establishes Defendant's knowledge that the representations the he made to Plaintiff were entirely false. Further, Plaintiff testified that he neither demanded security for the note nor took a personal guaranty due to the strength represented by the purported assets on the Exhibit 14 balance sheet. Plaintiff testified that he was not in need of additional security due to the fact that his loan of $250,000.00 represented such a small portion of the 7 million of Double S assets. The Court accepts Plaintiff's testimony explaining his justifiable reliance on Defendant Silberstein's misrepresentations:

> So I asked Mr. Silberstein what security I would have in a project of this size. And I was presented with this balance sheet. Mr. Silberstein had explained to me earlier in the meeting, before he gave me this balance sheet, that there was a lot of assets in the corporation. And those assets would easily take care of this. And I asked him, if you know, if there was any security. He told me that he really didn't want to put any security or lien against the property because if he did, he would have a hard time getting loans for the houses when he sold them off.

The Court explained in United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 594-595:

> Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually.... [] Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position,

Page 4 of 9
Final Decision
May 7, 2009, 2009

> unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation. [Citations.] They are not responsible to third persons for negligence amounting merely to nonfeasance, to a breach of duty owing to the corporation alone; the act must also constitute a breach of duty owed to the third person. (19 Am.Jur.2d, 1382.) ... More must be shown than breach of the officer's duty to his corporation to impose personal liability to a third person upon

The Court finds that Defendant Silberstein personally participated in the fraud, directed and authorized the commission of the fraud. All of the above factors from United States Liab. Ins. Co. have been established.

Paragraph 32: The Court finds Paragraph 32 is true:
> As a direct and proximate result of the conduct of Defendants, Plaintiff has been damaged. Plaintiff has been damaged in the amount of approximately $250,000.00, together with interest at the legal rate, or 8%, whichever is greater, from and after September 1, 2004, plus incidental and consequential damages according to proof.

Paragraph 33: Alleges as follows:

> Plaintiff is informed and believes and on the basis of said information and belief alleges that Defendants' fraudulent conduct was taken with the intent to injure Plaintiff, or with a willful and conscious disregard of Plaintiff's right to property. Plaintiff is informed and believes and on the basis of said information and belief alleges that such fraudulent conduct constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to California Civil Code §3294.

The above portion of Paragraph 33 is true. However, neither Plaintiff nor Defendants sought a ruling from the court delaying the presentation of evidence of financial condition pursuant to CC§3295(d). Further, Plaintiff adduced no evidence of Defendant Silberstein's net worth or that Silberstein owns other valuable assets. Plaintiff objected to the Court's tentative decision setting punitive damages at zero on the basis of a prior agreement with former opposing counsel. However, no evidence of such an agreement was presented at time of trial and counsel has offered no written confirmation of this agreement. Counsel's declaration also claims that he mentioned a request to conduct discovery in his closing argument. Actually, counsel never quested a continuance of trial to reopen discovery. Plaintiff's case management statement indicates that all discovery was to be completed by November of 2008. The Court's Case Management Order of February 7, 2008 orders Plaintiff to complete discovery by such date. Nonetheless, counsel never complied with CC§3295(c) which requires either a pretrial motion to

Page 5 of 9
Final Decision
May 7, 2009, 2009

permit discovery of financial condition or issuance of a trial subpoena for documents or witnesses regarding profits or financial condition. What counsel actually stated in his final argument is as follows:

> ...and further that upon rendering of its decision that the Court set a further proceeding to determine the extent and amount of any punitive damages that should be awarded.

The court notes that CC§ 3295(d) provides "The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition..." In this case there has been no application by any defendant. Additionally, Plaintiff announced ready for trial and never asked the court to bifurcate the trial or file a motion to delay presentation of financial condition. Further the court's Trial Management Order provides that "all motions in limine" must be presented five days in advance of the Final Status Conference. In this matter no such motions were ever presented. In fact, Counsel rested his case without requesting permission of the court to reopen testimony. The declaration attached to Plaintiff's objection to the court's tentative decision states that his motion in limine was withdrawn pursuant to this same non-confirmed stipulation with prior counsel. The court notes that the stipulation reached by counsel would at best constitute an agreement by estoppel, and would not bind the court. However, whether such an estoppel exists would necessarily require a finding by this court after both sides had an opportunity to be heard.. Therefore, since there has been no motion to reopen testimony and no evidence of financial condition presented at the trial, the court sets the amount of punitive damages at zero.

