1  BENJAMIN S. SEIGEL (SBN 59992)
   MICHAEL L. WACHTELL (SBN 47218)
2  AUSTIN K. BARRON (SBN 204452)
   MATTHEW SEROR (SBN 235043)
3  BUCHALTER NEMER
   A Professional Corporation
4  1000 Wilshire Blvd., 15th Floor
   Los Angeles, California 90017
5  Telephone: (213) 891-0700
   Facsimile: (213) 896-0400
6  Email: bseigel@buchalter.com

7  Counsel for David Seror, Chapter 7 Trustee

8              UNITED STATES BANKRUPTCY COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10            SAN FERNANDO VALLEY DIVISION

11

12  In re:                          Case No: 1:09-bk-12032-MT

13  DOUBLE S DEVELOPMENT LLP,        Chapter 7

14                    Debtor.        **TRUSTEE'S NOTICE OF MOTION AND
                                     MOTION FOR ORDER (A) APPROVING**
15                                   **SALE PROCEDURES IN CONNECTION
                                     WITH THE SALE OF ESTATE'S**
16                                   **INTEREST IN CERTAIN RESIDENTIAL
                                     REAL PROPERTY; (B) AUTHORIZING**
17                                   **THE SALE OF THE RESIDENTIAL REAL
                                     PROPERTY ON AN AS-IS, WHERE-IS**
18                                   **BASIS FREE AND CLEAR OF CERTAIN
                                     CLAIMS, LIENS, INTERESTS AND**
19                                   **ENCUMBRANCES PURSUANT TO
                                     BANKRUPTCY CODE SECTION 363(d)**
20                                   **AND (f); AND (C) GRANTING RELATED
                                     RELIEF; MEMORANDUM OF POINTS**
21                                   **AND AUTHORITIES AND
                                     DECLARATION OF DAVID SEROR IN**
22                                   **SUPPORT THEREOF**

23                                   Auction and Sale Hearing Date:

24                                   Date:    August 30,  2012
                                     Time:    2:00 p.m.
25                                   Place:   Courtroom 302
                                              21041 Burbank Boulevard
26                                            Woodland Hills, CA 91367

27  / / /

28  / / /

1   **TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY JUDGE,**

2   **THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, ITS COUNSEL,**

3   **ANY PURPORTED SECURED CREDITORS, PARTIES ON THE GENERAL SERVICE**

4   **LIST, ALL ENTITIES THAT HAVE EXPRESSED TO THE CHAPTER 7 TRUSTEE AN**

5   **INTEREST IN PURCHASING THE ASSETS TO BE SOLD, ALL ENTITIES KNOWN**

6   **TO HAVE ASSERTED ANY INTERESTS IN OR UPON THE ASSETS TO BE SOLD,**

7   **AND OTHER INTERESTED PARTIES:**

8       **PLEASE TAKE NOTICE** that on August 30, 2012, at 2:00 p.m., in Courtroom 302 of

9   the above entitled Court, located at 21041 Burbank Boulevard, Woodland Hills, California, a

10  hearing will be held on the Motion filed by David Seror, Chapter 7 Trustee  (the "Trustee") For

11  Order (A) Approving Sale Procedures in Connection with the Sale of the Estate's 'Interest in

12  Certain Residential Real Property (B) Authorizing the Sale of the Residential Real Property On

13  An AS-IS WHERE-IS Basis, Free and Clear of Certain Claims, Liens, Interests and

14  Encumbrances Pursuant to Bankruptcy Code Section 363(d) and (f) and (C) Granting Related

15  Relief (the "Motion").   The real property which is the subject of the motion consists of 494

16  residential real property lots located in the city of Conroe, county of Montgomery, Texas

17  (collectively, the "Property").  The terms and conditions of the sale are fully set forth in the Asset

18  Purchase Agreement which is attached to the within Declaration of David Seror as Exhibit "B".

19  In addition to Bankruptcy Code §363, the Motion is brought pursuant to Rules 2002 and 6004 of

20  the Federal Rules of Bankruptcy Procedure (each a "Bankruptcy Rule," and collectively, the

21  "Bankruptcy Rules") and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules ("LBR"). .

22      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of

23  Motion, the following Memorandum of Points and Authorities, the concurrently-filed declarations

24  of Benjamin S. Seigel and David Seror, the concurrently-filed Notice of Sale of Estate Property,

25  the statements, arguments and representations of counsel who appear at the hearing on the

26  Motion, the record in this case, any other evidence properly before the court prior to or at the

27  hearing on the Motion, and all matters of which this Court may properly take judicial notice.

28

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any objection to the relief requested in the Motion must be filed with the Court and served upon counsel for the Trustee and the United States Trustee at least fourteen days prior to the scheduled hearing date for the Motion.  Any objection must be accompanied by any supporting declarations or memoranda that the objecting party wishes to present in support of its position.  If there is no timely objection, the Court may grant the relief requested in the Motion without further notice.

DATED: August 3, 2012

BUCHALTER NEMER
A Professional Corporation


By:  ___/s/ Benjamin S. Seigel_____
      BENJAMIN S. SEIGEL
      Attorneys for David Seror,
      Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The assets of this Estate include [1] 494 residential real property lots comprising the Lake Conroe Village Development in the city of Conroe, county of Montgomery, Texas (the "Property"). Buyer (defined below) has offered to purchase the Property from the Trustee for $741,000.00 ($1,500 per lot). The Trustee believes that a sale of the Property to Buyer, or to a different Prevailing Bidder (as defined in the sales procedures) at the Auction, on substantially the terms and conditions of the Asset Purchase Agreement (the "Sale Agreement") attached to the Declaration of David Seror (the "Seror Declaration") as Exhibit B, is in the best interests of the Debtor's estate. Based on other offers received by the Trustee for the property and the opinions of real estate brokers located in Conroe with whom the Trustee has consulted, the Trustee believes the price offered by the Buyer is fair and reasonable. Moreover, the Trustee believes that Buyer's bid, or a higher Prevailing Bid at the Auction, will establish the current value of the Property. Accordingly, the Trustee asks that the Court authorize the sale of the Property and conduct the Auction of the Property at the date, time and place set forth above. Additionally, the Trustee asks that the Court approve the proposed sales procedures, set forth herein, (the "Procedures"), as fair and reasonable under the circumstances.

## II.

## BACKGROUND

### A.    Jurisdiction and Venue

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the above-captioned case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

///

///

---

[1] Capitalized terms used but not otherwise defined herein have the meaning assigned to them in the appended Notice.

BN 12115309v1                                      4

**MOTION TO AUTHORIZE SALE OF REAL PROPERTY**

B.    **General Background**

On February 25, 2009, Double S Development LLP (the "Debtor") filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California which was assigned Case No. 1:09-bk-12032 MT.  The Trustee was thereafter appointed as the trustee of the Debtor's chapter 7 bankruptcy estate (the "Estate").  One of the primary assets of the Estate was the Estate's interest in a mixed use residential and commercial development located in Lake Conroe Village, county of Montgomery, Texas.  The development includes a total of over 1,000 residential lots.

Given the extremely complex and convoluted history of the Lake Conroe development, the precise number of residential lots in which the Estate has an interest  has fluctuated throughout the pendency of this case.  Shortly following the filing of this case, the Trustee became aware of the judgment entered by the California Superior Court – Van Nuys Division, in the *Schreiber v. Double S Development, et al.*, action ("Schreiber Judgment") which determined that the Estate has an interest in 1,002 residential lots.  Upon further investigations, it was discovered that approximately 249 of the residential lots that were included within the Schreiber Judgment were sold to purported *bone fide* third party purchasers, thereby reducing the Estate's potential portfolio of residential lots to approximately 753.  On other occasions, the Estate's interest was alleged to be much less.  In the Opposition to the Trustee's Motion for Authority to Retain Counsel in Texas, creditors Anthony Otrando and Bert Schreiber, represented by Richard Segal, claimed that the Estate only had an interest in 424 residential lots (See Docket No. 139).

