# EXHIBIT "1"

LOTS NINE (9), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), TWENTY-NINE (29), THIRTY-FIVE (35) AND THIRTY-SIX (36), IN BLOCK ONE (1), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), THREE (3), FOUR (4), FIVE (5), EIGHT (8), NINE (9), TEN (10), ELEVEN (11), TWELVE (12) AND THIRTEEN (13), IN BLOCK TWO (2), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TEN (10), FIFTEEN (15), SIXTEEN (16), SEVENTEEN (17), TWENTY-NINE (29), THIRTY-ONE (31), THIRTY-TWO (32), FORTY-FOUR (44) AND FORTY-FIVE (45) IN BLOCK THREE (3), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWENTY-FIVE (25), FORTY-SIX (46) AND FIFTY-THREE (53) IN BLOCK FOUR (4), OF LAKE CONROE VILLAGE, PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS SEVENTY-ONE (71), SEVENTY-TWO (72), SEVENTY-THREE (73), SEVENTY-FOUR (74), SEVENTY-FIVE (75), SEVENTY-SIX (76), SEVENTY-SEVEN (77) AND SEVENTY-EIGHT (78), IN BLOCK FIVE (5), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THIRTY (30), THIRTY-TWO (32) FIFTY-SIX (56), FIFTY-EIGHT (58) AND FIFTY-NINE (59), IN BLOCK SIX (6), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), THIRTY (30), THIRTY-ONE (31), THIRTY-THREE (33), THIRTY-SIX (36), THIRTY-SEVEN (37), FORTY-TWO (42), FORTY-THREE (43), FIFTY-ONE (51), FIFTY-THREE (53), FIFTY-FOUR (54), SIXTY (60), SIXTY-TWO (62), SIXTY-THREE (63), SIXTY-SIX (66), SIXTY-SEVEN (67), SEVENTY-SIX (76), SEVENTY-SEVEN (77), ONE HUNDRED FOUR (104), ONE HUNDRED FIVE (105), ONE HUNDRED SIX (106), ONE HUNDRED SEVEN (107); AND ONE HUNDRED ELEVEN (111), IN BLOCK SEVEN (7), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TEN (10), ELEVEN (11) AND TWELVE (12) IN BLOCK EIGHT (8), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), FOUR (4), FIVE (5), TWELVE (12), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-NINE (29), THIRTY (30), THIRTY-ONE (31), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-SIX (36), THIRTY-SEVEN (37), THIRTY-EIGHT (38), THIRTY-NINE (39), FORTY-ONE (41), FORTY-TWO (42), FORTY-FOUR (44), FORTY-FIVE (45), FORTY-EIGHT (48), FIFTY (50), FIFTY-ONE (51), FIFTY-TWO (52), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-FIVE (55), FIFTY-SIX (56), SIXTY-TWO (62), SIXTY-THREE (63), SIXTY-FOUR (64), SIXTY-FIVE (65), SIXTY-SIX (66), SIXTY-SEVEN (67), SIXTY-NINE (69), SEVENTY-SEVEN (77), EIGHTY-SIX (86), EIGHTY-SEVEN (87), EIGHTY-NINE (89), NINETY-SEVEN (97) AND NINETY-EIGHT (98), IN BLOCK NINE (9), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FIVE (5), NINE (9) AND SIXTEEN (16), IN BLOCK TEN (10), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), SIX (6), NINE (9), TEN (10), ELEVEN (11), SIXTY-TWO (62), SIXTY-THREE (63),

SIXTY-FOUR (64), SIXTY-FIVE (65), SIXTY-SIX (66) AND EIGHTY-FOUR (84) IN BLOCK ELEVEN (11), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWENTY-SEVEN (27), TWENTY-EIGHT (28), TWENTY-NINE (29), THIRTY-ONE (31), THIRTY-TWO (32), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-FIVE (35), THIRTY-SIX (36), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-FIVE (55), FIFTY-NINE (59), SIXTY-TWO (62), SIXTY-NINE (69), SEVENTY (70), SEVENTY-FOUR (74), SEVENTY-FIVE (75), SEVENTY-SIX (76), SEVENTY-SEVEN (77), SEVENTY-EIGHT (78), SEVENTY-NINE (79), EIGHTY (80), EIGHTY-ONE (81) AND EIGHTY-FIVE (85), IN BLOCK TWELVE (12), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FOUR (4), FIVE (5), SEVEN (7), EIGHT (8), TEN (10), ELEVEN (11), THIRTEEN (13), FIFTEEN (15), SIXTEEN (16), SEVENTEEN (17), EIGHTEEN (18), NINETEEN (19), TWENTY (20), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-EIGHT (28), TWENTY-NINE (29), THIRTY (30), THIRTY-ONE (31), THIRTY-TWO (32), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-FIVE (35), FORTY-FIVE (45), FORTY-SIX (46), FORTY-SEVEN (47), FORTY-EIGHT (48), FORTY-NINE (49), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-FIVE (55), FIFTY-SIX (56), FIFTY-NINE (59), SIXTY-THREE (63), SIXTY-SIX (66), SIXTY-SEVEN (67), SEVENTY-ONE (71), SEVENTY-TWO (72), SEVENTY-THREE (73) AND SEVENTY-FIVE (75), IN BLOCK THIRTEEN (13), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FIVE (5), SIX (6), EIGHT (8), SIXTEEN (16), SEVENTEEN (17), EIGHTEEN (18), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), THIRTY (30), FORTY (40), FORTY-ONE (41), FORTY-THREE (43), FORTY-SIX (46), FIFTY-TWO (52), FIFTY-THREE (53), FIFTY-SIX (56), FIFTY-SEVEN (57), FIFTY-NINE (59), SIXTY (60), SIXTY-SIX (66), SIXTY-SEVEN (67), SIXTY-EIGHT (68), AND SIXTY-NINE (69), IN BLOCK FOURTEEN (14), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), FOUR (4), FIVE (5), SIX (6), SEVEN (7), NINE (9), TEN (10), FOURTEEN (14), FIFTEEN (15), SIXTEEN (16), TWENTY-SIX (26) AND TWENTY-SEVEN (27), IN BLOCK FIFTEEN (15), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), FIVE (5), SIX (6), SEVEN (7), NINE (9), THIRTEEN (13), SEVENTEEN (17), EIGHTEEN (18), NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), THIRTY-FIVE (35), THIRTY-SIX (36), THIRTY-SEVEN (37), FORTY (40), FORTY-TWO (42), FORTY-THREE (43), FORTY-FOUR (44), FORTY-FIVE (45), FORTY-SIX (46), FORTY-SEVEN (47), FORTY-EIGHT (48), FORTY-NINE (49), FIFTY (50), FIFTY-ONE (51), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-SIX (56), FIFTY-SEVEN (57), FIFTY-NINE (59), SIXTY-TWO (62), SIXTY-THREE (63), SIXTY-FIVE (65) AND SIXTY-SEVEN (67), IN BLOCK SIXTEEN (16), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THREE (3), SIXTEEN (16) AND SIXTY-FOUR (64) IN BLOCK SEVENTEEN (17), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), THREE (3), FOUR (4), FIVE (5), NINE (9), ELEVEN (11), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY (24), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), THIRTY (30), THIRTY-SIX (36), FORTY-SIX (46), FORTY-SEVEN (47), FIFTY-NINE (59), SIXTY-FOUR (64), SEVENTY-ONE (71) AND SEVENTY-THREE (73), IN BLOCK TWENTY (20), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), NINE (9) AND TEN (10), IN BLOCK TWENTY-ONE (21), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), NINE (9), SIXTEEN (16), TWENTY-NINE

(29), THIRTY (30), THIRTY-FOUR (34), THIRTY-NINE (39), FORTY-THREE (43), FORTY-SIX (46), FIFTY-TWO (52), FIFTY-SIX (56), FIFTY-SEVEN (57), FIFTY-EIGHT (58), FIFTY-NINE (59), SIXTY (60), SIXTY-ONE (61) AND SIXTY-TWO (62), IN BLOCK TWENTY-TWO (22), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), NINE (9), TEN (10), TWELVE (12), THIRTEEN (13), FIFTEEN (15), SEVENTEEN (17), EIGHTEEN (18), NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-EIGHT (28) AND TWENTY-NINE (29), IN BLOCK TWENTY-THREE (23), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), TWELVE (12), THIRTEEN (13), FOURTEEN (14), EIGHTEEN (18), NINETEEN (19), TWENTY (20) AND TWENTY-ONE (21), IN BLOCK TWENTY-FOUR (24), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), TEN (10), ELEVEN (11), TWELVE (12), SIXTEEN (16), EIGHTEEN (18), NINETEEN (19), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), TWENTY-NINE (29) AND SIXTY-NINE (69), IN BLOCK TWENTY-FIVE (25), AT LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26) AND TWENTY-SEVEN (27), IN BLOCK TWENTY-SIX (26), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS SIX (6), SEVEN (7), EIGHT (8), ELEVEN (11), TWELVE (12), THIRTEEN (13), FOURTEEN (14), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-NINE (29), THIRTY (30), THIRTY-ONE (31), THIRTY-TWO (32), THIRTY-THREE (33) AND THIRTY-SIX (36), IN BLOCK TWENTY-SEVEN (27), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), FIVE (5), FIFTEEN (15), SIXTEEN (16), SEVENTEEN (17), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26), THIRTY-TWO (32), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-FIVE (35), THIRTY-SIX (36), THIRTY-EIGHT (38), FORTY-ONE (41) AND FORTY-TWO (42), IN BLOCK TWENTY-EIGHT (28), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOT 21, BLOCK 1, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOT 26, BLOCK 3, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOTS 42 AND 47, BLOCK 4, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 12, 29, 33 AND 55, BLOCK 6, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 48 AND 52, BLOCK 7, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

EXHIBIT B PAGE 000071

LOTS 6, 11, 19, 21 AND 43, BLOCK 9, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOT 6, BLOCK 10, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 4, 5, 8, 12, 13, 15, 16, 17 AND 18, BLOCK 11, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOTS 4, 39, 56, 58, 71, 73, 82 AND 83, BLOCK 12, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 12 AND 74, BLOCK 13, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 44, 48, 54 AND 55, BLOCK 14, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 2, 3, 8 AND 13, BLOCK 15, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED ON PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 3, 10, 14, 15, 60, 61 AND 64, BLOCK 16, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOTS 12, 35, 38, 57, 61 AND 69, BLOCK 20, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 33, 38 AND 40, BLOCK 22, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 3, 16 AND 17, BLOCK 24, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOT 17, BLOCK 25, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 1, 6, 7, 14 AND 18, BLOCK 28, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

Note: The Company is prohibited from insuring the area or quantity of the land described herein. Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

# EXHIBIT "2"

EXHIBIT B PAGE 000073

Real Estate-Fixed Rate

# PROMISSORY NOTE

$670,950.00

July __, 2012
Effective Date
_____, 2015
Maturity Date

1.    **Definitions**.  As used in this Promissory Note, the following terms shall have the following meanings.