The Court further finds that since the fourth cause of action contains allegations directed only at defendants DSD and Silberstein, the fourth causes of action is established against defendants DSD and Silberstein only.

**Fifth Cause of Action To Set Aside Fraudulent Conveyances against Defendant Silberstein**

Paragraph 34: The Court makes no further findings

Paragraph 35: The Court finds Paragraph 35 alleges to be true:

> The Double S Property was security for certain obligations, including that certain Real Estate Lien Note, dated January 19, 1999, in favor of International Bank of Commerce in the original principal amount of $2,500,000.00 (the "Commerce Note"). The Commerce Note was secured by that certain deed of trust secured against the Double S Property (the "Commerce Deed of Trust").

Page 6 of 9
Final Decision
May 7, 2009, 2009

The Commerce note is Exhibit 12

Paragraph 36: The Court finds this Paragraph true:

> In or about September 2004, Silberstein, by and through SEC, undertook efforts to, and eventually did, purchase the Commerce Note. At that time, Silberstein engineered an alleged default of the Commerce Note in order that Silberstein could cause a foreclosure of the Commence deed of Trust and take title to the Double S Property in the name of SEC.

Exhibit 105, page 14 is the SEC Certificate and Resolution of Approval of the Commerce Note. Defendant Silberstein testified the purpose of this acquisition was to avoid creditors of Defendant Silberstein's partner. In this respect Exhibit 103, page 3 also shows Defendant Silberstein making other transfers of corporate property to avoid creditors. Further, the Court finds that Silberstein is the sole owner of SEC based upon paragraph 3 of his declaration of September 10, 2008, which is page 2 of Exhibit 52. However, the Court notes that Defendant Silberstein's declaration is contradicted by his own documents. Exhibit 105, page 48 shows minutes of an SEC shareholder meeting on January 24, 2008, whereby Defendant Silberstein's transferred shares of SEC to his wife and children.

The Court finds the transfers were made pursuant to facts and circumstances showing that there is (1) a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow. As further explained in Associated Vendors v. Oakland Meat Co. (1962) 210 Cal.App.2d 825, 836-840. 837:

> The general rule is thus stated as follows: " 'Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.' " (Talbot v. Fresno-Pacific Corp., 181 Cal.App.2d 425, 431; Temple v. Bodega Bay Fisheries, Inc., 180 Cal.App.2d 279, 283.)

The Court bases the above findings on all the evidence received at the trial, with particular reliance on the following:

Page 7 of 9
Final Decision
May 7, 2009, 2009

### COMMINGLING OF FUNDS AND OTHER ASSETS, FAILURE TO SEGREGATE FUNDS OF SEPARATE ENTITIES AND UNAUTHORIZED CORPORATE FUNDS OR ASSETS TO OTHERS THAN CORPORATE USES

The Court notes Silberstein is the Managing Member of Double S. The evidence showed that Double S transferred the Double S Property to DSD Homes, LLC. on February 19, 2004. Despite the property transfer divesting Double S of an ownership interest, Double S continued to pay financial institutions, like IBC Bank with respect to the loan. Exhibits 21-24, Double S's accounting records, show that Double S continued to pay many expenses related to the Double S Property months after ownership had been transferred.

### TREATMENT OF THE ASSETS OF THE CORPORATION AS BELONGING TO AN INDIVIDUAL

Along with the failure to account for sale of Double S assets there is an absence of records, minutes or other documents to explain where Silberstein operated the company as separate from his own personal ownership of the assets. In fact there are no corporate minutes or any written explanation to account for the depositing of funds belonging to one entity into the bank account of another entity or why one entity was paying obligations of another entity.

### FAILURE TO MAINTAIN MINUTES OR ADEQUATE CORPORATE RECORDS AND CONFUSION OF RECORDS OF SEPARATE ENTITIES

As noted above, there are many references in the records of Double S paying the obligations of other entities and loans belonging to other entities. There are no corporate minutes whatsoever. There are no records or accountings of revenues or the disposition of over one million dollars in corporate assets. The records fail to supply any reason or justification as to why Double S continued to pay bills and other obligations for the Double S Property it no longer owned or to holders of promissory notes of other Silberstein related companies when Plaintiff, the holder of a Double S promissory note, was not paid.