When the Trustee first started to negotiate the sale of the Property, his counsel contacted Republic Title of Texas, located in Dallas, Texas, and requested a title commitment reflected all residential lots held by the Estate.[2]  Republic Title initially issued a title commitment on March 30, 2012 which stated that the Estate had an interest in 1,006 residential lots.  However, following a review of the title commitment, the Trustee and his counsel believed that some lots were erroneously included in the initial commitment and asked Republic Title to re-run the

---

[2] The Court may recall that as a result of a previous settlement, the Estate received all interests in the residential lots held by DSD Homes, DROY Properties, LLC, Syndicate Exchange Corp., David Silberstein, Sandra Silberstein, Lisa Silberstein and Stephen Faden.

commitment.  A revised title commitment was subsequently provided which indicated that the

Estate has an interest in 432 residential lots.  The Trustee believed that the Estate had an interest

in additional lots and asked Republic Title to continue its investigations as to sixty-five (65)

specifically identified lots.  On July 3, 2012 Republic Title issued another title commitment

indicating that the sixty-five additional lots were property of the Estate, resulting in the Estate

having an interest in 494 lots, all of which the Trustee proposes selling pursuant to this Motion

and the Sale Agreement.   A legal description of the Property is attached to the Seror Declaration

as Exhibit A (and is attached to the Sale Agreement as Exhibit 1).

### III.

### THE PROPOSED SALE

The Trustee believes that the proposed sale price represents the highest and best price

available subject to overbid at the time of sale, and that the proposed sale to Buyer is in the best

interests of the bankruptcy estate.  The complete terms of the Proposed Sale are contained in the

Sale Agreement, attached to the Seror Declaration as Exhibit B.  The specific details of the

Proposed Sale are as follows:

1.     **Purchase Price**.  Buyer will purchase all of the Estate's right, title and interest in

the 494 residential lots for $741,000.00 ($1,500 per lot), payable as follows: : (i) $74,100 upon

close of escrow in immediately available funds ($150 per lot) (the "Cash Component"); and (ii) a

promissory note in the amount of $666,900, secured by a first position deed of trust encumbering

all the Property (collectively, with the Cash Component, the "Purchase Price").

2.     **Interest Rate.** The promissory note bears interest at 6% interest per annum and

will fully mature in 30 months, at which point the entire balance will be due and payable.

3.     **Interest Payments.**  Buyer is required to make monthly payments of the accrued

interest;

4.     **Release Price.** Buyer shall pay a $1,500 per lot release price of (to be applied to

outstanding balance then due and owning) to the Trustee in exchange for a partial release of the

aforementioned Deed of Trust as to any specific lot;

5.     **Condition of Property**.  The sale is on an "as-is, where-is" basis.  The Trustee

makes no representations or warranties of any kind as to the condition of the Property.

6.    **Closing**.  The closing of the Proposed Sale shall take place shortly after the entry of an order of the Bankruptcy Court approving the sale (the "Closing"), or upon such other date as Buyer and the Trustee may mutually agree, but in no event later than September 28, 2012.  At the Closing, the Trustee will cause the transfer of title to the Property to Buyer, on an as-is, where-is basis, without any representations or warranties.

7.    **Fees and Costs**.  Escrow fees are being split equally by Buyer and the Trustee. The Trustee shall be responsible for the cost of a standard title policy, while Buyer is responsible for an extended title policy, any endorsements to the policy and for the costs of a Lenders Policy on the aforementioned Deed of Trust.  Each party shall pay their own legal fees and costs incurred in connection with the sale transaction

8.    **Buyer's Contingency**. Buyer's sole contingency is entry of a final order of the court approving the Proposed Sale.

## IV.

## THE COURT SHOULD APPROVE THE PROPOSED SALE PROCEDURES

### A.    The Trustee's Proposed Sales Procedures

If a Qualifying Overbid, as defined below, is received, then the Trustee requests an auction (the "Auction") conducted by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code before the Honorable Maureen Tighe, United States Bankruptcy Judge, contemporaneously with the final hearing to approve the Sale Motion (the "Sale Hearing"), currently set for August 30, 2012 at 2:00 p.m. in Courtroom 302 of the United States Bankruptcy Court, located at 21041 Burbank Boulevard, Woodland Hills, California 91367.  In order to create a fair, orderly and competitive process for the Auction of the Property, the Trustee has proposed the following sale and bidding procedures ("Sale Procedures") with respect to the contemplated Auction of the Property.

1.    Bidder Pre-Qualification for Auction.  Any person or entity that desires to participate in the Auction must be a qualified bidder ("Qualified Bidder").  In order to become a Qualified Bidder, a bidder must satisfy the following requirements:

a.  No later than August 23, 2012, the bidder must deliver to the Trustee's counsel the following: (i) an executed confidentiality and non-disclosure agreement in a form acceptable to the Trustee in accordance with these Sale Procedures; (ii) current financial statements of the bidder, current bank account statements of the bidder or such other form of disclosure regarding the bidder's financial condition acceptable to the Trustee, providing to the Trustee evidence of the bidders having sufficient funds, a commitment for financing or ability otherwise to consummate its proposed Transaction; (iii) a letter setting forth the identity of the bidder, the contact information for the bidder, and full disclosure of any pre-petition or post-petition affiliations that the bidder has or may have with (A) the Trustee, (B) any of the Trustee's affiliates or employees, (C) any creditor of the Trustee, or (D) any of the Trustee's relatives or family members; (iv) an executed letter acknowledging receipt of a copy of the Sale Procedures and agreeing to accept and be bound by the provisions contained therein; (v) a written statement by the bidder that any bid is irrevocable and binding until the closing ("Closing") of the sale of the Property, if the bidder is the Successful Bidder (defined below) or the Back-up Bidder (defined below); and (vi) any other documents reasonably requested by the Trustee.

b.  In addition, a potential bidder will qualify to participate in the Auction only if the potential bidder demonstrates its ability to consummate the Transaction contemplated by the terms of the potential bidder's bid.  The Trustee may decline to recognize a potential bidder as a Qualified Bidder if the Trustee determines reasonably that the potential bidder lacks the ability to consummate timely the proposed Transaction.

c.  The Trustee may take into account several subjective factors in determining whether a bidder will be deemed to be a Qualified Bidder. The Trustee may approve as many or as few Qualified Bidders as he deems

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO AUTHORIZE SALE OF REAL PROPERTY**

1    appropriate for an active and productive sale process.  The Trustee may

2    take into account the concerns of any creditors or other parties-in-interest.

3    d.  By way of example, and not limitation, the Trustee will require that, in

4    order for a bidder to be deemed a Qualified Bidder, the bidder demonstrate

5    to the Trustee that the bidder can obtain timely for consummating the

6    proposed Sale any acquisition and/or working capital financing that the

7    bidder proposes to obtain to fund the proposed Sale, and that the bidder

8    demonstrate to the Trustee that the bidder will be able to close timely the

9    Transaction.

10    e.  <u>Deposit</u>.  In order for a bidder to qualify as a Qualified Bidder, the bidder

11    must provide a cash deposit in the amount of $1,000.00 to the Escrow

12    Agent employed by the Trustee (the "Overbid Deposit"):

13        i.  *Payment of Deposit*.  The Overbid Deposit must be wired to the

14            Escrow Agent, which will be made available upon request.

15        ii.  *Refund of Deposits*.  A Qualified Bidder will be entitled to

16            obtain a refund of its Overbid Deposit (1) upon the Qualified

17            Bidder's giving, prior to the Auction, to the Trustee and his

18            counsel, written request for the refund of the Overbid Deposit

19            ("Refund Notice"), or (2) if the Qualified Bidder's Qualified

20            Bid is not selected as the Prevailing Bid in accordance with the

21            provisions of paragraph 11 hereof.  All Overbid Deposits

22            provided by the Prevailing Bidder will be non-refundable, also

23            in accordance with the provisions of paragraph 11 hereof.

24        iii. Upon a Qualified Bidder's giving any Refund Notice, the

25            Qualified Bidder's bid will be deemed to be rescinded and of no

26            further force or effect.

27    f.  No later than August 27, 2012, the Trustee (or his counsel) will notify each

28    potential bidder whether the Trustee will deem the bidder to be a Qualified

Bidder or whether the Trustee has declined to recognize the bidder as a Qualified Bidder. Buyer is deemed to be a Qualified Bidder, and has the right, but not the obligation, to participate in the overbidding and be approved as the successful Qualified Overbidder.

g. The Trustee's recognizing a bidder as a Qualified Bidder reflects only that the bidder may participate in the Auction, and does not reflect any determination by the Trustee, or by the Bankruptcy Court, that the bidder is capable of consummating the proposed Transaction. The Trustee reserves the right to reject any Qualified Bid as unsatisfactory, or to discount a Qualified Bid relative to other bids, based upon any matter pertaining to the business experience or financial condition of the bidder, or based upon any other matter pertaining to the bidder, that the Trustee believes will impair the Trustee's ability to obtain from the Bankruptcy Court approval of the proposed Transaction with the bidder or otherwise will impair the Trustee's ability to close timely the proposed Transaction with the bidder.