"Borrower" means, whether one or more, LCV Properties, LLC.

"Business Day" means a weekday, Monday through Friday, except a legal holiday or a day on which Lender is authorized or required by law to be closed.  Unless otherwise provided, the term "days" when used herein shall mean calendar days.

"Deed of Trust" means the Deed of Trust of even date with this Note, executed by Borrower for the benefit of Lender covering certain real and personal property located in Montgomery County, Texas, as it may be amended, restated, renewed and extended from time to time.

"Effective Date" means July __, 2012.

"Event of Default" shall have the meaning set forth in the other Loan Documents.

"Lender" means DAVID SEROR, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE DOUBLE S DEVELOPMENT, LLP BANKRUPTCY ESTATE, and his successors and assigns.

"Loan Documents" means this Note, the Deed of Trust, any guaranty of the indebtedness evidenced by this Note, and any and all other agreements, documents, and instruments as shall from time to time be executed and delivered in connection with this Note, and any future amendments thereto, or restatements thereof, together with any and all renewals, extensions, amendments and modifications to any such agreements, documents, and instruments.  Any settlement agreement entered into by and between the Lender and the Borrower as approved by the Bankruptcy Court in the *In re: Double S Development, LLP* bankruptcy shall also be a Loan Document.

"Loan Rate" means a fixed rate of five percent (6%) per annum.

"Maturity Date" means ___, 2015.

"Maximum Rate" means the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that such law permits Lender

EXHIBIT B PAGE 000074

to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law).

"Note" means this Promissory Note, and all modifications, increases, replacements, renewals, and extensions of this Promissory Note.

All terms used herein, whether or not defined in this Note, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such is singular or plural in nature, as the context may suggest or require.

2.    **Promise to Pay.** For value received, Borrower (jointly and severally if more than one) unconditionally hereby promises to pay to the order of Lender, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367, or at such other place as the holder of this Note may hereafter designate, the principal sum of SIX HUNDRED SEVENTY THOUSAND, NINE HUNDRED AND FIFTY DOLLARS ($670,950.00) or so much thereof as may be advanced, in lawful money of the United States of America for the payment of private debts, together with interest on the unpaid principal balance from time to time owing hereon computed from the date hereof until maturity at a per annum rate which shall be, except as otherwise provided in this Note, the lesser of (a) the Loan Rate in effect from day to day, or (b) the Maximum Rate. Interest on this Note is computed on a 365/360 simple interest basis; that is by applying the ratio of the annual interest over a year of 360 days times the outstanding principal balance, times the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. During the continuance of an Event of Default, all past due principal and matured unpaid interest, at Lender's option, shall bear interest at the Maximum Rate, whether or not the maturity of the indebtedness evidenced by this Note has been accelerated.

3.    **Payments.** This Note is payable as follows:

**Beginning on the Effective Date, the Note shall accrue interest as set forth above. The interest shall be paid monthly on the first of each month beginning on the Effective Date and continuing until the Note is paid in full at the Maturity Date.**

**On the Maturity Date the outstanding principal balance of this Note and any and all accrued but unpaid interest hereon shall be due and payable in full.**

Except as expressly provided herein or in the Loan Agreement (if applicable) to the contrary, all payments on this Note shall be applied in the following order of priority: (a) the payment or reimbursement of any expenses, costs or obligations (other than the outstanding principal balance hereof and interest hereon) for which Borrower shall be obligated or Lender shall be entitled pursuant to the provisions of this Note or the other Loan Documents, (b) the payment of accrued but unpaid interest hereon, and (c) the payment of all or any portion of the principal balance hereof then outstanding hereunder. If an Event of Default exists under this Note, then Lender may, at the sole option of Lender, apply any such payments, at any time and from time to time, to any of the items specified in clauses (a), (b) or (c) above without regard to the order of priority otherwise specified in this Section 3 and any application to the outstanding

EXHIBIT B PAGE 000075

principal balance hereof may be made in either direct or inverse order of maturity. Payments by check or draft shall not constitute payment in immediately available funds until the required amount is actually received by Lender. Payments in immediately available funds received by Lender in the place designated for payment on a Business Day prior to 11:00 a.m. Los Angeles, California time at said place of payment shall be credited prior to the close of business on the Business Day received, while payments received by Lender on a day other than a Business Day or after 11:00 a.m. Los Angeles, California time on a Business Day shall not be credited until the next succeeding Business Day. If any payment of principal or interest on this Note shall become due and payable on a day other than a Business Day, such payment shall be made on the next succeeding Business Day. Acceptance by Lender of any payment in an amount less than the full amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due may become an Event of Default. Borrower agrees that all payments of any obligation due hereunder shall be final, and if any such payment is recovered in any bankruptcy, insolvency or similar proceedings instituted by or against Borrower, all obligations due hereunder shall be automatically reinstated in respect of the obligation as to which any such payment is so recovered.

4.      **Prepayment**. Borrower may prepay this Note in part or in full without penalty before the Maturity Date, whether by cash, a new loan, renewal, or otherwise. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments under the above payment schedule. Upon a prepayment in full, points, if any, are not refundable except and to the extent the total interest and points for the time the loan is outstanding would exceed the maximum interest allowed by law at the time of prepayment. Lender agrees to accept payment from any guarantor of the indebtedness evidenced by the Note.

5.      **Waiver**. Except as otherwise provided herein and in the other Loan Documents, Borrower hereby waives all notices of nonpayment, demands for payment, presentments for payment, notices of intention to accelerate maturity, notices of actual acceleration of maturity, grace, protests, notices of protest, and any other demands or notices of any kind as to this Note, diligence in collection hereof and in bringing suit hereon, and any notice of, or defense on account of, the extension of time of payments or change in the method of payments, and without further notice hereby consents to any and all renewals and extensions in the time of payment hereof either before or after maturity and the release of any party primarily or secondarily liable hereon. Borrower agrees that Lender's acceptance of partial or delinquent payments, or failure of Lender to exercise any right or remedy contained herein or in any instrument given as security for the payment of this Note shall not be a waiver of any obligation of Borrower to Lender or constitute waiver of any similar default subsequently occurring. The holder of this Note is entitled to the benefits and security provided in the Loan Documents.

6.      **Events of Default and Remedies**. At the option of Lender, the entire unpaid principal balance and accrued interest owing hereon shall at once become due and payable upon the occurrence at any time of any of the following "Events of Default" (herein so called):

BN 11974455v1

1776789 v3 (73825.00002.000)

A. The failure of Borrower to pay (or cause to be paid) any installment of principal or interest of this Note in accordance with its terms, through acceleration, or otherwise; or

B. A Default or Event of Default occurs under any other Loan Document.

It is understood and agreed by Borrower that the foregoing "Events of Default" are cumulative and in addition to any "Defaults" or "Events of Default" contained in the other Loan Documents, or other documents modifying, renewing, extending, evidencing, securing or pertaining to this Note or the loan evidenced hereby. Upon the occurrence of any of the Events of Default, then the holder hereof may, at its option, do any one or more of the following: (a) declare the entire unpaid balance of principal of and accrued, unpaid interest upon this Note to be immediately due and payable, (b) reduce any claim to judgment, (c) foreclose all liens and security interests securing payment thereof or any part thereof, and/or (d) without notice of default or demand, pursue and enforce any of Lender's other rights and remedies provided under or pursuant to any applicable laws or agreements. All rights and remedies of Lender shall be cumulative and concurrent and may be pursued singularly, successively, or together, at the sole discretion of Lender, and may be exercised as often as the occasion therefor shall arise and whether or not Lender has initiated any foreclosure proceeding, judicial or otherwise. Failure by Lender to exercise any right or remedy upon the occurrence of an Event of Default shall not constitute a waiver of the right to exercise such right or remedy upon the occurrence of any subsequent Event of Default. In the event that Lender, after the occurrence of an Event of Default hereunder, consults an attorney regarding the enforcement of any of its rights under this Note, or if this Note is placed in the hands of an attorney for collection or if suit be brought to enforce this Note, Borrower promises to pay all costs thereof, including reasonable attorneys' fees. Such costs and attorneys' fees shall include, without limitation, costs and reasonable attorneys' fees incurred by Lender, including in any appellate proceedings or in any proceedings under any present or future federal bankruptcy act, state receivership law or probate.

7. **Savings Clause; Ceiling Election**. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the indebtedness evidenced by this Note and the Related Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (a) contracted for, charged, taken, reserved or received pursuant to this Note, any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (b) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of this Note and/or any and all indebtedness paid or payable by Borrower to Lender pursuant to any Loan Document other than the Note (such other indebtedness being referred to in this Section as the "Related Indebtedness"), or (c) Borrower will have paid or Lender will have received by reason of any prepayment by Borrower of this Note and/or the Related Indebtedness, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Rate theretofore collected by Lender shall be credited on the principal balance of this Note and/or the Related Indebtedness (or, if this Note

BN 11974455v1

1776789 v3 (73825.00002.000)

EXHIBIT B PAGE 000077

and the Related Indebtedness have been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term of this Note, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest was received in an amount in excess of the Maximum Rate, either refund such excess interest to Borrower and/or credit such excess interest against this Note then owing by Borrower to Lender. Borrower hereby agrees that as a condition precedent to any claim or counterclaim (in which event such proceeding shall be abated for such time period) seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against this Note then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any debt evidenced by this Note and/or the other Loan Documents shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of this Note (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Note does not exceed the Maximum Rate from time to time in effect and applicable to this Note for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code apply to this Note. To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Rate payable on the Note, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect.

8.   **GOVERNING LAW AND VENUE**.   THIS NOTE IS EXECUTED AND DELIVERED AS AN INCIDENT TO A LENDING TRANSACTION NEGOTIATED AND CONSUMMATED IN MONTGOMERY COUNTY, TEXAS, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. BORROWER, FOR ITSELF AND ITS SUCCESSORS AND ASSIGNS, HEREBY IRREVOCABLY (I) SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS IN TEXAS, (II) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT IT MAY NOW OR IN THE FUTURE HAVE TO THE LAYING OF VENUE OF ANY LITIGATION ARISING OUT OF OR IN

EXHIBIT B PAGE 000078

CONNECTION WITH THIS NOTE OR ANY LOAN DOCUMENT BROUGHT IN THE DISTRICT COURT OF MONTGOMERY COUNTY, TEXAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, (III) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM, AND (IV) AGREES THAT ANY LEGAL PROCEEDING AGAINST ANY PARTY TO ANY OF THE LOAN DOCUMENTS ARISING OUT OF OR IN CONNECTION WITH ANY OF THE LOAN DOCUMENTS MAY BE BROUGHT IN ONE OF THE FOREGOING COURTS.

9.    **WAIVER OF JURY TRIAL**. BORROWER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY KNOWINGLY, INTENTIONALLY, IRREVOCABLY, UNCONDITIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

10.    **Miscellaneous.**

A.    Notices or communications to be given under this Note shall be given to the respective parties in writing as set forth in the Deed of Trust.