### DEFENDANT SILBERSTEIN AS THE SOLE SHAREHOLDER

The only other shareholders are in the minority and are members of Silberstein own family. David Silberstein provides the entire supervision and management of these companies. As the only responsible person, David Silberstein is essentially the only shareholder.

### FAILURE TO ADEQUATELY CAPITALIZE

Page 8 of 9
Final Decision
May 7, 2009, 2009

    The evidence established that neither Silberstein nor any company acting through Silberstein ever made any capital contribution to Double S. All sums provided, principally through Syndicate Exchange, were charged as loans.

### USE OF CORPORATION AS SHELL OR CONDUIT

    The Court finds that Siberstein used DSD Homes, LLC, Syndicate Exchange and Double S interchangeably for the single purpose of development of the Property. These corporate entities were managed by Silberstein so that when Double S transferred the Property, Double S was essentially out of business without any property or assets. Then essentially out of business Double S continued to receive the liabilities and expenses while other Silberstein companies received the benefit of disposition of those assets.

### DISREGARD OF LEGAL FORMALITIES

    With respect to the disregard of legal formalities, Double S lacked documentation for most of its transactions with other Silberstein controlled entities and breached its Operating Agreement by failure to keep such records and amend the Operating Agreement in writing as required. Further, the transfer of assets was not at arm's length, but to avoid creditors.

### USE OF CORPORATION PROCURE LABOR OR ANOTHER PERSON OR ENTITY

    As referenced above, Double S paid the expenses for the Property after Double S no longer owner the Property, including payroll expenses.

### MANIPULATION OF ASSETS BETWEEN ENTITIES

    As explained above, Double S assets simply disappeared.

    Finally, to disregard Double S's corporate entity status, there is the requirement that the Court find an inequitable result, bad faith or fraud. In this regard Silberstein argues that he personally lost millions of his own funds on these corporate ventures. Evidently, this argument is that since Silberstein lost his own funds, Plaintiff's loss of $250,000 is insignificant and therefore not an inequitable result. Defendant's argument rings hollow that the Court should distrust Plaintiff's testimony (Evid. Code §412) based on failure to present canceled checks and other documentation supporting Defendant's claims and offers only his testimony to support millions he allegedly put into at least three of his corporations. Even if the Court were to give weight to such testimony, it's only one small piece of Defendant's intricate and overlapping scheme of corporate finance. Without further documentation the Court determines that Defendant did not establish that he placed millions into Double S or any of his other corporations.

Page 9 of 9
Final Decision
May 7, 2009, 2009

In terms of an inequitable result, the next consideration is Silberstein's transfer of the Property owned by Double S, essentially its only asset, to DSD Homes, LLC without consideration. The Court finds that Silberstein's conduct in transferring assets and his failure to account for assets constitute an inequitable result since the missing assets are ten times in value over the face amount of the Promissory Note. In further consideration of an inequitable result the Court looks at the badges of fraud codified in Civil Code §3439.04(b), transfers fraudulent as to present and future creditors. The Court finds there is a substantial basis to find an inequitable result on application of Civil Code §3439.04 to the facts of this case.

Therefore, the Court finds that the corporate entity status of Double S is hereby disregarded and that David Silberstein is personally obligated to Plaintiff for the Promissory Note. Further, the court finds SEC, DROY, and DSD have knowingly participated in the fraudulent transfers herein. Therefore, the court makes the following rulings (1) the transfer of the Double S Property to DSD is hereby set aside, (2) the foreclosure of the Double S property by SEC is found to be a sham; (3) the court sets aside any transfer to the Double S Property from SEC to DROY; and, (4) Defendants Silberstein, SEC, DROY or DSD are enjoined from further transfer or hypothecation of the Double S Property without further order of this court.

The complaint states a sixth cause of action for constructive trust. However, constructive trust is a remedy not a cause of action. Since the court has imposed an injunction against defendants and Plaintiff has adduced no evidence that the Double S Property generates income, there is an absence of good cause necessary to grant a constructive trust. Request for a constructive trust is denied.

**Affirmative Defenses:**

The Court finds no affirmative defense of any defendant has been established.

Court finds Judgment for Plaintiff and costs in the amount of _____ and attorney fees, to Plaintiff against Silberstein in the amount of $250,000.00 (principal sum), together with interest at the legal rate of 10% from June 1, 2004 to present in the amount of _____, together with attorney fee _____ and costs _____.

Counsel for Plaintiff to file proposed injunction orders and set aside orders by May 15, 2009.