2.  Solicitation and Information to Potential Bidders. The Trustee may give notice of the sale to prospective overbidders, receive and consider unsolicited offers for the Property and provide information to any such prospective offeror, provided, however, that any such prospective offeror desiring to conduct due diligence is a Qualified Bidder.

3.  Qualifying Overbids. Only Qualifying Overbids shall be considered by the Court. The Trustee requests that any person or entity that fails to submit a Qualifying Overbid be disqualified from bidding for the Property at the Auction. In order to constitute a Qualifying Overbid, a purchase offer (an "Initial Overbid") must be received by the Trustee's counsel not later than August 23, 2012, and, unless otherwise determined by the Trustee in the exercise of his sole and absolute discretion, must meet the following requirements:

a.  include: (i) a copy of a definitive sale document comparable to the form of the Asset Purchase Agreement between Buyer and the Trustee (the "Sale Agreement"), executed by Qualified Bidder upon terms and conditions that

1    are in the aggregate and under the circumstances generally no less

2    favorable to the Debtor's estate than those contained in the Sale

3    Agreement, including a bid to purchase not less than all of the Sale Assets

4    (as determined by the Trustee in his reasonable business judgment, taking

5    into account the assets proposed to be acquired, the impact of any delay in

6    closing the transaction contemplated by such Overbid, purchase price

7    adjustments included therein, and any other relevant factors) (the

8    "Overbidder's Purchase Agreement"); and (ii) a version of the

9    Overbidder's Purchase Agreement redlined or otherwise marked to show

10    any and all deviations from the Sale Agreement;

11    b.    be a firm offer without any contingencies to the validity, effectiveness,

12    and/or binding nature of the offer, including, without limitation,

13    contingencies for financing, due diligence or inspection except for the

14    conditions to closing provided for in the Sale Agreement;

15    c.    be signed by the Qualified Bidder  and indicate that it is irrevocable until

16    the entry of a final order approving a sale of the Property set forth in such

17    Overbid to a Qualified Bidder other than such Qualifying Bidder;

18    d.    contain the same or equivalent provisions to ensure funding for

19    remediation of all onsite environmental conditions at the Property, if any;

20    e.    provide, in the case of any bidder other than Buyer, for a purchase price in

21    an amount not less than $10,000.00 greater than the consideration set forth

22    in the Sale Agreement (including all cash, non-cash consideration and

23    assumed liabilities);

24    f.    accompanied by admissible evidence, in the form of affidavits or

25    declarations establishing the Qualified Bidder's good faith, within the

26    meaning of section 363(m) the Bankruptcy Code;

27    g.    accompanied by (i) financial statements or admissible evidence in the form

28    of affidavits of declarations establishing that the Qualified Bidder is

1    willing, authorized, capable, and qualified, financially, legally, and

2    otherwise, of unconditionally performing all obligations under the Sale

3    Agreement (or its equivalent) in the event that it submits the prevailing

4    overbid at the Sale Hearing, and (ii) evidence that it is duly authorized and

5    entitled to engage in the transaction contemplated by the Initial Overbid

6    without the consent of any entity that has not been obtained;

7    h.    states the legal and identifying tax identification number of the Qualified

8    Bidder; and

9    i.    does not request a payment of a break-up fee  (a "Qualified Bid").

10    4.    Submission of Overbids.  A Qualified Bidder that desires to make a

11    Qualified Bid must deliver, by mail, e-mail or by personal delivery to the Trustee's counsel: (a)

12    an executed copy of the Qualified Bid (in the form of the Overbidder's Purchase Agreement),

13    with original signatures; (b) a corresponding redlined version of the Qualified Bid (in the form of

14    the Overbidder's Purchase Agreement), marked to show changes made to the Sale Agreement;

15    and (c) all other materials required to become a Qualified Bidder as set forth in paragraphs 1 and

16    3 above, as follows:

17
Matthew Seror, Esq.
Buchalter Nemer, A Professional Corporation
18
1000 Wilshire Blvd., Ste. 1500
Los Angeles, CA 90017
19
E-mail:  mseror@buchalter.com

20    The deadline for receipt of Qualified Bids by the Trustee's counsel is August 23, 2012.

21    5.    The Trustee's Business Judgment and Right to Reject Bid.  After all

22    Qualified Bids have been received by the Trustee's counsel, the Trustee will determine the best

23    Qualified Bid, including the bid by Buyer.  The Trustee: (a) may exercise his business judgment

24    to recommend a sale of the Property to any Qualified Bidder whose bid the Trustee determines, in

25    his sole discretion, to be in the best interest of the estate; (b) may consult with any significant

26    creditors or other constituents in connection with the bidding process and the selection of the

27    highest or otherwise best bids collectively; and (c) may reject, at any time before the entry of an

28    order of the Bankruptcy Court approving a bid from a Qualified Bidder, any bid that, in the

Trustee's sole discretion, is (i) inadequate or insufficient, (ii) not in substantial conformity with the Bankruptcy Code, these Sale Procedures, or the terms and conditions of the sale, or (iii) contrary to the best interests of the Debtor, its estate and its creditors.

    a.   In exercising his business judgment as to which bid by a Qualified Bidder constitutes the highest or otherwise best bid, the Trustee may consider all factors which the Trustee deems relevant, including but not limited to: (i) the terms and conditions of the proposed Overbidder's Purchase Agreement;  (ii) the Qualified Bidder's ability to close the proposed transaction; (iii) the scope of the proposed transaction; (iv) the form and market value of any non-cash consideration offered; (v) the aggregate value of any assets not included in such bid and the Trustee's ability to recognize such value; (vi) the costs to the Debtor's estate of any bid; and (vii) the recommendations of creditors and other parties in interest.

    b.   Each Qualified Bidder should be prepared to make its best and final offer at the Auction, and the Trustee reserves all rights to object to and oppose any request for a continuance or recess of the Sale Hearing or Auction.

6.    <u>Absence of Qualifying Bids</u>. The Trustee may elect, in the exercise of his sole and absolute discretion, not to hold an Auction if no Qualifying Bids, or only overbids deemed unsatisfactory by the Trustee, are received by the Trustee.  In the event no Qualifying Bids are submitted, the Trustee shall request at the Sale Hearing that the Court approve the proposed sale of the Property to Buyer in accordance with the terms of the Sale Agreement.  Any party in interest may contest the Trustee's determination as to whether a bid qualifies as a Qualifying Bid, but any such contest must be made in a writing filed with the Bankruptcy Court no later than August 28, 2012 and served on the Bankruptcy Court, the Trustee, the Trustee's counsel and the United States Trustee such that it is received no later than August 29, 2012.

7.    <u>Auction Procedures</u>.  If the Trustee receives one or more Qualified Bids, (each person who has submitted such a Qualified Bid being a "Qualified Overbidder"), the Bankruptcy Court shall conduct the Auction.  At the Auction, Qualified Overbidders, including

Buyer, will have the opportunity, but not the obligation, to make overbids in excess of their initial

bids.  The Auction will be held in person; provided, however, that the Trustee reserves the right,

in the exercise of his sole and absolute discretion, to allow telephonic participation by certain

bidders.  Qualified Overbidders, and representatives of Qualified Overbidders, will be entitled to

attend and/or participate at the Auction. The Auction shall be governed by the following

procedures:

     a.  all bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or sale of the Property;

     b.  the Trustee will announce at the commencement of the Auction the Qualified Bid that the Trustee determines in his sole discretion to be the most favorable bid for the Property, and bidding will commence at that amount;

     c.  each subsequent bid by a Qualified Overbidder or Buyer shall be in increments of at least $10,000.00 greater than the immediately prior bid;

     d.  if, upon the conclusion of the Auction, and consistent with the terms of these Sale Procedures, Buyer has failed to make a bid that the Trustee determines, in his sole discretion, to be the highest or otherwise best bid, the Trustee will recommend that the Bankruptcy Court authorize and approve a sale of the Property to such prevailing Qualified Overbidder; and

     e.  if Buyer makes a bid that the Trustee determines, in his sole discretion, and consistent with the terms of these Sale Procedures, to be the highest or otherwise best bid made by a Qualified Overbidder, the Trustee will recommend that the Bankruptcy Court approve the Sale Agreement and authorize the Trustee to sell the Property to Buyer.