B.    Time is of the essence of this Note.

C.    This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, termination or discharge is sought.

D.    This Note is secured, in part, by the Deed of Trust to which reference is hereby made for a description of the mortgaged premises, the nature and extent of the security, and the rights of the Lender in respect thereof.

E.    This Note and all the covenants, promises and agreements contained herein shall be binding upon Borrower's successors, assigns, heirs and personal representatives and inure to the benefit of Lender's successors and assigns.

F.    At the option of Lender, Borrower will pay Lender, on demand, (i) a "late charge" equal to five percent (5%) of the amount of any installment on this Note when such installment is not paid within fifteen (15) days following the date such installment is due and (ii) a processing fee in the amount of $25.00 for each check which is provided to Lender by Borrower in payment for an obligation owing to Lender under any Loan Document but is returned or dishonored for any reason, in order to cover the additional expenses involved in handling delinquent and returned or dishonored payments.

6

G.    If any provision of this Note or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, then neither the remainder of this Note nor the application of such provision to other persons or circumstances nor the other instruments referred to herein shall be affected thereby, but rather shall be enforced to the greatest extent permitted by applicable law.

EXECUTED as of the Effective Date.

LCV Properties, LLC, a Texas Limited Liability Company

By:_____
       Name: Josh Rothstein
       Title: Member


By:_____
       Name: Ron Regwan
       Title: Member


By:_____
       Name: Stefan Pardoe
       Title: Member


By:_____
       Name: Pat Cain
       Title: Member

BN 11974455v1                                                1776789 v3 (73825.00002.000)

# EXHIBIT "3"

EXHIBIT B PAGE 000081

## UNLIMITED GUARANTY

**THIS UNLIMITED GUARANTY** ("Guaranty") is made as of July____, 2012, by Guarantor (as hereinafter defined) for the benefit of Lender (as hereinafter defined).

1.    Definitions.  As used in this Guaranty, the following terms have the meanings indicated below:

"Affiliate," when used with respect to any Person, means any other Person that, directly or indirectly, controls or is controlled by or is under common control with such Person.  For purposes of this definition "control" (including the terms "controlled by" and under "common control with"), with respect to any person, means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"Borrower" (whether one or more) means LCV Properties, LLC and such Person's heirs, personal representatives, successors and assigns.

"Debtor Relief Laws" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to Bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors generally from time to time in effect.

"Guaranteed Indebtedness" means THIRTY PERCENT (30%) of (a) all indebtedness, obligations and liabilities of Borrower to Lender of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Lender, be or have been payable to or in favor of a third party and subsequently acquired by Lender (it being contemplated that Lender may make such acquisitions from third parties), including, without limitation, all indebtedness, obligations and liabilities of Borrower to Lender now existing or hereafter arising by note, draft, acceptance, guaranty, endorsement, lease, letter of credit, assignment, purchase, overdraft, discount, indemnity agreement or otherwise, including, without limitation, all amounts owing pursuant to the Promissory Note, (b) all accrued but unpaid interest on any of the indebtedness described in (a) above, and including any and all pre-and post-maturity interest thereon, including, without limitation, post-petition interest and expenses (including attorneys' fees), if Borrower is the debtor in a Bankruptcy proceeding under the Debtor Relief Laws, whether or not allowed under any Debtor Relief Law, (c) all obligations of Borrower and other Persons to Lender under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in (a) and (b) above (collectively, the "Loan Documents," which shall include this Guaranty), (d) all costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in (a), (b) and (c) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including, without limitation, all

BN 11974261v1                    1776540 v3 (73825.00002.000)

reasonable attorneys' fees, and (e) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (a), (b), (c) and (d) above.

"Guarantor" (whether one or more) means JOSH ROTHSTEIN and such Person's heirs, personal representatives, successors and assigns, whose address for notice purposes is the following:

_____

"Lender" means DAVID SEROR, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE DOUBLE S DEVELOPMENT, LLP BANKRUPTCY ESTATE, and his successors and assigns, whose address for notice purposes is the following:

> 21650 Oxnard Street, Suite 500
> Woodland Hills, California 91367
> Attn.: David Seror

"Person" means any individual, corporation, partnership, joint venture, limited liability company or partnership (general or limited), association, trust, unincorporated association, joint stock company, government, municipality, political subdivision or agency, or other entity.

"Promissory Note" means that certain Promissory Note dated on even date herewith, in the original principal amount of SIX HUNDRED SEVENTY THOUSAND, NINE HUNDRED AND FIFTY DOLLARS ($670,950.00), executed by Borrower and payable to the order of Lender and all amendments, restatements, increases, renewals and extensions thereof.

2.    Payment.   Guarantor agrees that the extension of credit to Borrower is a substantial and direct benefit to Guarantor. As an inducement to Lender to extend or continue to extend credit and other financial accommodations to Borrower, Guarantor, for value received, jointly and severally, does hereby unconditionally and absolutely guarantee the prompt and full payment and performance of the Guaranteed Indebtedness when due or declared to be due and at all times thereafter. Guarantor shall promptly pay the amount due thereon to Lender without notice or demand, of any kind or nature, in lawful money of the United States of America.

3.    Character of Obligations.   This is an absolute, continuing and unconditional guaranty of payment and not of collection and if at any time or from time to time there is no outstanding Guaranteed Indebtedness, the obligations of Guarantor with respect to any and all Guaranteed Indebtedness incurred thereafter shall not be affected. All Guaranteed Indebtedness heretofore, concurrently herewith or hereafter made by Lender to Borrower shall be conclusively presumed to have been made or acquired in acceptance hereof. Guarantor shall be liable, jointly and severally, with Borrower and any other guarantor of all or any part of the Guaranteed Indebtedness.

4.    No Right of Revocation.   Guarantor understands and agrees that Guarantor may not revoke its future obligations under this Guaranty at any time as long as any Guaranteed Indebtedness is outstanding or as long as Lender is under any obligation to extend credit, in any

EXHIBIT B PAGE 000083

form, to Borrower. If Guarantor is an individual and dies, Guarantor's obligations under this Guaranty shall be binding on Guarantor's estate.

5.    <u>Representations and Warranties</u>. Guarantor hereby represents and warrants the following to Lender:

(a)    This Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (i) if Guarantor is a corporation or limited liability company, the Board of Directors or other governing body of Guarantor has determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, or (ii) if Guarantor is a partnership, the requisite number of its partners have determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (iii) the value of the consideration received and to be received by Guarantor is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly; and

(b)    Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition of Borrower and Guarantor is not relying on Lender to provide such information to Guarantor either now or in the future; and

(c)    Guarantor has the power and authority to execute, deliver and perform this Guaranty and any other agreements executed by Guarantor contemporaneously herewith, and the execution, delivery and performance of this Guaranty and any other agreements executed by Guarantor contemporaneously herewith do not and will not violate (i) any agreement or instrument to which Guarantor is a party, (ii) any law, rule, regulation or order of any governmental authority to which Guarantor is subject, or (iii) its organizational documents; and

(d)    Neither Lender nor any other party has made any representation or warranty to Guarantor in order to induce Guarantor to execute this Guaranty; and

(e)    The financial statements and other financial information regarding Guarantor heretofore and hereafter delivered to Lender are and shall be true and correct in all material respects and fairly present the financial position of Guarantor as of the dates thereof, and no material adverse change has occurred in the financial condition of Guarantor reflected in the financial statements and other financial information regarding Guarantor heretofore delivered to Lender since the date of the last statement thereof; and

(f)    As of the date hereof, and after giving effect to this Guaranty and the obligations evidenced hereby, (i) Guarantor is and will be solvent, (ii) the fair saleable value of Guarantor's assets exceeds and will continue to exceed its liabilities (both fixed and contingent), (iii) Guarantor is and will continue to be able to pay its debts as they mature, and (iv) if Guarantor is not an individual, Guarantor has and will continue to have sufficient capital to carry on its business and all businesses in which it is about to engage.

6.    <u>Covenants</u>. Guarantor hereby covenants and agrees with Lender as follows:

BN 11974261v1    1776540 v3 (73825.00002.000)

EXHIBIT B PAGE 000084

(a)      Guarantor shall not, so long as its obligations under this Guaranty continue, transfer or pledge any material portion of its assets for less than full and adequate consideration; and

(b)      Guarantor shall promptly furnish to Lender from time to time such financial statements and other financial information of Guarantor as Lender may reasonably require, in form and substance satisfactory to Lender; provided, however, if, pursuant to the other Loan Documents, Guarantor is obligated to provide financial statements to Lender at specific times and in a specific format, those provisions shall control over this Section 6(b); and

(c)      Guarantor shall promptly furnish to Lender such additional information concerning Guarantor as Lender may reasonably request; and

(d)      Guarantor shall comply with all terms and provisions of the Loan Documents that apply to Guarantor; and

(e)      Guarantor shall promptly inform Lender of (i) any litigation or governmental investigation against Guarantor or affecting any security for all or any part of the Guaranteed Indebtedness or this Guaranty which, if determined adversely, might reasonably be expected to have a material adverse effect upon the financial condition of Guarantor or upon such security or might reasonably be excepted to cause a default under any of the Loan documents, (ii) any claim or controversy which might reasonably be expected to become the subject of such litigation or governmental investigation, and (iii) any material adverse change in the financial condition of Guarantor.;

7.      <u>Consent and Waiver.</u>

(a)      Guarantor waives (i) promptness, diligence and notice of acceptance of this Guaranty and notice of the incurring of any obligation, indebtedness or liability to which this Guaranty applies or may apply and, except as expressly required by this Guaranty or the other Loan Documents, waives presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, diligence in enforcement and indulgences of every kind, and (ii) the taking of any other action by Lender,  including, without limitation, giving any notice of default or any other notice to, or making any demand on, Borrower, any other guarantor of all or any part of the Guaranteed Indebtedness or any other party.

(b)      Guarantor waives any rights Guarantor has under, or any requirements imposed by, (i) **Chapter 43 of the Texas Business and Commerce Code, as amended (except rights under Section 43.004);** (ii) Section 17.001 of the Texas Civil Practice and Remedies Code, as amended, (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended, and (iv) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended

(c)      Lender may at any time, without the consent of or notice to Guarantor, without incurring responsibility to Guarantor and without impairing, releasing, reducing or affecting the obligations of Guarantor hereunder:  (i) change the manner, place or terms of payment of all or any part of the Guaranteed Indebtedness, or renew, extend, modify, rearrange or alter all or any part of the Guaranteed Indebtedness; (ii) change the interest rate accruing on

4

1776540 v3 (73825.00002.000)

any of the Guaranteed Indebtedness (including, without limitation, any periodic change in such interest rate that occurs because such Guaranteed Indebtedness accrues interest at a variable rate which may fluctuate from time to time); (iii) sell, exchange, release, surrender, subordinate, realize upon or otherwise deal with in any manner and in any order any collateral for all or any part of the Guaranteed Indebtedness; (iv) neglect, delay, omit, fail or refuse to take or prosecute any action for the collection of all or any part of the Guaranteed Indebtedness or this Guaranty or to take or prosecute any action in connection with any of the Loan Documents; (v) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (vi) settle or compromise all or any part of the Guaranteed Indebtedness and subordinate the payment of all or any part of the Guaranteed Indebtedness to the payment of any obligations, indebtedness or liabilities which may be due or become due to Lender or others; (vii) apply any deposit balance, fund, payment, collections through process of law or otherwise or other collateral of Borrower to the satisfaction and liquidation of the indebtedness or obligations of Borrower to Lender, if any, not guaranteed under this Guaranty; and (viii) apply any sums paid to Lender by Guarantor, Borrower or others to the Guaranteed Indebtedness in such order and manner as Lender, in its sole discretion, may determine.