    8.    <u>Prevailing Bid</u>.  Upon the conclusion of the Auction, the Bankruptcy Court

will make the ultimate determination of which bid for the Property represents the highest or

otherwise best bid for the Debtor and its chapter 7 bankruptcy estate (the "Prevailing Bid") based,

in part, upon the financial and other terms proposed in the bids for the Property and the financial

wherewithal of the bidders to consummate the proposed sale in a timely manner, among other

things.

    a.   No later than one (1) business day prior to the close of escrow on the sale pursuant to the Prevailing Bid, the Prevailing Bidder must deliver to the Escrow Agent the entire cash component of any Prevailing Bid. The Prevailing Bidder Deposit must be paid by wire transfer to the Trustee's Escrow Agent. In the event that the Prevailing Bidder fails, through no fault of the Trustee, to consummate timely the transaction approved by the Bankruptcy Court, the Prevailing Bidder will irrevocably forfeit its Deposit and all other Deposits that it will have provided to the Trustee.

    b.   The Trustee's obligation to consummate a sale of the Property to the Prevailing Bidder will arise only when the Bankruptcy Court approves the proposed sale at the hearing on the Sale Motion, and the Prevailing Bidder tenders in full the purchase price for the Property and otherwise complies with its obligations under its Overbidder's Purchase Agreement or the Sale Agreement. The Trustee reserves the right, in the exercise of his sole and absolute discretion, to decline to sell the Property in the event that (i) Buyer does not consummate timely its proposed transaction, and (ii) the Trustee determines that the terms of any proposed overbid are unsatisfactory or are not in the best interest of the Debtor's creditors.

    c.   All funds that a bidder will pay to the Trustee in connection with the sale process described herein, including, without limitation, all Deposits and the purchase price, will be paid to the Escrow Agent. The Escrow Agent will hold all such funds and will not release such funds to the Trustee or to a bidder, unless either (i) the Trustee and the bidder provide to the Escrow Agent their mutual written instructions authorizing the release of such funds, or (ii) the Bankruptcy Court enters an order authorizing the release

of such funds after notice and a hearing.

9.    <u>Back-Up Bidder</u>. Upon the conclusion of the Auction, the Trustee shall select a bidder other than the Prevailing Bidder and designate such bidder the "Back-Up Bidder," provided, however, that Buyer shall be bound by its bid only until the Bankruptcy Court has entered an order approving the sale to the Prevailing Bidder unless Buyer agrees in writing to act as the Back-Up Bidder. If, for any reason, the Prevailing Bidder is unable or unwilling to timely perform its obligations under the Prevailing Bidder's definitive Overbidder's Purchase Agreement, the Trustee shall sell the Property to the Back-Up Bidder without further notice or a hearing, in which case, the Back-Up Bidder will be required to increase the amount of its Overbid Deposit to the amount of the Prevailing Bidder Deposit.

10.    <u>Sale Order</u>. The Trustee will submit to the Bankruptcy Court, at the hearing on the Sale Motion or as soon thereafter as practicable, a proposed order approving the Sale Motion (the "Sale Order"), pursuant to which the Bankruptcy Court will authorize the Trustee to consummate the sale with the Prevailing Bidder, in accordance with the terms and conditions of the Sale Order. The Sale Order will be in a form acceptable to the Prevailing Bidder, which acceptance cannot be unreasonably withheld by the Prevailing Bidder.

11.    <u>Disposition of Deposits</u>. Except as otherwise set forth herein, all Deposits provided to the Trustee by Qualified Bidders will be retained by the Trustee, and all Qualified Bids will remain open, notwithstanding the Bankruptcy Court's approval of a sale with the Prevailing Bidder, until two (2) business days after the closing of the sale with the Prevailing Bidder, but in no event later than thirty (30) days after the hearing on the Sale Motion, without the consent of the Qualified Bidder; provided, however, that the Trustee will return, within seven (7) days after the Auction, all Overbid Deposits provided by a Qualified Bidder if the Trustee determines, in the exercise of his sole and absolute discretion, that the Qualified Bid of such Qualified Bidder is not viable as a Back-Up Bid. The deposits of the Prevailing Bidder and the Back-Up Bidder, together with interest earned thereon, shall be retained by the Trustee as earnest money to be used in the following ways:

a.    the deposit of the Prevailing Bidder shall either be (i) applied at closing as

1    a credit toward the purchase price of the Prevailing Bidder, (ii) if the sale to

2    the Prevailing Bidder shall fail to timely close by reason of a breach or

3    default of the Prevailing Bidder, the deposit, together with interest earned

4    thereon shall be retained by the Trustee as liquidated damages, or (iii) in

5    the event that the sale to the Prevailing Bidder shall fail to timely close by

6    reason of a breach or default of the Trustee, the deposit together with

7    interest earned thereon shall be returned to the Prevailing Bidder, and

8      b.   the deposit of the Back-Up Bidder shall either be (i) returned to the Back-

9          Up Bidder together with interest earned thereon upon the closing of the

10         transaction with the Prevailing Bidder, or (ii) if the sale to the Prevailing

11         Bidder shall fail to close for any reason, applied at closing as a credit

12         toward the purchase price of the Back-Up Bidder.

13         12.    <u>Closing</u>.  The Closing of a sale with the Prevailing Bidder or with any

14   Back-Up Bidder will occur in accordance with the terms and conditions with respect thereto

15   provided by the Sale Agreement or by the Overbidder's Purchase Agreement, as the case may be,

16   but in no event later than September 28, 2012.

17         13.    <u>The Trustee's Discretion With Respect to Sale Procedures</u>.  The Trustee

18   may amend the Sale Procedures set forth herein, or may adopt additional procedures or rules for

19   the bidding process, that in the discretion of the Trustee will promote better the goals of the sale

20   process and which will maximize the proceeds generated for the benefit of the Debtor's estate

21   which are not inconsistent with the provisions of the Bankruptcy Code, the Federal Rules of

22   Bankruptcy Procedure or the Local Bankruptcy Rules.  Without limiting the generality of the

23   foregoing, the Trustee may, in the exercise of his sole and absolute discretion, do any of the

24   following: (a) extend the Response Deadline; (b) deem a bidder a Qualified Bidder,

25   notwithstanding any initial determination by the Trustee that the bidder is not a Qualified Bidder;

26   (c) adopt criteria that the Trustee deems appropriate for determining the Prevailing Bid; (d)

27   amend the terms and conditions of the Sale Agreement or an Overbidder's Purchase Agreement,

28   including, without limitation, the purchase price, conditions to the closing of the sale

1  contemplated thereby, and the timing of the closing of the sale, as the Trustee and the Qualified

2  Bidder may mutually agree; and (e) allow additional bidding after the Auction, up to the

3  conclusion of the hearing on the Sale Motion, as the Trustee may deem appropriate.  The

4  Trustee's ability to consummate any transaction, however, will be subject to the approval of the

5  Bankruptcy Court.

6  **B.     The Proposed Sales Procedures Are Fair and Reasonable**

7          Bankruptcy courts routinely exercise their discretion in approving reasonable sale

8  procedures, including overbid procedures, break-up fees, and other mechanisms intended to

9  promote bidding and to ensure that the same is effectuated according to principles of good faith

10 and fair dealing.  *See, e.g., In re Mama's Original Food, Inc.*, 234 B.R. 500, 505 (Bankr. C.D.

11 Cal. 1999); *In re Integrated Resources, Inc.*, 135 B.R. 746, 750-51 (Bankr. S.D.N.Y. 1992).  The

12 Court's authority to approve sale procedures lies within the Court's power to issue any order that

13 is necessary or appropriate to carry out a sale under 11 U.S.C. § 363(b).  *See* 11 U.S.C. § 105(a).

14 Bid procedures should stimulate bidding to obtain the highest value and not discourage

15 competition.  *See Mama's*, 234 B.R. at 505.

16         In connection with sales of assets outside of the ordinary course of business, bankruptcy

17 courts frequently approve competitive bidding procedures as a means of ensuring that such sales

18 will generate the highest and best returns to the debtor.  *See In re Financial News Network, Inc.*,

19 931 F.2d 217, 219 (2d Cir. 1991) (requiring overbids to exceed the initial purchase price by

20 9.5%); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (court

21 entered order requiring that overbids be made in specified minimum increments with deposits);

22 *Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) (requiring

23 overbids to exceed the initial purchase price by 4.9%).