(d)    Should Lender seek to enforce the obligations of Guarantor hereunder by action in any court or otherwise, Guarantor waives any requirement, substantive or procedural, that (i) Lender first enforce any rights or remedies against Borrower or any other person or entity liable to Lender for all or any part of the Guaranteed Indebtedness, including, without limitation, that a judgment first be rendered against Borrower or any other person or entity, or that Borrower or any other person or entity should be joined in such cause, or (ii) Lender shall first enforce rights against any collateral which shall ever have been given to secure all or any part of the Guaranteed Indebtedness or this Guaranty.  Such waiver shall be without prejudice to Lender's right, at its option, to proceed against Borrower or any other person or entity, whether by separate action or by joinder.

(e)    In addition to any other waivers, agreements and covenants of Guarantor set forth herein, Guarantor hereby further waives and releases all claims, causes of action, defenses and offsets for any act or omission of Lender, its directors, officers, employees, representatives or agents in connection with Lender's administration of the Guaranteed Indebtedness, except for Lender's willful misconduct and gross negligence.

8.    <u>Obligations Not Impaired.</u>

(a)    Guarantor agrees that its obligations  under this Guaranty shall  not  be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (i) the death, disability or lack of corporate power of Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, (ii) any receivership, insolvency Bankruptcy, disability or other proceedings affecting Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, or any of their respective property; (iii) the partial or total release or discharge of Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness, or any other person or entity from the performance of any obligation contained in any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, whether occurring by reason of law or otherwise;  (iv) the taking or accepting of any collateral for all or any part of the Guaranteed Indebtedness or this

BN 11974261v1    1776540 v3 (73825.00002.000)

Guaranty; (v) the taking or accepting of any other guaranty for all or any part of the Guaranteed Indebtedness; (vi) any failure by Lender to acquire, perfect or continue any lien or security interest on collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty; (vii) the impairment of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty;  (viii) any failure by Lender to sell any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty in a commercially reasonable manner or as otherwise required by law; (ix) any invalidity or unenforceability of or defect of deficiency in any of the Loan Documents; or (x) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness.

(b)     This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of all or any part of the Guaranteed Indebtedness is rescinded or must otherwise be returned by Lender upon the insolvency, Bankruptcy or reorganization of Borrower, Guarantor, any other guarantor of all or any part of the Guaranteed Indebtedness, or otherwise, all as though such payment had not been made.

(c)     None of the following shall affect Guarantor's liability hereunder:  (i) the unenforceability of all or any part of the Guaranteed Indebtedness against Borrower by reason of the fact that the Guaranteed Indebtedness exceeds the amount permitted by law; (ii) the act of creating all or any part of the Guaranteed Indebtedness is ultra vires; or (iii) the officers or partners creating all or any part of the Guaranteed Indebtedness acted in excess of their authority. Guarantor hereby acknowledges that withdrawal from, or termination of, any ownership interest in Borrower now or hereafter owned or held by Guarantor shall not alter, affect or in any way limit the obligations of Guarantor hereunder.

9.     Insolvency.  Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could reasonably be expected to suspend or otherwise adversely affect the rights and remedies of Lender granted hereunder, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of Guarantor to Lender (without regard to whether Borrower is then in default under the Loan Documents or whether the Guaranteed Indebtedness, or any part thereof is then due and owing by Borrower to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

10.     Subrogation.  Until the Guaranteed Indebtedness has been paid, in full, Guarantor hereby covenants and agrees that it shall not assert, enforce, or otherwise exercise (a) any right of subrogation to any of the rights or liens of Lender against Borrower or any other guarantor of the Guaranteed Indebtedness or any collateral or other security, or (b) unless such rights are expressly made subordinate to the Guaranteed Indebtedness (in form and upon terms acceptable to Lender) and the rights of Lender under this Guaranty and the Loan Documents, any right of

EXHIBIT B PAGE 000087

recourse, reimbursement, contribution, indemnification, or similar right against Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness.

11.    Subordinate Debt.  All principal of and interest on all indebtedness, liabilities, and obligations of Borrower to Guarantor (the "Subordinated Debt") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Indebtedness.  Until such time as the Guaranteed Indebtedness is paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from Borrower with respect to the Subordinated Debt at anytime an Event of Default or Default under the Loan Documents has occurred and is continuing; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Indebtedness.  If Guarantor has executed a separate subordination agreement ("Subordination Agreement") applicable to the Subordinated Debt, the Subordination Agreement shall control over any inconsistent provision in this Section 11.

12.    No Fraudulent Transfer.  It is the intention of Guarantor and Lender that the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to Guarantor.  Accordingly, notwithstanding anything to the contrary contained in this Guaranty or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Indebtedness, the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be limited to that amount which after giving effect thereto would not (a) render Guarantor insolvent, (b) result in the fair saleable value of the assets of Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in clauses (a), (b) and (c) of this Section 12, are determined under applicable law, if the obligations of Guarantor hereunder would otherwise be set aside, terminated, annulled or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court.  For purposes of this Guaranty, the term "applicable law" means as to Guarantor each statute, law, ordinance, regulation, order, judgment, injunction or decree of the United States or any state or commonwealth, any municipality, any foreign country, or any territory, possession or tribunal applicable to Guarantor.

13.    Actions against Guarantor.  In the event of a default in the payment or performance of all or any part of the Guaranteed Indebtedness, or if an Event of Default occurs under any Loan Document, when all or any portion of the Guaranteed Indebtedness becomes due, whether by its terms, by acceleration or otherwise, Guarantor shall, upon demand, promptly pay the amount due thereon to Lender, in lawful money of the United States, at Lender's address set forth above.  One or more successive or concurrent actions may be brought against Guarantor, either in the same action in which Borrower is sued or in separate actions, as often as Lender deems advisable.  The exercise by Lender of any right or remedy under this Guaranty or under any other agreement or instrument, at law, in equity otherwise, shall not preclude

BN 11974261v1

1776540 v3 (73825.00002.000)

concurrent or subsequent exercise of any other right or remedy. The books and records of Lender shall be admissible in evidence in any action or proceeding involving this Guaranty and shall be prima facie evidence of the payments made on, and the outstanding balance of, the Guaranteed Indebtedness.

14.    Notice of Sale. Except as otherwise required by law, in the event that Guarantor is entitled to received any notice under the Uniform Commercial Code, as it exists in the state governing any such notice, of the sale or other disposition of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty, reasonable notice shall be deemed given when such notice is deposited in the United States mail, postage prepaid, at the address for Guarantor set forth above, ten (10) days prior to the date any public sale, or after which any private sale of any such collateral is to be held; provided, however, that notice given in any other reasonable manner or at any other reasonable time shall be sufficient.

15.    Waiver by Lender. No delay on the part of Lender in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right. In no event shall any waiver of the provisions of this Guaranty be effective unless the same be in writing and signed by an officer of Lender, and then only in the specific instance and for the purpose given.

16.    Successors and Assigns. This Guaranty is for the benefit of Lender, its successors and assigns. This Guaranty is binding upon Guarantor and Guarantor's heirs, executors, administrators, personal representatives and successors, including, without limitation, any person or entity obligated by operation of law upon the reorganization, merger, consolidation or other change in the organizational structure of Guarantor.

17.    Setoff Rights. Lender shall have the right to set off and apply against the Guaranteed Indebtedness, any and all deposits owing from Lender to Guarantor if Guarantor's obligation to remit all or any portion of the Guaranteed Indebtedness has matured under this Guaranty irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty. The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

18.    Costs and Expenses. Guarantor shall pay on demand by Lender all costs and expenses, including, without limitation, all reasonable attorneys' fees incurred by Lender in connection with the enforcement and/or collection of this Guaranty. This covenant shall survive the payment of the Guaranteed Indebtedness.

19.    Severability. If any provision of this Guaranty is held by a court of competent jurisdiction to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, shall not impair or invalidate the remainder of this Guaranty, and the effect thereof shall be confined to the provision held to be illegal, invalid or unenforceable.

20.    No Obligation. Nothings contained herein shall be construed as an obligation on the part of Lender to extend or continue to extend credit to Borrower.

21.    Amendment. No modification or amendment of any provision of this Guaranty, nor consent to any departure by Guarantor therefrom, shall be effective unless the same shall be

BN 11974261v1                                                                                        1776540 v3 (73825.00002.000)

EXHIBIT B PAGE 000089

in writing and signed by an officer of Lender, and then shall be effective only in the specific instance and for the purpose for which given.

22.    <u>Cumulative Rights</u>.  All rights and remedies of Lender hereunder are cumulative of each other and of ever other right or remedy which Lender may otherwise have at law or in equity or under any instrument or agreement, and the exercise of one or more of such rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of any other rights or remedies.

23.    <u>Compliance with Applicable Usury Laws</u>.  Notwithstanding any other provision of this Guaranty or of any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, Guarantor and Lender by its acceptance hereof agree that Guarantor shall never be required or obligated to pay interest in excess of the maximum nonusurious interest rate as may be authorized by applicable law for the written contracts which constitute the Guaranteed Indebtedness.  It is the intention of Guarantor and Lender to conform strictly to the applicable laws which limit interest rates, and any of the aforesaid contracts for interest, if and to the extent payable by Guarantor, shall be held to be subject to reduction to the maximum nonusurious interest rate allowed under said law.

24.    <u>Descriptive Headings</u>.  The headings in this Guaranty are for convenience only and shall not define or limit the provisions hereof.

25.    <u>Gender</u>.  Within this Guaranty, words of any gender shall be held and construed to include the other gender.

26.    <u>Further Assurances</u>.  Guarantor will, on request of Lender, promptly (a) correct any defect, error or omission which may be discovered in the contents of this Guaranty or in any other Loan Document; (b) execute, acknowledge, authorize, deliver and record or file such further instruments (including, without limitation, further guaranty agreements) and (c) do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Guaranty.

27.    <u>Entire Agreement</u>.  This Guaranty contains the entire agreement between Guarantor and Lender regarding the subject matter hereof and supersedes all prior written and oral agreements and understandings, if any, regarding same; provided, however, this Guaranty is in addition to and does not replace, cancel, modify or affect any other guaranty of Guarantor now or hereafter held by Lender that related to Borrower and different indebtedness.