24         In order to ensure that the best possible price for the Property is obtained, the Trustee has

25 provided notice of the Auction and the Procedures by (a) publishing a public notice in the

26 Houston Chronicle and the Dallas Morning News, publications with a wide circulation in Conroe

27 and surrounding areas.[3]  A true and correct copy of the notice of auction that will be included in

28

[3] The Trustee will file the Affidavits of Publication in advance of the hearing on this Motion once received.
BN 12115309v1
18

**MOTION TO AUTHORIZE SALE OF REAL PROPERTY**

the foregoing newspapers is attached to the Seror Declaration as Exhibit C, and (b) serving this Notice and Motion upon: (i) the Office of the United States Trustee; (ii) the Debtor and its counsel; (iii) all entities who have expressed to the Trustee an interest in purchasing the Property; (iv) all entities known to have asserted any interests in or upon the Property; (v) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; and (vi) all entities on the General Service List as of the date of filing of this Motion. In this manner, the Trustee has provided all parties who could potentially be interested in purchasing the Property with notice of the Auction and the opportunity to present higher and better bids pursuant to the Procedures set forth herein.

The Trustee will follow the Procedures as to any party who wishes to submit an overbid. The Trustee believes that the Procedures will encourage and facilitate bidding by providing a specific process for the submission of bids by interested parties. In the absence of these procedures, there would be uncertainty about the ability to submit a bid or the process for conducting due diligence, and it is the Trustee's goal to make this process as easy as possible. This process is intended to give prospective buyers notice that this is their last opportunity to submit a bid. The proposed bid increments are intended to ensure that the estate benefits from overbids because, if overbids are received and accepted, additional work will be required of counsel for the Trustee in connection with facilitating due diligence and monitoring the bidding process. Therefore, the Trustee respectfully requests that this court approve the Procedures in full.

## V.

## THE COURT SHOULD APPROVE THE SALE

### A.     The Procedures Are an Appropriate Means of Maximizing Value

Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to obtain approval of a proposed sale of assets, a debtor usually must show that the proposed purchase price is the highest and best offer available under the circumstances of the case. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food*

1    *Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a

2    primary objective of the Code [is] to enhance the value of the estate at hand."); *In re Integrated*

3    *Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("'It is a well-established principle of bankruptcy

4    law that the . . . . Debtor's duty with respect to such sales is to obtain the highest price or greatest

5    overall benefit possible for the estate.'") (*quoting Cello Bag Co. v. Champion Int'l Corn (In re*

6    *Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).  Courts also interpret

7    section 363 to require that such sale or use of property be within the sound judgment of the

8    trustee, to whom the court gives great deference.  *See, e.g., In re Moore*, 110 B.R. 924, 928

9    (Bankr. C.D. Cal. 1990) (the choice of a trustee pertaining to liquidation of the estate's assets

10   "belongs to the trustee within the sound exercise of the trustee's business judgment so long as the

11   trustee fulfills his statutory duties."); *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D.

12   Cal. 1985) ("Congress gave trustees broad power to sell property of an estate … section [363]

13   clearly indicates that the manner of sale is within the discretion of the Trustee…."); *see also*

14   *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 289 (BAP 9th Cir. 2005)

15   ("[T]he position of the trustee is afforded deference, particularly where business judgment is

16   entailed in the analysis…."); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (BAP 9th

17   Cir. 1988) (*quoting In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986))

18   ("'[T]here must be some articulated business justification for using, selling, or leasing the

19   property outside the ordinary course of business. . . .Whether the proffered business justification

20   is sufficient depends on the facts of the case.'"); *Southwestern Media, Inc. v. Rau*, 708 F.2d 419,

21   425 (9th Cir. 1983) ("The decision concerning the form of sale [rests] within the business

22   judgment of the trustee. Liability will not be imposed for the exercise of such judgment, absent

23   negligence.").

24   **B.    The Proposed Purchase Price is Fair and Reasonable**

25        The present condition of the Property is not ideal.  Portions of the Lake Conroe Village

26   development have fallen into disrepair and a number of the amenities that are supposed to be

27   maintained by the homeowners association have been rendered useless due to the prolonged

28   periods of neglect.  Copies of photographs taken of the Lake Conroe Village development in

December of 2009 are attached to the Declaration of Benjamin S. Seigel.  Moreover, the Trustee

has been informed that the homeowners association is presently underfunded, thereby further

compromising the value of the Property.

As set forth in the Seror Declaration, the Trustee believes that the Purchase Price offered

by the Buyer is a fair and reasonable price for the Property.  The Trustee bases this conclusion on

a number of factors:

- The Trustee consulted with George Jones, a real estate broker located in Houston, Texas who is familiar with the Lake Conroe Village development.  Mr. Jones estimates that the residential lots in the Lake Conroe Development could sell for approximately $500 to $600 per lot as part of a bulk sale (a copy of the broker's opinion as to the possible sales price of the residential lots is attached to the Seror Decl. as Exhibit D);

- The current physical condition of the Property and the Lake Conroe Village development as a whole as evidenced by the photographs attached to the Seigel Declaration;

- On or about July 27, 2011 the Trustee received an unsolicited offer from Stoecker Corporation to purchase the Estate's interest in the Property for $250.00 per lot;[4]

- On or about September 22, 2011 the Trustee received an unsolicited offer from Dreamscape Land Development, Inc. to purchase the Estate 's interest in the Property for $850.00 per lot;[5] and

- When 249 of the residential lots were sold in blocks at auction (in July and August of 2008) the average sales price per lot was $1,108.

Furthermore, the Notice and Sale Procedures proposed by the Trustee herein will provide

for the possibility of higher and better bids, and therefore will ensure the best possible return for

the Property and will itself operate to establish the fair value for the Property.

---

[4] The Trustee will provide notice of this Motion and the upcoming auction to Stoecker Corporation so as to allow them to participate in the auction.

[5] The Trustee's counsel has already provided Dreamscape Land Development, Inc. notice of the upcoming auction so as to allow it to participate.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 12115309v1

21

**MOTION TO AUTHORIZE SALE OF REAL PROPERTY**

1    Additionally, the Property does not provide a current benefit to the Estate, as the Property

2    consists of 494 vacant and undeveloped residential lots located in Texas.  Any recovery from the

3    Property would require significant monetary expenditures on the Estate's part for development,

4    and likely years to realize.  In the meantime, the Estate will not receive any monies from its

5    interest in the Property.  Accordingly, the Property has limited value to the Estate.  In contrast, the

6    monies received from the Proposed Sale will increase the return to the Debtor's creditors.  The

7    Trustee submits, pursuant to his business judgment, that the Proposed Sale should be approved as

8    it is clearly within the range of reasonableness and will bring the highest and best offer available

9    for the purchase of the Property under the circumstances of this case.

10    **C.    The Proposed Transaction Is In Good Faith**

11    "[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1) of the

12    Bankruptcy Code, it is required to make a finding with respect to the 'good faith' of the

13    purchaser." *In re Abbotts Dairies*, 788 F.2d 143, 149-50 (3rd Cir. 1986).  The purpose of such a

14    finding is to facilitate the operation of section 363(m) of the Bankruptcy Code, which provides a

15    safe harbor for a purchaser of a debtor's property when the purchase is made in "good faith."

16    Specifically, section 363(m) provides:

17         The reversal or modification on appeal of an authorization under subsection (b) or
         (c) of this section of a sale or lease of property does not affect the validity of the
18         sale or lease under such authorization to an entity that purchased or leased such
         property in good faith, whether or not such entity knew of the pendency of the
19         appeal unless such authorization and such sale of lease were stayed pending
         appeal.
20
21    11 U.S.C.  363(m); *see Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992).  This

22    provision serves the important purposes both of encouraging good faith transactions and of

23    preserving the finality of the bankruptcy court's orders unless stayed pending appeal.  *Abbotts*

24    *Dairies*, 788 F.2d at 147.  As the Seventh Circuit recognized in *In re Edwards*, 962 F.2d 641 (7th

      Cir. 1992), "[i]f purchasers at judicially approved sales of property of a bankruptcy estate, and

25    their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate

26    bankruptcy estates at positive prices." *Id.* at 643.