28.    <u>GOVERNING LAW AND VENUE</u>.    THIS GUARANTY IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN MONTGOMERY COUNTY, TEXAS AND THE LAWS (EXCLUDING CHOICE OF LAW PROVISIONS) OF SUCH STATE SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS GUARANTY, EXCEPT TO THE EXTENT FEDERAL LAWS OTHERWISE GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF ALL OR ANY PART OF THIS GUARANTY.  ALL LEGAL ACTIONS RELATED TO THIS GUARANTY SHALL BE

BROUGHT IN THE APPROPRIATE COURT OF LAW LOCATED IN MONTGOMERY COUNTY, TEXAS, TO THE EXCLUSION OF ALL OTHER VENUES.

29.    <u>WAIVER OF RIGHT TO JURY</u>.  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY BORROWER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS.

30.    <u>NO ORAL AGREEMENTS</u>.  THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Signature Page Follows]

EXECUTED as of the date first above written.

GUARANTOR:

_____

JOSH ROTHSTEIN, individually

BN 11974261v1                                    1776540 v3 (73825.00002.000)

EXHIBIT B PAGE 000092

# UNLIMITED GUARANTY

**THIS UNLIMITED GUARANTY** ("Guaranty") is made as of July____, 2012, by Guarantor (as hereinafter defined) for the benefit of Lender (as hereinafter defined).

1.    Definitions.  As used in this Guaranty, the following terms have the meanings indicated below:

"Affiliate," when used with respect to any Person, means any other Person that, directly or indirectly, controls or is controlled by or is under common control with such Person.  For purposes of this definition "control" (including the terms "controlled by" and under "common control with"), with respect to any person, means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"Borrower" (whether one or more) means LCV Properties, LLC and such Person's heirs, personal representatives, successors and assigns.

"Debtor Relief Laws" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to Bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors generally from time to time in effect.

"Guaranteed Indebtedness" means THIRTY PERCENT (30%) of (a) all indebtedness, obligations and liabilities of Borrower to Lender of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Lender, be or have been payable to or in favor of a third party and subsequently acquired by Lender (it being contemplated that Lender may make such acquisitions from third parties), including, without limitation, all indebtedness, obligations and liabilities of Borrower to Lender now existing or hereafter arising by note, draft, acceptance, guaranty, endorsement, lease, letter of credit, assignment, purchase, overdraft, discount, indemnity agreement or otherwise, including, without limitation, all amounts owing pursuant to the Promissory Note, (b) all accrued but unpaid interest on any of the indebtedness described in (a) above, and including any and all pre-and post-maturity interest thereon, including, without limitation, post-petition interest and expenses (including attorneys' fees), if Borrower is the debtor in a Bankruptcy proceeding under the Debtor Relief Laws, whether or not allowed under any Debtor Relief Law, (c) all obligations of Borrower and other Persons to Lender under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in (a) and (b) above (collectively, the "Loan Documents," which shall include this Guaranty), (d) all costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in (a), (b) and (c) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including, without limitation, all

1776540 v3 (73825.00002.000)

reasonable attorneys' fees, and (e) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (a), (b), (c) and (d) above.

"Guarantor" (whether one or more) means RON REGWAN and such Person's heirs, personal representatives, successors and assigns, whose address for notice purposes is the following:

> 1875 Century Park East, Suite 700
> Los Angeles, California 90067
> Attn.: Ron Regwan

"Lender" means DAVID SEROR, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE DOUBLE S DEVELOPMENT, LLP BANKRUPTCY ESTATE, and his successors and assigns, whose address for notice purposes is the following:

> 21650 Oxnard Street, Suite 500
> Woodland Hills, California 91367
> Attn.: David Seror

"Person" means any individual, corporation, partnership, joint venture, limited liability company or partnership (general or limited), association, trust, unincorporated association, joint stock company, government, municipality, political subdivision or agency, or other entity.

"Promissory Note" means that certain Promissory Note dated on even date herewith, in the original principal amount of SIX HUNDRED SEVENTY THOUSAND, NINE HUNDRED AND FIFTY DOLLARS ($670,950.00), executed by Borrower and payable to the order of Lender and all amendments, restatements, increases, renewals and extensions thereof.

2.    Payment.  Guarantor agrees that the extension of credit to Borrower is a substantial and direct benefit to Guarantor.  As an inducement to Lender to extend or continue to extend credit and other financial accommodations to Borrower, Guarantor, for value received, jointly and severally, does hereby unconditionally and absolutely guarantee the prompt and full payment and performance of the Guaranteed Indebtedness when due or declared to be due and at all times thereafter.  Guarantor shall promptly pay the amount due thereon to Lender without notice or demand, of any kind or nature, in lawful money of the United States of America.

3.    Character of Obligations.  This is an absolute, continuing and unconditional guaranty of payment and not of collection and if at any time or from time to time there is no outstanding Guaranteed Indebtedness, the obligations of Guarantor with respect to any and all Guaranteed Indebtedness incurred thereafter shall not be affected.  All Guaranteed Indebtedness heretofore, concurrently herewith or hereafter made by Lender to Borrower shall be conclusively presumed to have been made or acquired in acceptance hereof.  Guarantor shall be liable, jointly and severally, with Borrower and any other guarantor of all or any part of the Guaranteed Indebtedness.

4.    No Right of Revocation.  Guarantor understands and agrees that Guarantor may not revoke its future obligations under this Guaranty at any time as long as any Guaranteed Indebtedness is outstanding or as long as Lender is under any obligation to extend credit, in any

BN 11974249v1

1776540 v3 (73825.00002.000)

EXHIBIT B PAGE 000094

form, to Borrower. If Guarantor is an individual and dies, Guarantor's obligations under this Guaranty shall be binding on Guarantor's estate.

5.      <u>Representations and Warranties</u>.  Guarantor hereby represents and warrants the following to Lender:

(a)      This Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (i) if Guarantor is a corporation or limited liability company, the Board of Directors or other governing body of Guarantor has determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, or (ii) if Guarantor is a partnership, the requisite number of its partners have determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (iii) the value of the consideration received and to be received by Guarantor is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly; and

(b)      Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition of Borrower and Guarantor is not relying on Lender to provide such information to Guarantor either now or in the future; and

(c)      Guarantor has the power and authority to execute, deliver and perform this Guaranty and any other agreements executed by Guarantor contemporaneously herewith, and the execution, delivery and performance of this Guaranty and any other agreements executed by Guarantor contemporaneously herewith do not and will not violate (i) any agreement or instrument to which Guarantor is a party, (ii) any law, rule, regulation or order of any governmental authority to which Guarantor is subject, or (iii) its organizational documents; and

(d)      Neither Lender nor any other party has made any representation or warranty to Guarantor in order to induce Guarantor to execute this Guaranty; and

(e)      The financial statements and other financial information regarding Guarantor heretofore and hereafter delivered to Lender are and shall be true and correct in all material respects and fairly present the financial position of Guarantor as of the dates thereof, and no material adverse change has occurred in the financial condition of Guarantor reflected in the financial statements and other financial information regarding Guarantor heretofore delivered to Lender since the date of the last statement thereof; and

(f)      As of the date hereof, and after giving effect to this Guaranty and the obligations evidenced hereby, (i) Guarantor is and will be solvent, (ii) the fair saleable value of Guarantor's assets exceeds and will continue to exceed its liabilities (both fixed and contingent), (iii) Guarantor is and will continue to be able to pay its debts as they mature, and (iv) if Guarantor is not an individual, Guarantor has and will continue to have sufficient capital to carry on its business and all businesses in which it is about to engage.

6.      <u>Covenants</u>.  Guarantor hereby covenants and agrees with Lender as follows:

1776540 v3 (73825.00002.000)

(a)    Guarantor shall not, so long as its obligations under this Guaranty continue, transfer or pledge any material portion of its assets for less than full and adequate consideration; and

(b)    Guarantor shall promptly furnish to Lender from time to time such financial statements and other financial information of Guarantor as Lender may reasonably require, in form and substance satisfactory to Lender; provided, however, if, pursuant to the other Loan Documents, Guarantor is obligated to provide financial statements to Lender at specific times and in a specific format, those provisions shall control over this Section 6(b); and

(c)    Guarantor shall promptly furnish to Lender such additional information concerning Guarantor as Lender may reasonably request; and

(d)    Guarantor shall comply with all terms and provisions of the Loan Documents that apply to Guarantor; and

(e)    Guarantor shall promptly inform Lender of (i) any litigation or governmental investigation against Guarantor or affecting any security for all or any part of the Guaranteed Indebtedness or this Guaranty which, if determined adversely, might reasonably be expected to have a material adverse effect upon the financial condition of Guarantor or upon such security or might reasonably be excepted to cause a default under any of the Loan documents, (ii) any claim or controversy which might reasonably be expected to become the subject of such litigation or governmental investigation, and (iii) any material adverse change in the financial condition of Guarantor.;

7.    Consent and Waiver.

(a)    Guarantor waives (i) promptness, diligence and notice of acceptance of this Guaranty and notice of the incurring of any obligation, indebtedness or liability to which this Guaranty applies or may apply and, except as expressly required by this Guaranty or the other Loan Documents, waives presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, diligence in enforcement and indulgences of every kind, and (ii) the taking of any other action by Lender,  including, without limitation, giving any notice of default or any other notice to, or making any demand on, Borrower, any other guarantor of all or any part of the Guaranteed Indebtedness or any other party.

(b)    Guarantor waives any rights Guarantor has under, or any requirements imposed by, (i) **Chapter 43 of the Texas Business and Commerce Code, as amended (except rights under Section 43.004);** (ii) Section 17.001 of the Texas Civil Practice and Remedies Code, as amended, (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended, and (iv) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended

(c)    Lender may at any time, without the consent of or notice to Guarantor, without incurring responsibility to Guarantor and without impairing, releasing, reducing or affecting the obligations of Guarantor hereunder: (i) change the manner, place or terms of payment of all or any part of the Guaranteed Indebtedness, or renew, extend, modify, rearrange or alter all or any part of the Guaranteed Indebtedness; (ii) change the interest rate accruing on

1776540 v3 (73825.00002.000)

BN 11974249v1

any of the Guaranteed Indebtedness (including, without limitation, any periodic change in such interest rate that occurs because such Guaranteed Indebtedness accrues interest at a variable rate which may fluctuate from time to time); (iii) sell, exchange, release, surrender, subordinate, realize upon or otherwise deal with in any manner and in any order any collateral for all or any part of the Guaranteed Indebtedness; (iv) neglect, delay, omit, fail or refuse to take or prosecute any action for the collection of all or any part of the Guaranteed Indebtedness or this Guaranty or to take or prosecute any action in connection with any of the Loan Documents; (v) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (vi) settle or compromise all or any part of the Guaranteed Indebtedness and subordinate the payment of all or any part of the Guaranteed Indebtedness to the payment of any obligations, indebtedness or liabilities which may be due or become due to Lender or others; (vii) apply any deposit balance, fund, payment, collections through process of law or otherwise or other collateral of Borrower to the satisfaction and liquidation of the indebtedness or obligations of Borrower to Lender, if any, not guaranteed under this Guaranty; and (viii) apply any sums paid to Lender by Guarantor, Borrower or others to the Guaranteed Indebtedness in such order and manner as Lender, in its sole discretion, may determine.