27    A "good faith" purchaser is "one who buys 'in good faith' and 'for value.'" *In re*

28

BUCHALTER NEMER    BN 12115309v1                                    22
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO AUTHORIZE SALE OF REAL PROPERTY**

*Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998) (citing *In re Elwell*, 958 F.2d 276, 281 (9th Cir. 1992)). "[T]he first requirement of a 'good faith purchaser' is that there be an identifiable purchase. Second, that the purchaser gives 'value.'" *In re Thomas*, 287 B.R. 782, 785 (BAP 9th Cir. 2002). In the instant case, Buyer is clearly identifiable and will be giving value. Further, as stated in the Seror Declaration, Buyer is not related to the Debtor, the Trustee, or the Trustee's attorneys. Any Prevailing Bidder at the Sale Hearing will also be a good faith, arm's length purchaser. For these reasons, the Trustee requests that the court make a factual determination that Buyer, or a Prevailing Bidder at the Sale Hearing, has purchased the Property in good faith as defined in section 363(m) of the Bankruptcy Code.

**D.    The Sale Should be Free and Clear of Certain Claims, Liens and Encumbrances**

Bankruptcy Code Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property," if any of the following five conditions is met:

>   (1) applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

>   (2) such entity consents;

>   (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

>   (4) such interest is in bona fide dispute; or

>   (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

Section 363(f) is written in the disjunctive and thus only one of the foregoing conditions needs to be satisfied for Court approval to be appropriate. Here, the Trustee is requesting the Court authorize the sale free and clear of the below listed liens and/or encumbrances, which appear on the latest title commitment. **As is set forth in the Sale Agreement and herein, the proposed sale is free and clear of only these liens and encumbrances and remains "as-is, where-is" with no representations or warranties of any kind as to the condition, title or status of the Property:**

1.  Deed of Trust, recorded January 29, 1999 in County Clerk's File No. 99006821, of the Official Public Records of Montgomery County, Texas.  Deed of Trust secures a Promissory Note in amount of $2,500,000.  Grantor is Conroe Investors, Ltd., Beneficiary is International Bank of Commerce.

    A modification of the foregoing Note and Deed of Trust as recorded on September 23, 2002 in County Clerk's File No. 2002-098995 of the Public Records of Montgomery County, Texas.

    An assignment of the foregoing Note and Deed of Trust to Syndicate Exchange Corporation, a Texas corporation, recorded October 26, 2004 in 2004119266 of the Public records of Montgomery County, Texas.

2.  A financing statement for Debtor Conroe Investors, Ltd. for benefit of International Bank of Commerce, recorded January 29, 1999 in County Clerk's File No. 99006822 of the Public records of Montgomery County, Texas.

    An assignment of the foregoing lien to Calson by instrument dated April 16, 2002 in County Clerk's File No. 2002-037431 of the Public records of Montgomery County, Texas.

3.  Deed of Trust, recorded November 12, 2008 in County Clerk's File No. 2008-108983 of the Official Public Records of Montgomery County, Texas and November 24, 2008 in County Clerk's File No. 2008-111873 of the Official Public Records of Montgomery County, Texas.  Deed of Trust secures a Note in amount of $810,000.  Grantor is Syndicate Exchange Corporation, Beneficiary is Stephen S. Faden.

4.  Earnest money contract by and between Dreamscape Land Development, Inc. and David Silberstein as shown in County Clerk's File No. 2008-113975, Official Records of Montgomery County, Texas.

A sale free and clear of the above referenced liens and encumbrances is appropriate under Section 363(f) (4).

1.  <u>The Court Should Order a Sale Free and Clear of the Foregoing Interests Pursuant to Code Section 363(f)(4)</u>

With respect to the deeds of trust, related liens and the assignments and transfers thereof listed above (Nos. 1-3), these interests no longer encumber the Estate as a result of the Court's

1    order on the Trustee's first motion to approve a compromise (See Docket No.146).  Specifically,

2    that order provides that: "[T]he Trustee is vested with absolute and unconditional title to the

3    Residential Lots, shall have all right, title and interest to the Residential Lots and shall, subject to

4    further order of this Court, have the right to offer for sale and sell all or part of the Residential

5    Lots."

6          The Court will recall that in the Schreiber Action, which set aside Syndicate's

7    foreclosures of various portions of the Conroe Property (including the Property being sold

8    pursuant to this Motion), did not set aside Syndicate's purchase of the International Bank of

9    Commerce Deed of Trust.  Pursuant to this Court's order on the Trustee's original motion to

10   approve a compromise (filed September 17, 2010), Syndicate transferred all of its right title and

11   interest in the Conroe Property to the Estate.  This expressly included any interest Syndicate had

12   in the deed of trust it purchased from IBC.

13         The financing statement referenced in number 2 above was part of the original

14   International Bank of Commerce note and deed of trust which was purchased by Syndicate (and

15   thereafter transferred to the Estate).  It appears that the assignment to Calson (who independently

16   owns some residential lots Lake Conroe Village and whose principal has already submitted an

17   overbid to the Trustee for the purchase of the Property) may have been in error since it never held

18   an interest over the lots which were subject to the IBC deed.   The Trustee has requested that

19   Calson sign a release of this interest, which Calson has agreed to do.

20         The referenced Faden deeds of trust (there is only one deed but it was recorded twice) was

21   granted to Faden by Syndicate during the time Syndicate controlled the property, that is,  before

22   Syndicate's foreclose was set aside in the Schreiber Action.  As was the case with Syndicate's

23   interest in the Conroe property, as part of the Trustee's first motion to approve a compromise,

24   Faden transferred to the Estate all of its right title and interest in the Conroe properly, which

25   includes any interest Faden had in the deed of trust which now appears on the title commitment.

26   As a result of the foregoing, the Estate is vested with absolute title to the Property unencumbered

27   by the aforementioned deeds of trust.  To the extent the title report shows otherwise, these claims

28   are subject to a bona fide dispute and as a result, the court can order a sale free and clear of them.

1    With respect to the earnest money contract between Dreamscape Land Development, Inc.,

2    by and through its principal, Bruce Allegar, and David Silberstein, this is also subject to a bona

3    fide dispute insofar as David Silberstein never had the legal ability to enter into such a contract

4    since he never held title, in his individual capacity, to the residential lots at issue. The lots at

5    issue in that contract were held either in the name of the Debtor or one of Mr. Silberstein's

6    entities, whose interests have all been transferred to the Estate pursuant to the Court's order on

7    the Trustee's first Motion to Approve a Compromise. As such, the purported grantor (David

8    Silberstein) lacked the ability to enter into this agreement and therefore its validity and

9    enforceability remains subject to a bona fide dispute. The Trustee will serve Dreamscape Land

10   Development, Inc. and Bruce Allegar (who have the same address) with a copy of this Motion. In

11   addition, it is worth noting that Dreamscape Land Development and Bruce Allegar have been in

12   contact with the Trustee's counsel regarding the Property and has recently submitted a written

13   overbid to purchase the Property.

14       **E.       Notice of the Sale is Reasonable Under the Circumstances**

15       "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the

16   estate under the circumstances. The requirement of a notice and hearing operates to provide both

17   a means of objecting and a method for attracting interest by potential purchasers." *Lahijani*, 325

18   B.R. at 288-89. Concurrently with the filing of this Motion, the Trustee served the Notice of the

19   Sale of Estate Property, together with the Notice appended hereto (collectively, the "Notices"), on

20   (i) the Office of the United States Trustee; (ii) the Debtor and its counsel; (iii) all entities who

21   have expressed to the Trustee an interest in purchasing the Property; (iv) all entities known to

22   have asserted any interests in or upon the Property; (v) all federal, state, and local regulatory or

23   taxing authorities or recording offices which have a reasonably known interest in the relief

24   requested by the Motion; and (vi) all entities on the General Service List as of the date the Motion

25   was filed.

26       Under Bankruptcy Rule 2002(a) and (c), the Trustee is required to notify its creditors of

27   the Proposed Sale, disclosure of the time and place of the Auction, the terms and conditions of the

28   Proposed Sale, the deadline for filing any objections thereto and a general description of the

1   property to be sold.  The Notices contain the information required under Bankruptcy Rule 2002,

2   as well as that required under Local Bankruptcy Rule 6004-1, and also include information on the

3   Sale Procedures.  This information will enable interested parties to participate in the Auction and

4   the Sale Hearing if they so choose.  Thus, the Trustee submits that adequate notice of this Motion

5   and the Sale Hearing has been provided.  *See In re Delaware & H. Ry.*, 124 B.R. 169, 180 (Bankr.