(d)    Should Lender seek to enforce the obligations of Guarantor hereunder by action in any court or otherwise, Guarantor waives any requirement, substantive or procedural, that (i) Lender first enforce any rights or remedies against Borrower or any other person or entity liable to Lender for all or any part of the Guaranteed Indebtedness, including, without limitation, that a judgment first be rendered against Borrower or any other person or entity, or that Borrower or any other person or entity should be joined in such cause, or (ii) Lender shall first enforce rights against any collateral which shall ever have been given to secure all or any part of the Guaranteed Indebtedness or this Guaranty. Such waiver shall be without prejudice to Lender's right, at its option, to proceed against Borrower or any other person or entity, whether by separate action or by joinder.

(e)    In addition to any other waivers, agreements and covenants of Guarantor set forth herein, Guarantor hereby further waives and releases all claims, causes of action, defenses and offsets for any act or omission of Lender, its directors, officers, employees, representatives or agents in connection with Lender's administration of the Guaranteed Indebtedness, except for Lender's willful misconduct and gross negligence.

8.    <u>Obligations Not Impaired.</u>

(a)    Guarantor agrees that its obligations under this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (i) the death, disability or lack of corporate power of Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, (ii) any receivership, insolvency Bankruptcy, disability or other proceedings affecting Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, or any of their respective property; (iii) the partial or total release or discharge of Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness, or any other person or entity from the performance of any obligation contained in any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, whether occurring by reason of law or otherwise; (iv) the taking or accepting of any collateral for all or any part of the Guaranteed Indebtedness or this

1776540 v3 (73825.00002.000)

Guaranty; (v) the taking or accepting of any other guaranty for all or any part of the Guaranteed Indebtedness; (vi) any failure by Lender to acquire, perfect or continue any lien or security interest on collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty; (vii) the impairment of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty; (viii) any failure by Lender to sell any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty in a commercially reasonable manner or as otherwise required by law; (ix) any invalidity or unenforceability of or defect of deficiency in any of the Loan Documents; or (x) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness.

(b)    This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of all or any part of the Guaranteed Indebtedness is rescinded or must otherwise be returned by Lender upon the insolvency, Bankruptcy or reorganization of Borrower, Guarantor, any other guarantor of all or any part of the Guaranteed Indebtedness, or otherwise, all as though such payment had not been made.

(c)    None of the following shall affect Guarantor's liability hereunder:  (i) the unenforceability of all or any part of the Guaranteed Indebtedness against Borrower by reason of the fact that the Guaranteed Indebtedness exceeds the amount permitted by law; (ii) the act of creating all or any part of the Guaranteed Indebtedness is ultra vires; or (iii) the officers or partners creating all or any part of the Guaranteed Indebtedness acted in excess of their authority. Guarantor hereby acknowledges that withdrawal from, or termination of, any ownership interest in Borrower now or hereafter owned or held by Guarantor shall not alter, affect or in any way limit the obligations of Guarantor hereunder.

9.    Insolvency.  Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could reasonably be expected to suspend or otherwise adversely affect the rights and remedies of Lender granted hereunder, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of Guarantor to Lender (without regard to whether Borrower is then in default under the Loan Documents or whether the Guaranteed Indebtedness, or any part thereof is then due and owing by Borrower to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

10.    Subrogation.  Until the Guaranteed Indebtedness has been paid, in full, Guarantor hereby covenants and agrees that it shall not assert, enforce, or otherwise exercise (a) any right of subrogation to any of the rights or liens of Lender against Borrower or any other guarantor of the Guaranteed Indebtedness or any collateral or other security, or (b) unless such rights are expressly made subordinate to the Guaranteed Indebtedness (in form and upon terms acceptable to Lender) and the rights of Lender under this Guaranty and the Loan Documents, any right of recourse, reimbursement, contribution, indemnification, or similar right against Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness.

6

1776540 v3 (73825.00002.000)

11.    <u>Subordinate Debt</u>.  All principal of and interest on all indebtedness, liabilities, and obligations of Borrower to Guarantor (the "<u>Subordinated Debt</u>") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Indebtedness.  Until such time as the Guaranteed Indebtedness is paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from Borrower with respect to the Subordinated Debt at anytime an Event of Default or Default under the Loan Documents has occurred and is continuing; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Indebtedness.  If Guarantor has executed a separate subordination agreement ("<u>Subordination Agreement</u>") applicable to the Subordinated Debt, the Subordination Agreement shall control over any inconsistent provision in this Section 11.

12.    <u>No Fraudulent Transfer</u>.  It is the intention of Guarantor and Lender that the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to Guarantor.  Accordingly, notwithstanding anything to the contrary contained in this Guaranty or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Indebtedness, the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be limited to that amount which after giving effect thereto would not (a) render Guarantor insolvent, (b) result in the fair saleable value of the assets of Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in clauses (a), (b) and (c) of this Section 12, are determined under applicable law, if the obligations of Guarantor hereunder would otherwise be set aside, terminated, annulled or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court.  For purposes of this Guaranty, the term "applicable law" means as to Guarantor each statute, law, ordinance, regulation, order, judgment, injunction or decree of the United States or any state or commonwealth, any municipality, any foreign country, or any territory, possession or tribunal applicable to Guarantor.

13.    <u>Actions against Guarantor</u>.  In the event of a default in the payment or performance of all or any part of the Guaranteed Indebtedness, or if an Event of Default occurs under any Loan Document, when all or any portion of the Guaranteed Indebtedness becomes due, whether by its terms, by acceleration or otherwise, Guarantor shall, upon demand, promptly pay the amount due thereon to Lender, in lawful money of the United States, at Lender's address set forth above.  One or more successive or concurrent actions may be brought against Guarantor, either in the same action in which Borrower is sued or in separate actions, as often as Lender deems advisable.  The exercise by Lender of any right or remedy under this Guaranty or under any other agreement or instrument, at law, in equity otherwise, shall not preclude concurrent or subsequent exercise of any other right or remedy.  The books and records of Lender shall be admissible in evidence in any action or proceeding involving this Guaranty and

1776540 v3 (73825.00002.000)

BN 11974249v1

shall be prima facie evidence of the payments made on, and the outstanding balance of, the Guaranteed Indebtedness.

14.    <u>Notice of Sale</u>. Except as otherwise required by law, in the event that Guarantor is entitled to received any notice under the Uniform Commercial Code, as it exists in the state governing any such notice, of the sale or other disposition of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty, reasonable notice shall be deemed given when such notice is deposited in the United States mail, postage prepaid, at the address for Guarantor set forth above, ten (10) days prior to the date any public sale, or after which any private sale of any such collateral is to be held; provided, however, that notice given in any other reasonable manner or at any other reasonable time shall be sufficient.

15.    <u>Waiver by Lender</u>. No delay on the part of Lender in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right. In no event shall any waiver of the provisions of this Guaranty be effective unless the same be in writing and signed by an officer of Lender, and then only in the specific instance and for the purpose given.

16.    <u>Successors and Assigns</u>. This Guaranty is for the benefit of Lender, its successors and assigns. This Guaranty is binding upon Guarantor and Guarantor's heirs, executors, administrators, personal representatives and successors, including, without limitation, any person or entity obligated by operation of law upon the reorganization, merger, consolidation or other change in the organizational structure of Guarantor.

17.    <u>Setoff Rights</u>. Lender shall have the right to set off and apply against the Guaranteed Indebtedness, any and all deposits owing from Lender to Guarantor if Guarantor's obligation to remit all or any portion of the Guaranteed Indebtedness has matured under this Guaranty irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty. The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

18.    <u>Costs and Expenses</u>. Guarantor shall pay on demand by Lender all costs and expenses, including, without limitation, all reasonable attorneys' fees incurred by Lender in connection with the enforcement and/or collection of this Guaranty. This covenant shall survive the payment of the Guaranteed Indebtedness.

19.    <u>Severability</u>. If any provision of this Guaranty is held by a court of competent jurisdiction to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, shall not impair or invalidate the remainder of this Guaranty, and the effect thereof shall be confined to the provision held to be illegal, invalid or unenforceable.

20.    <u>No Obligation</u>. Nothings contained herein shall be construed as an obligation on the part of Lender to extend or continue to extend credit to Borrower.

21.    <u>Amendment</u>. No modification or amendment of any provision of this Guaranty, nor consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing and signed by an officer of Lender, and then shall be effective only in the specific instance and for the purpose for which given.

8

1776540 v3 (73825.00002.000)

22.   Cumulative Rights.  All rights and remedies of Lender hereunder are cumulative of each other and of ever other right or remedy which Lender may otherwise have at law or in equity or under any instrument or agreement, and the exercise of one or more of such rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of any other rights or remedies.

23.   Compliance with Applicable Usury Laws.  Notwithstanding any other provision of this Guaranty or of any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, Guarantor and Lender by its acceptance hereof agree that Guarantor shall never be required or obligated to pay interest in excess of the maximum nonusurious interest rate as may be authorized by applicable law for the written contracts which constitute the Guaranteed Indebtedness.  It is the intention of Guarantor and Lender to conform strictly to the applicable laws which limit interest rates, and any of the aforesaid contracts for interest, if and to the extent payable by Guarantor, shall be held to be subject to reduction to the maximum nonusurious interest rate allowed under said law.

24.   Descriptive Headings.  The headings in this Guaranty are for convenience only and shall not define or limit the provisions hereof.

25.   Gender.  Within this Guaranty, words of any gender shall be held and construed to include the other gender.

26.   Further Assurances.  Guarantor will, on request of Lender, promptly (a) correct any defect, error or omission which may be discovered in the contents of this Guaranty or in any other Loan Document; (b) execute, acknowledge, authorize, deliver and record or file such further instruments (including, without limitation, further guaranty agreements) and (c) do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Guaranty.

27.   Entire Agreement.  This Guaranty contains the entire agreement between Guarantor and Lender regarding the subject matter hereof and supersedes all prior written and oral agreements and understandings, if any, regarding same; provided, however, this Guaranty is in addition to and does not replace, cancel, modify or affect any other guaranty of Guarantor now or hereafter held by Lender that related to Borrower and different indebtedness.

28.   GOVERNING LAW AND VENUE.   THIS GUARANTY IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN MONTGOMERY COUNTY, TEXAS AND THE LAWS (EXCLUDING CHOICE OF LAW PROVISIONS) OF SUCH STATE SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS GUARANTY, EXCEPT TO THE EXTENT FEDERAL LAWS OTHERWISE GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF ALL OR ANY PART OF THIS GUARANTY.   ALL LEGAL ACTIONS RELATED TO THIS GUARANTY SHALL BE BROUGHT IN THE APPROPRIATE COURT OF LAW LOCATED IN MONTGOMERY COUNTY, TEXAS, TO THE EXCLUSION OF ALL OTHER VENUES.