6   D. Del. 1991) (the disclosures necessary in such a sale notice need only include the terms of the

7   sale and the reasons why such a sale is in the best interests of the estate and do not need to include

8   the functional equivalent of a disclosure statement).

9

10                                              **VI.**

11                                         **CONCLUSION**

12          For all the foregoing reasons, the Trustee respectfully requests that the Bankruptcy Court

13   enter an order (i) approving the Sale Procedures, (ii) authorizing the Trustee to sell the Property

14   on an as-is, where-is basis, free and clear of certain claims, liens and encumbrances, without

15   representations, warranties or recourse, pursuant to the Sale Agreement or Overbidder's Purchase

16   Agreement and in accordance with the Sale Procedures, and (iii) that the Bankruptcy Court grant

17   such other and further relief as is just and proper.

18   DATED: August 3, 2012                     BUCHALTER NEMER
                                                A Professional Corporation
19

20                                             By:   */s/ Benjamin S. Seigel*
                                                     BENJAMIN S. SEIGEL
21                                                   Attorneys for David Seror,
                                                     Chapter 7 Trustee
22

23

24

25

26

27

28

## DECLARATION OF DAVID SEROR

I, David Seror, declare as follows:

1.     I am the duly appointed and acting chapter 7 trustee in the bankruptcy case entitled *In re Double S Development LLP*, Case No. 1:09-bk-12032-MT (the "Debtor"), pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division.  I have personal knowledge of the facts stated herein, or have gained knowledge of them from the regular business records that I maintain as a trustee, and if called as a witness, could and would testify competently thereto, except for those matters stated on information and belief and as to those matters, I am informed and believe them to be true.

2.     This case was commenced by the filing of a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on February 25, 2009 (the "Petition Date").  One of the primary assets of the Estate was the Estate's interest in a mixed use residential and commercial development located in Lake Conroe Village, county of Montgomery, Texas.  The development includes a total of over 1,000 residential lots.

3.     Given the extremely complex and convoluted history of the Lake Conroe development, the precise number of residential lots in which the Estate has an interest has fluctuated throughout the pendency of this case.  Shortly following the filing of this case, I became aware of the judgment entered by the California Superior Court – Van Nuys Division, in the *Schreiber v. Double S Development, et al.*, action ("Schreiber Judgment") which determined that the Estate has an interest in 1,002 residential lots.  Upon further investigations, it was discovered that approximately 249 of the residential lots that were included within the Schreiber Judgment were sold to purported *bone fide* third party purchasers, thereby reducing the Estate's potential portfolio of residential lots to approximately 753.

4.     When I first began to negotiate the sale of the Property, I asked my counsel to contact Republic Title of Texas, located in Dallas, Texas, and request a title commitment reflected all residential lots held by the Estate.  Republic Title initially issued a title commitment on March 30, 2012 which stated that the Estate had an interest in 1,006 residential lots.  However, following a review of the title commitment, my counsel and I believed that some lots were

1  erroneously included in the initial commitment and asked Republic Title to re-run the

2  commitment. A revised title commitment was subsequently provided which indicated that the

3  Estate has an interest in 432 residential lots. Based on the property tax records of Montgomery

4  County, Texas, my counsel and I believed that Estate had an interest in as many as sixty-five

5  additional residential lots, and therefore asked Republic Title to continue its investigations as

6  those identified lots. On July 3, 2012 Republic Title issued another title commitment indicating

7  that the sixty-five additional lots were property of the Estate, resulting in the Estate having an

8  interest in 494 lots, all of which I propose selling pursuant to the Motion and the Sale Agreement,

9  a legal description of which is attached hereto Exhibit A (and to the Sale Agreement as Exhibit

10  1).

11       5.    I believe that the proposed sale price represents the highest and best price available

12  subject to overbid at the time of sale, and that the proposed sale to Buyer is in the best interests of

13  the bankruptcy estate. The complete terms of the Proposed Sale are contained in the Sale

14  Agreement, attached hereto as Exhibit B.

15       6.    The proposed sale to Buyer is subject to overbid at the time or prior to the time of

16  hearing. In furtherance of the contemplated overbid and auction procedure, I request that the

17  Court approve the sales procedures as set forth herein.

18       7.    In order to ensure that the best possible price for the Property is obtained, I have

19  caused public notice of the Auction to be published in the Houston Chronicle and the Dallas

20  Morning News, publications with a wide circulation in Conroe and surrounding areas. Copies of

21  the notice that will be published are attached hereto as Exhibit C. I have also caused notice of the

22  auction to be given to all known entities who have expressed an interest in purchasing the

23  Property during the pendency of this case. In this manner, I have provided all parties who could

24  potentially be interested in purchasing the Property with notice of the Auction and the opportunity

25  to present higher and better bids pursuant to the Procedures set forth herein.

26       8.    I will follow the Procedures set forth herein as to any party who wishes to submit

27  an overbid and believe that the Procedures will encourage and facilitate bidding by providing a

28  specific process for the submission of bids by interested parties. In the absence of these

1  Procedures, there would be uncertainty about the ability to submit a bid or the process for

2  conducting due diligence. It is my goal to make this process as easy as possible. This process is

3  intended to give prospective buyers notice that this is their last opportunity to submit a bid. The

4  proposed bid increments are intended to ensure that the Estate benefits from overbids because, if

5  overbids are received and accepted, additional work will be required of my counsel in connection

6  with facilitating due diligence and monitoring the bidding process. Therefore, I respectfully

7  request that this court approve the Procedures in full.

8        9.    I believe the proposed sale to Buyer for $741,000.00 ($1,500.00 per residential lot)

9  is fair and reasonable and represents the highest and best price available subject to overbid at the

10  time of sale, and that the proposed sale to Buyer is in the best interest of the bankruptcy estate and

11  should be approved. I reach this conclusion based on the following facts:

12        a.   The condition of the Property is not ideal. Portions of the Lake Conroe

13            Village development have fallen into disrepair and a number of amenities that

14            are supposed to be maintained by the homeowners association have been

15            rendered useless due to prolonged periods of neglect;

16        b.   I have been informed that the homeowners association is presently

17            underfunded;

18        c.   I consulted with George Jones, a real estate broker located in Houston who is

19            familiar with the Lake Conroe Village development. Mr. Jones estimates that

20            the residential lots in the Lake Conroe development could sell for

21            approximately $500 to $600 per lot as part of a bulk sale. A copy of Mr.

22            Jones' letter to me reflecting the foregoing is attached hereto as Exhibit D;

23        d.   The unsolicited offers that I have received from Stoecker Corporation and

24            Dreamscape Land Development for $250 and $850 per lot, respectively, for the

25            Estate's interest in the Property; and

26        e.   When the 249 residential lots in the Lake Conroe development were sold at

27            auction in July and August of 2008, the average sales price per lot was $1,108.

28  ///

10.    Furthermore, the Notice and Sale Procedures proposed by the Motion will provide for the possibility of higher and better bids, and therefore will ensure the best possible return for the Property and will itself operate to establish the fair value for the Property.

11.    Additionally, the Property does not provide a current benefit to the Estate, as the Property consists of 494 vacant and undeveloped residential lots located in Texas.  Any recovery from the Property would require significant monetary expenditures on the Estate's part for development, and likely years to realize.  In the meantime, the Estate will not receive any monies from its interest in the Property.  Accordingly, the Property has limited value to the Estate.  In contrast, the cash received from the Proposed Sale will increase the return to the Debtor's creditors.  I submit, pursuant to my business judgment, that the Proposed Sale should be approved as it is clearly within the range of reasonableness and will bring the highest and best offer available for the purchase of the Property under the circumstances of this case.

12.    The proposed sale has been negotiated in good faith between the parties.  I am informed that Buyer is not related to my counsel or to me.  I have never met Buyer in person and all of the transactions have been negotiated by me through my counsel.  Any prevailing buyer at the auction will also be a good faith, arm's length purchaser.

13.    By the Motion, I am also seeking to sell the Property free and clear of the claims, liens and encumbrances, set forth herein.  However, and as is set forth in the Sale Agreement, **the proposed sale is free and clear of only these liens and encumbrances and remains "as-is, where-is" with no representations or warranties of any kind as to the condition, title or status of the Property:**

> 1.  Deed of Trust, recorded January 29, 1999 in County Clerk's File No. 99006821, of the Official Public Records of Montgomery County, Texas.  Deed of Trust secures a Promissory Note in amount of $2,500,000.  Grantor is Conroe Investors, Ltd., Beneficiary is International Bank of Commerce.
>
> A modification of the foregoing Note and Deed of Trust as recorded on September 23, 2002 in County Clerk's File No. 2002-098995 of the Public Records of Montgomery County, Texas.