9

1776540 v3 (73825.00002.000)

29.   <u>WAIVER OF RIGHT TO JURY</u>.  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY BORROWER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS.

30.   <u>NO ORAL AGREEMENTS</u>.  THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Signature Page Follows]

1776540 v3 (73825.00002.000)

EXECUTED as of the date first above written.

GUARANTOR:

_____

RON REGWAN, individually

11

BN 11974249v1

1776540 v3 (73825.00002.000)

## UNLIMITED GUARANTY

**THIS UNLIMITED GUARANTY** ("Guaranty") is made as of July____, 2012, by Guarantor (as hereinafter defined) for the benefit of Lender (as hereinafter defined).

1.    Definitions.  As used in this Guaranty, the following terms have the meanings indicated below:

"Affiliate," when used with respect to any Person, means any other Person that, directly or indirectly, controls or is controlled by or is under common control with such Person.  For purposes of this definition "control" (including the terms "controlled by" and under "common control with"), with respect to any person, means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"Borrower" (whether one or more) means LCV Properties, LLC and such Person's heirs, personal representatives, successors and assigns.

"Debtor Relief Laws" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to Bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors generally from time to time in effect.

"Guaranteed Indebtedness" means THIRTY PERCENT (30%) of (a) all indebtedness, obligations and liabilities of Borrower to Lender of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Lender, be or have been payable to or in favor of a third party and subsequently acquired by Lender (it being contemplated that Lender may make such acquisitions from third parties), including, without limitation, all indebtedness, obligations and liabilities of Borrower to Lender now existing or hereafter arising by note, draft, acceptance, guaranty, endorsement, lease, letter of credit, assignment, purchase, overdraft, discount, indemnity agreement or otherwise, including, without limitation, all amounts owing pursuant to the Promissory Note, (b) all accrued but unpaid interest on any of the indebtedness described in (a) above, and including any and all pre-and post-maturity interest thereon, including, without limitation, post-petition interest and expenses (including attorneys' fees), if Borrower is the debtor in a Bankruptcy proceeding under the Debtor Relief Laws, whether or not allowed under any Debtor Relief Law, (c) all obligations of Borrower and other Persons to Lender under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in (a) and (b) above (collectively, the "Loan Documents," which shall include this Guaranty), (d) all costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in (a), (b) and (c) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including, without limitation, all

BN 11974337v1

1776540 v3 (73825.00002.000)

EXHIBIT B PAGE 000104

reasonable attorneys' fees, and (e) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (a), (b), (c) and (d) above.

"Guarantor" (whether one or more) means STEFAN PARDOE and such Person's heirs, personal representatives, successors and assigns, whose address for notice purposes is the following:

_____

"Lender" means DAVID SEROR, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE DOUBLE S DEVELOPMENT, LLP BANKRUPTCY ESTATE, and his successors and assigns, whose address for notice purposes is the following:

> 21650 Oxnard Street, Suite 500
> Woodland Hills, California 91367
> Attn.: David Seror

"Person" means any individual, corporation, partnership, joint venture, limited liability company or partnership (general or limited), association, trust, unincorporated association, joint stock company, government, municipality, political subdivision or agency, or other entity.

"Promissory Note" means that certain Promissory Note dated on even date herewith, in the original principal amount of SIX HUNDRED SEVENTY THOUSAND, NINE HUNDRED AND FIFTY DOLLARS ($670,950.00), executed by Borrower and payable to the order of Lender and all amendments, restatements, increases, renewals and extensions thereof.

2. Payment. Guarantor agrees that the extension of credit to Borrower is a substantial and direct benefit to Guarantor. As an inducement to Lender to extend or continue to extend credit and other financial accommodations to Borrower, Guarantor, for value received, jointly and severally, does hereby unconditionally and absolutely guarantee the prompt and full payment and performance of the Guaranteed Indebtedness when due or declared to be due and at all times thereafter. Guarantor shall promptly pay the amount due thereon to Lender without notice or demand, of any kind or nature, in lawful money of the United States of America.

3. Character of Obligations. This is an absolute, continuing and unconditional guaranty of payment and not of collection and if at any time or from time to time there is no outstanding Guaranteed Indebtedness, the obligations of Guarantor with respect to any and all Guaranteed Indebtedness incurred thereafter shall not be affected. All Guaranteed Indebtedness heretofore, concurrently herewith or hereafter made by Lender to Borrower shall be conclusively presumed to have been made or acquired in acceptance hereof. Guarantor shall be liable, jointly and severally, with Borrower and any other guarantor of all or any part of the Guaranteed Indebtedness.

4. No Right of Revocation. Guarantor understands and agrees that Guarantor may not revoke its future obligations under this Guaranty at any time as long as any Guaranteed Indebtedness is outstanding or as long as Lender is under any obligation to extend credit, in any

1776540 v3 (73825.00002.000)

BN 11974337v1

EXHIBIT B PAGE 000105

form, to Borrower. If Guarantor is an individual and dies, Guarantor's obligations under this Guaranty shall be binding on Guarantor's estate.

5.     Representations and Warranties.   Guarantor hereby represents and warrants the following to Lender:

(a)     This Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (i) if Guarantor is a corporation or limited liability company, the Board of Directors or other governing body of Guarantor has determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, or (ii) if Guarantor is a partnership, the requisite number of its partners have determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (iii) the value of the consideration received and to be received by Guarantor is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly; and

(b)     Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition of Borrower and Guarantor is not relying on Lender to provide such information to Guarantor either now or in the future; and

(c)     Guarantor has the power and authority to execute, deliver and perform this Guaranty and any other agreements executed by Guarantor contemporaneously herewith, and the execution, delivery and performance of this Guaranty and any other agreements executed by Guarantor contemporaneously herewith do not and will not violate (i) any agreement or instrument to which Guarantor is a party, (ii) any law, rule, regulation or order of any governmental authority to which Guarantor is subject, or (iii) its organizational documents; and

(d)     Neither Lender nor any other party has made any representation or warranty to Guarantor in order to induce Guarantor to execute this Guaranty; and

(e)     The financial statements and other financial information regarding Guarantor heretofore and hereafter delivered to Lender are and shall be true and correct in all material respects and fairly present the financial position of Guarantor as of the dates thereof, and no material adverse change has occurred in the financial condition of Guarantor reflected in the financial statements and other financial information regarding Guarantor heretofore delivered to Lender since the date of the last statement thereof; and

(f)     As of the date hereof, and after giving effect to this Guaranty and the obligations evidenced hereby, (i) Guarantor is and will be solvent, (ii) the fair saleable value of Guarantor's assets exceeds and will continue to exceed its liabilities (both fixed and contingent), (iii) Guarantor is and will continue to be able to pay its debts as they mature, and (iv) if Guarantor is not an individual, Guarantor has and will continue to have sufficient capital to carry on its business and all businesses in which it is about to engage.

6.     Covenants.   Guarantor hereby covenants and agrees with Lender as follows:

BN 11974337v1                                                      1776540 v3 (73825.00002.000)

(a)     Guarantor shall not, so long as its obligations under this Guaranty continue, transfer or pledge any material portion of its assets for less than full and adequate consideration; and

(b)     Guarantor shall promptly furnish to Lender from time to time such financial statements and other financial information of Guarantor as Lender may reasonably require, in form and substance satisfactory to Lender; provided, however, if, pursuant to the other Loan Documents, Guarantor is obligated to provide financial statements to Lender at specific times and in a specific format, those provisions shall control over this Section 6(b); and

(c)     Guarantor shall promptly furnish to Lender such additional information concerning Guarantor as Lender may reasonably request; and

(d)     Guarantor shall comply with all terms and provisions of the Loan Documents that apply to Guarantor; and

(e)     Guarantor shall promptly inform Lender of (i) any litigation or governmental investigation against Guarantor or affecting any security for all or any part of the Guaranteed Indebtedness or this Guaranty which, if determined adversely, might reasonably be expected to have a material adverse effect upon the financial condition of Guarantor or upon such security or might reasonably be excepted to cause a default under any of the Loan documents, (ii) any claim or controversy which might reasonably be expected to become the subject of such litigation or governmental investigation, and (iii) any material adverse change in the financial condition of Guarantor.;

7.     <u>Consent and Waiver.</u>

(a)     Guarantor waives (i) promptness, diligence and notice of acceptance of this Guaranty and notice of the incurring of any obligation, indebtedness or liability to which this Guaranty applies or may apply and, except as expressly required by this Guaranty or the other Loan Documents, waives presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, diligence in enforcement and indulgences of every kind, and (ii) the taking of any other action by Lender,  including, without limitation, giving any notice of default or any other notice to, or making any demand on, Borrower, any other guarantor of all or any part of the Guaranteed Indebtedness or any other party.

(b)     Guarantor waives any rights Guarantor has under, or any requirements imposed by, (i) **Chapter 43 of the Texas Business and Commerce Code, as amended (except rights under Section 43.004);** (ii) Section 17.001 of the Texas Civil Practice and Remedies Code, as amended, (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended, and (iv) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended

(c)     Lender may at any time, without the consent of or notice to Guarantor, without incurring responsibility to Guarantor and without impairing, releasing, reducing or affecting the obligations of Guarantor hereunder:  (i) change the manner, place or terms of payment of all or any part of the Guaranteed Indebtedness, or renew, extend, modify, rearrange or alter all or any part of the Guaranteed Indebtedness; (ii) change the interest rate accruing on

4

1776540 v3 (73825.00002.000)

BN 11974337v1

any of the Guaranteed Indebtedness (including, without limitation, any periodic change in such interest rate that occurs because such Guaranteed Indebtedness accrues interest at a variable rate which may fluctuate from time to time); (iii) sell, exchange, release, surrender, subordinate, realize upon or otherwise deal with in any manner and in any order any collateral for all or any part of the Guaranteed Indebtedness; (iv) neglect, delay, omit, fail or refuse to take or prosecute any action for the collection of all or any part of the Guaranteed Indebtedness or this Guaranty or to take or prosecute any action in connection with any of the Loan Documents; (v) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (vi) settle or compromise all or any part of the Guaranteed Indebtedness and subordinate the payment of all or any part of the Guaranteed Indebtedness to the payment of any obligations, indebtedness or liabilities which may be due or become due to Lender or others; (vii) apply any deposit balance, fund, payment, collections through process of law or otherwise or other collateral of Borrower to the satisfaction and liquidation of the indebtedness or obligations of Borrower to Lender, if any, not guaranteed under this Guaranty; and (viii) apply any sums paid to Lender by Guarantor, Borrower or others to the Guaranteed Indebtedness in such order and manner as Lender, in its sole discretion, may determine.