An assignment of the foregoing Note and Deed of Trust to Syndicate Exchange Corporation, a Texas corporation, recorded October 26, 2004 in 2004119266 of the Public records of Montgomery County, Texas.

2. A financing statement for Debtor Conroe Investors, Ltd. for benefit of International Bank of Commerce, recorded January 29, 1999 in County Clerk's File No. 99006822 of the Public records of Montgomery County, Texas.

An assignment of the foregoing lien to Calson by instrument dated April 16, 2002 in County Clerk's File No. 2002-037431 of the Public records of Montgomery County, Texas.

3. Deed of Trust, recorded November 12, 2008 in County Clerk's File No. 2008-108983 of the Official Public Records of Montgomery County, Texas and November 24, 2008 in County Clerk's File No. 2008-111873 of the Official Public Records of Montgomery County, Texas. Deed of Trust secures a Note in amount of $810,000. Grantor is Syndicate Exchange Corporation, Beneficiary is Stephen S. Faden.

4. Earnest money contract by and between Dreamscape Land Development, Inc. and David Silberstein as shown in County Clerk's File No. 2008-113975, Official Records of Montgomery County, Texas.

14.     The Court should order the sale of the Property free and clear of the aforementioned claims, liens and encumbrances pursuant to Section 363(f)(4) because they are subject to a bona fide dispute. Pursuant to this Court's order on my original motion to approve a compromise (filed September 17, 2010) Syndicate transferred all of its right title and interest in the Conroe Property to the Estate. This expressly included any interest Syndicate had in the deed of trust it purchased from IBC.

15.     The financing statement referenced in number 2 above was part of the original International Bank of Commerce note and deed of trust which was purchased by Syndicate (and thereafter transferred to the Estate). It appears that the assignment to Calson (who independently owns some residential lots Lake Conroe Village and whose principal has already submitted an overbid for the purchase of the Property) may have been in error since it never held an interest over the lots which were subject to the IBC deed. My counsel has requested that Calson sign a release of this interest, which Calson has indicated it would do.

16.   The referenced Faden deeds of trust (there is only one deed but it was recorded twice) was granted to Faden by Syndicate during the time Syndicate controlled the property, that is, before Syndicate's foreclose was set aside in the Schreiber Action. As was the case with Syndicate's interest in the Conroe property, as part of my first motion to approve a compromise, Faden transferred to the Estate all of its right title and interest in the Conroe properly, which includes any interest Faden had in the deed of trust which now appears on the title commitment. As a result of the foregoing, the Estate is vested with absolute title to the Property unencumbered by the aforementioned deeds of trust. To the extent the title report shows otherwise, these claims are subject to a bona fide dispute and as a result, the court can order a sale free and clear of them.

17.   With respect to the earnest money contract between Dreamscape Land Development, Inc., by and through its principal, Bruce Allegar, and David Silberstein, this is also subject to a bona fide dispute insofar as David Silberstein never had the legal ability to enter into such a contract since he never held title, in his individual capacity, to the residential lots at issue. A true and correct copy of the recorded contract is attached hereto as Exhibit E. Based on my investigations, and those of my counsel, the lots at issue in that contract were held either in the name of the Debtor or one of Mr. Silberstein's entities, whose interests have all been transferred to the Estate pursuant to the Court's order on the my first Motion to Approve a Compromise. As such, the purported grantor (David Silberstein) lacked the ability to enter into this agreement and therefore its validity and enforceability remains subject to a bona fide dispute. I will cause a copy of this Motion to be served on both Dreamscape Land Development, Inc. and Bruce Allegar (who have the same address). In addition, I recently received a written overbid from Dreamscape Land Development, Inc./Bruce Allegar to purchase the Property.

18.   In connection with this Motion, I will provide notice of the proposed sale of the Property, the proposed Sales Procedures and overbid procedures to creditors of the Estate, anybody who has previously expressed some interest in the Property. The notice provided contains the information required under Bankruptcy Rule 2002, as well as under Local Bankruptcy Rule 6004-1. As a result, I believe that adequate notice of this Motion and Sale Hearing has been provided

19.    I will also cause notice of this sale to be published on the websites of Danning Gill and the National Association of Bankruptcy Trustees..

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed at Woodland Hills, California on this 3rd day of August, 2012.

_____
DAVID SEROR

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

BUCHALTER NEMER, A Professional Corporation, 1000 Wilshire Blvd., Ste. 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE SALE OF ESTATE'S INTEREST IN CERTAIN RESIDENTIAL REAL PROPERTY; (B) AUTHORIZING THE SALE OF THE RESIDENTIAL REAL PROPERTY ON AN AS-IS, WHERE-IS BASIS FREE AND CLEAR OF CERTAIN CLAIMS, LIENS, INTERESTS AND ENCUMBRANCES PURSUANT TO BANKRUPTCY CODE SECTION 363(d) AND (f); AND (C) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **August 6, 2012**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond H Aver     ray@averlaw.com
Austin K Barron     abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
John P Dillman     houston_bankruptcy@publicans.com
John W Kim     jkim@nossaman.com
Dennis E Mcgoldrick     dmcgoldricklaw@yahoo.com
Benjamin Seigel     bseigel@buchalter.com, IFS_filing@buchalter.com
David Seror (TR)     kpscion@ebg-law.com, dseror@ecf.epiqsystems.com
David R Silberstein     , drs1@pacbell.net
Gerald N Silver     silverlawoffice@sbcglobal.net
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  **August 6, 2012**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 6, 2012 | Teri Carson | /s/ Teri Carson |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL:**

Hon. Maureen A. Tighe
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 325
Woodland Hills, CA 91367-6606

Debtor
Double S Development LLP
P.O. BOX 260040
Encino, CA 91426

Interested Parties
Craig R. Smith, Esq.
Smith Law Firm
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367

Larry Cooley
3832 North Shasta Loop
Eugene, Oregon 97405

DREAMSCAPE LAND DEVELOPMENT INC.
Bruce Allegar, Attorney at Law
P.O. Box 2334
Conroe, Texas 77305

LCV Properties, LLC
c/o Ron Regwan
1875 Century Park East, Suite 700
Los Angeles, California 90067

Creditors
ANTHONY OTRANDO
POB 7193
PORTER RANCH CA 91327

BERT SCHREIBER
4724 PARK JACARANDA
CALABASAS CA 91302

CONROE INVESTORS LTD
POB 7193
PORTER RANCH CA 91327

CONROE INVESTORS LTD.
c/o RICHARD J. SEGAL
POB 7193
PORTER RANCH CA 91327

David Silberstein
c/o Syndicate Exchange Corp
PO Box 260040
Encino CA 91426-0040

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 F 9013-3.1.PROOF.SERVICE

David Silberstein
PO Box 260040
Encino CA 91426-0040

FRANCHISE TAX BOARD
BANKRUPTCY UNIT
PO BOX 2952 MAIL STOP A-340
SACRAMENTO CA 95812-2952

GREENTONE LLC
RICHARD J SEGAL
POB 7193
PORTER RANCH CA 91327

INTERNAL REVENUE SERVICES
PO BOX 21126
PHILADELPHIA PA 19114

LARRY COOLEY
PO BOX 50655
EUGENE OR 97405

Montgomery County
John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
POB 3064
Houston, TX 77253-

RJS LTD
RICHARD J SEGAL
PO BOX 7193
PORTER RANCH CA 91327

RMP REALTY LLC
RICHARD J SEGAL
POB 7193
PORTER RANCH CA 91327

RPM REALTY LLC
POB 7193
PORTER RANCH CA 91327

Sandra Silberstein
c/o Lisa Silberstein
PO Box 260040
Encino CA 91426-0040

Sandra Silberstein
PO Box 260040
Encino CA 91426-0040

SEJAC PARTNERS LTD
RICHARD J SEGAL
POB 7193
PORTER RANCH CA 91327

---

This form is mandatory.  It has been approved  for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

STEPHEN FADEN
7100 HAYVENHURST AVE PENTHSE C
VAN NUYS CA 91406

SYNDICATE EXCHANGE CORPORATION
PO BOX 260040
ENCINO CA 91426-0040

This form is mandatory.  It has been approved  for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**