(d)     Should Lender seek to enforce the obligations of Guarantor hereunder by action in any court or otherwise, Guarantor waives any requirement, substantive or procedural, that (i) Lender first enforce any rights or remedies against Borrower or any other person or entity liable to Lender for all or any part of the Guaranteed Indebtedness, including, without limitation, that a judgment first be rendered against Borrower or any other person or entity, or that Borrower or any other person or entity should be joined in such cause, or (ii) Lender shall first enforce rights against any collateral which shall ever have been given to secure all or any part of the Guaranteed Indebtedness or this Guaranty.  Such waiver shall be without prejudice to Lender's right, at its option, to proceed against Borrower or any other person or entity, whether by separate action or by joinder.

(e)     In addition to any other waivers, agreements and covenants of Guarantor set forth herein, Guarantor hereby further waives and releases all claims, causes of action, defenses and offsets for any act or omission of Lender, its directors, officers, employees, representatives or agents in connection with Lender's administration of the Guaranteed Indebtedness, except for Lender's willful misconduct and gross negligence.

8.     <u>Obligations Not Impaired.</u>

(a)     Guarantor agrees that its obligations under this Guaranty shall  not  be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (i) the death, disability or lack of corporate power of Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, (ii) any receivership, insolvency Bankruptcy, disability or other proceedings affecting Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, or any of their respective property; (iii) the partial or total release or discharge of Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness, or any other person or entity from the performance of any obligation contained in any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, whether occurring by reason of law or otherwise; (iv) the taking or accepting of any collateral for all or any part of the Guaranteed Indebtedness or this

BN 11974337v1

1776540 v3 (73825.00002.000)

Guaranty; (v) the taking or accepting of any other guaranty for all or any part of the Guaranteed Indebtedness; (vi) any failure by Lender to acquire, perfect or continue any lien or security interest on collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty; (vii) the impairment of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty;  (viii) any failure by Lender to sell any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty in a commercially reasonable manner or as otherwise required by law; (ix) any invalidity or unenforceability of or defect of deficiency in any of the Loan Documents; or (x) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness.

(b)    This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of all or any part of the Guaranteed Indebtedness is rescinded or must otherwise be returned by Lender upon the insolvency, Bankruptcy or reorganization of Borrower, Guarantor, any other guarantor of all or any part of the Guaranteed Indebtedness, or otherwise, all as though such payment had not been made.

(c)    None of the following shall affect Guarantor's liability hereunder:  (i) the unenforceability of all or any part of the Guaranteed Indebtedness against Borrower by reason of the fact that the Guaranteed Indebtedness exceeds the amount permitted by law; (ii) the act of creating all or any part of the Guaranteed Indebtedness is ultra vires; or (iii) the officers or partners creating all or any part of the Guaranteed Indebtedness acted in excess of their authority. Guarantor hereby acknowledges that withdrawal from, or termination of, any ownership interest in Borrower now or hereafter owned or held by Guarantor shall not alter, affect or in any way limit the obligations of Guarantor hereunder.

9.    Insolvency.  Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could reasonably be expected to suspend or otherwise adversely affect the rights and remedies of Lender granted hereunder, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of Guarantor to Lender (without regard to whether Borrower is then in default under the Loan Documents or whether the Guaranteed Indebtedness, or any part thereof is then due and owing by Borrower to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

10.    Subrogation.  Until the Guaranteed Indebtedness has been paid, in full, Guarantor hereby covenants and agrees that it shall not assert, enforce, or otherwise exercise (a) any right of subrogation to any of the rights or liens of Lender against Borrower or any other guarantor of the Guaranteed Indebtedness or any collateral or other security, or (b) unless such rights are expressly made subordinate to the Guaranteed Indebtedness (in form and upon terms acceptable to Lender) and the rights of Lender under this Guaranty and the Loan Documents, any right of

1776540 v3 (73825.00002.000)

recourse, reimbursement, contribution, indemnification, or similar right against Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness.

11.     Subordinate Debt.  All principal of and interest on all indebtedness, liabilities, and obligations of Borrower to Guarantor (the "Subordinated Debt") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Indebtedness.  Until such time as the Guaranteed Indebtedness is paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from Borrower with respect to the Subordinated Debt at anytime an Event of Default or Default under the Loan Documents has occurred and is continuing; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Indebtedness.  If Guarantor has executed a separate subordination agreement ("Subordination Agreement") applicable to the Subordinated Debt, the Subordination Agreement shall control over any inconsistent provision in this Section 11.

12.     No Fraudulent Transfer.  It is the intention of Guarantor and Lender that the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to Guarantor.  Accordingly, notwithstanding anything to the contrary contained in this Guaranty or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Indebtedness, the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be limited to that amount which after giving effect thereto would not (a) render Guarantor insolvent, (b) result in the fair saleable value of the assets of Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in clauses (a), (b) and (c) of this Section 12, are determined under applicable law, if the obligations of Guarantor hereunder would otherwise be set aside, terminated, annulled or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court.  For purposes of this Guaranty, the term "applicable law" means as to Guarantor each statute, law, ordinance, regulation, order, judgment, injunction or decree of the United States or any state or commonwealth, any municipality, any foreign country, or any territory, possession or tribunal applicable to Guarantor.

13.     Actions against Guarantor.  In the event of a default in the payment or performance of all or any part of the Guaranteed Indebtedness, or if an Event of Default occurs under any Loan Document, when all or any portion of the Guaranteed Indebtedness becomes due, whether by its terms, by acceleration or otherwise, Guarantor shall, upon demand, promptly pay the amount due thereon to Lender, in lawful money of the United States, at Lender's address set forth above.  One or more successive or concurrent actions may be brought against Guarantor, either in the same action in which Borrower is sued or in separate actions, as often as Lender deems advisable.  The exercise by Lender of any right or remedy under this Guaranty or under any other agreement or instrument, at law, in equity otherwise, shall not preclude

1776540 v3 (73825.00002.000)

BN 11974337v1

concurrent or subsequent exercise of any other right or remedy. The books and records of Lender shall be admissible in evidence in any action or proceeding involving this Guaranty and shall be prima facie evidence of the payments made on, and the outstanding balance of, the Guaranteed Indebtedness.

14.    Notice of Sale. Except as otherwise required by law, in the event that Guarantor is entitled to received any notice under the Uniform Commercial Code, as it exists in the state governing any such notice, of the sale or other disposition of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty, reasonable notice shall be deemed given when such notice is deposited in the United States mail, postage prepaid, at the address for Guarantor set forth above, ten (10) days prior to the date any public sale, or after which any private sale of any such collateral is to be held; provided, however, that notice given in any other reasonable manner or at any other reasonable time shall be sufficient.

15.    Waiver by Lender. No delay on the part of Lender in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right. In no event shall any waiver of the provisions of this Guaranty be effective unless the same be in writing and signed by an officer of Lender, and then only in the specific instance and for the purpose given.

16.    Successors and Assigns. This Guaranty is for the benefit of Lender, its successors and assigns. This Guaranty is binding upon Guarantor and Guarantor's heirs, executors, administrators, personal representatives and successors, including, without limitation, any person or entity obligated by operation of law upon the reorganization, merger, consolidation or other change in the organizational structure of Guarantor.

17.    Setoff Rights. Lender shall have the right to set off and apply against the Guaranteed Indebtedness, any and all deposits owing from Lender to Guarantor if Guarantor's obligation to remit all or any portion of the Guaranteed Indebtedness has matured under this Guaranty irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty. The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

18.    Costs and Expenses. Guarantor shall pay on demand by Lender all costs and expenses, including, without limitation, all reasonable attorneys' fees incurred by Lender in connection with the enforcement and/or collection of this Guaranty. This covenant shall survive the payment of the Guaranteed Indebtedness.

19.    Severability. If any provision of this Guaranty is held by a court of competent jurisdiction to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, shall not impair or invalidate the remainder of this Guaranty, and the effect thereof shall be confined to the provision held to be illegal, invalid or unenforceable.

20.    No Obligation. Nothings contained herein shall be construed as an obligation on the part of Lender to extend or continue to extend credit to Borrower.

21.    Amendment. No modification or amendment of any provision of this Guaranty, nor consent to any departure by Guarantor therefrom, shall be effective unless the same shall be

8

1776540 v3 (73825.00002.000)

in writing and signed by an officer of Lender, and then shall be effective only in the specific instance and for the purpose for which given.

22.    Cumulative Rights.    All rights and remedies of Lender hereunder are cumulative of each other and of ever other right or remedy which Lender may otherwise have at law or in equity or under any instrument or agreement, and the exercise of one or more of such rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of any other rights or remedies.

23.    Compliance with Applicable Usury Laws.    Notwithstanding any other provision of this Guaranty or of any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, Guarantor and Lender by its acceptance hereof agree that Guarantor shall never be required or obligated to pay interest in excess of the maximum nonusurious interest rate as may be authorized by applicable law for the written contracts which constitute the Guaranteed Indebtedness.   It is the intention of Guarantor and Lender to conform strictly to the applicable laws which limit interest rates, and any of the aforesaid contracts for interest, if and to the extent payable by Guarantor, shall be held to be subject to reduction to the maximum nonusurious interest rate allowed under said law.

24.    Descriptive Headings.    The headings in this Guaranty are for convenience only and shall not define or limit the provisions hereof.

25.    Gender.    Within this Guaranty, words of any gender shall be held and construed to include the other gender.

26.    Further Assurances.    Guarantor will, on request of Lender, promptly (a) correct any defect, error or omission which may be discovered in the contents of this Guaranty or in any other Loan Document; (b) execute, acknowledge, authorize, deliver and record or file such further instruments (including, without limitation, further guaranty agreements) and (c) do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Guaranty.

27.    Entire Agreement.    This Guaranty contains the entire agreement between Guarantor and Lender regarding the subject matter hereof and supersedes all prior written and oral agreements and understandings, if any, regarding same; provided, however, this Guaranty is in addition to and does not replace, cancel, modify or affect any other guaranty of Guarantor now or hereafter held by Lender that related to Borrower and different indebtedness.

28.    GOVERNING LAW AND VENUE.    THIS GUARANTY IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN MONTGOMERY COUNTY, TEXAS AND THE LAWS (EXCLUDING CHOICE OF LAW PROVISIONS) OF SUCH STATE SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS GUARANTY, EXCEPT TO THE EXTENT FEDERAL LAWS OTHERWISE GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF ALL OR ANY PART OF THIS GUARANTY.    ALL LEGAL ACTIONS RELATED TO THIS GUARANTY SHALL BE

BN 11974337v1                                                                                1776540 v3 (73825.00002.000)

BROUGHT IN THE APPROPRIATE COURT OF LAW LOCATED IN MONTGOMERY COUNTY, TEXAS, TO THE EXCLUSION OF ALL OTHER VENUES.

29.     WAIVER OF RIGHT TO JURY.   GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY BORROWER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS.

30.     NO ORAL AGREEMENTS.   THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Signature Page Follows]

10

1776540 v3 (73825.00002.000)

EXECUTED as of the date first above written.

GUARANTOR:

_____

STEFAN PARDOE, individually

11

1776540 v3 (73825.00002.000)

EXHIBIT B PAGE 000114