# UNLIMITED GUARANTY

**THIS UNLIMITED GUARANTY** ("Guaranty") is made as of July____, 2012, by Guarantor (as hereinafter defined) for the benefit of Lender (as hereinafter defined).

1.    Definitions. As used in this Guaranty, the following terms have the meanings indicated below:

"Affiliate," when used with respect to any Person, means any other Person that, directly or indirectly, controls or is controlled by or is under common control with such Person. For purposes of this definition "control" (including the terms "controlled by" and under "common control with"), with respect to any person, means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"Borrower" (whether one or more) means LCV Properties, LLC and such Person's heirs, personal representatives, successors and assigns.

"Debtor Relief Laws" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to Bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors generally from time to time in effect.

"Guaranteed Indebtedness" means TEN PERCENT (10%) of (a) all indebtedness, obligations and liabilities of Borrower to Lender of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Lender, be or have been payable to or in favor of a third party and subsequently acquired by Lender (it being contemplated that Lender may make such acquisitions from third parties), including, without limitation, all indebtedness, obligations and liabilities of Borrower to Lender now existing or hereafter arising by note, draft, acceptance, guaranty, endorsement, lease, letter of credit, assignment, purchase, overdraft, discount, indemnity agreement or otherwise, including, without limitation, all amounts owing pursuant to the Promissory Note, (b) all accrued but unpaid interest on any of the indebtedness described in (a) above, and including any and all pre-and post-maturity interest thereon, including, without limitation, post-petition interest and expenses (including attorneys' fees), if Borrower is the debtor in a Bankruptcy proceeding under the Debtor Relief Laws, whether or not allowed under any Debtor Relief Law, (c) all obligations of Borrower and other Persons to Lender under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in (a) and (b) above (collectively, the "Loan Documents," which shall include this Guaranty), (d) all costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in (a), (b) and (c) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including, without limitation, all

1776540 v3 (73825.00002.000)

BN 11974323v1

reasonable attorneys' fees, and (e) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (a), (b), (c) and (d) above.

"Guarantor" (whether one or more) means PAT CAIN and such Person's heirs, personal representatives, successors and assigns, whose address for notice purposes is the following:

_____

"Lender" means DAVID SEROR, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE DOUBLE S DEVELOPMENT, LLP BANKRUPTCY ESTATE, and his successors and assigns, whose address for notice purposes is the following:

>   21650 Oxnard Street, Suite 500
>   Woodland Hills, California 91367
>   Attn.: David Seror

"Person" means any individual, corporation, partnership, joint venture, limited liability company or partnership (general or limited), association, trust, unincorporated association, joint stock company, government, municipality, political subdivision or agency, or other entity.

"Promissory Note" means that certain Promissory Note dated on even date herewith, in the original principal amount of SIX HUNDRED SEVENTY THOUSAND, NINE HUNDRED AND FIFTY DOLLARS ($670,950.00), executed by Borrower and payable to the order of Lender and all amendments, restatements, increases, renewals and extensions thereof.

2.      Payment.   Guarantor agrees that the extension of credit to Borrower is a substantial and direct benefit to Guarantor.  As an inducement to Lender to extend or continue to extend credit and other financial accommodations to Borrower, Guarantor, for value received, jointly and severally, does hereby unconditionally and absolutely guarantee the prompt and full payment and performance of the Guaranteed Indebtedness when due or declared to be due and at all times thereafter.  Guarantor shall promptly pay the amount due thereon to Lender without notice or demand, of any kind or nature, in lawful money of the United States of America.

3.      Character of Obligations.   This is an absolute, continuing and unconditional guaranty of payment and not of collection and if at any time or from time to time there is no outstanding Guaranteed Indebtedness, the obligations of Guarantor with respect to any and all Guaranteed Indebtedness incurred thereafter shall not be affected.  All Guaranteed Indebtedness heretofore, concurrently herewith or hereafter made by Lender to Borrower shall be conclusively presumed to have been made or acquired in acceptance hereof.  Guarantor shall be liable, jointly and severally, with Borrower and any other guarantor of all or any part of the Guaranteed Indebtedness.

4.      No Right of Revocation.   Guarantor understands and agrees that Guarantor may not revoke its future obligations under this Guaranty at any time as long as any Guaranteed Indebtedness is outstanding or as long as Lender is under any obligation to extend credit, in any form, to Borrower.  If Guarantor is an individual and dies, Guarantor's obligations under this Guaranty shall be binding on Guarantor's estate.

BN 11974323v1                                                        1776540 v3 (73825.00002.000)

5.    <u>Representations and Warranties</u>.  Guarantor hereby represents and warrants the following to Lender:

(a)    This Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (i) if Guarantor is a corporation or limited liability company, the Board of Directors or other governing body of Guarantor has determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, or (ii) if Guarantor is a partnership, the requisite number of its partners have determined that this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor, and (iii) the value of the consideration received and to be received by Guarantor is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly; and

(b)    Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition of Borrower and Guarantor is not relying on Lender to provide such information to Guarantor either now or in the future; and

(c)    Guarantor has the power and authority to execute, deliver and perform this Guaranty and any other agreements executed by Guarantor contemporaneously herewith, and the execution, delivery and performance of this Guaranty and any other agreements executed by Guarantor contemporaneously herewith do not and will not violate (i) any agreement or instrument to which Guarantor is a party, (ii) any law, rule, regulation or order of any governmental authority to which Guarantor is subject, or (iii) its organizational documents; and

(d)    Neither Lender nor any other party has made any representation or warranty to Guarantor in order to induce Guarantor to execute this Guaranty; and

(e)    The financial statements and other financial information regarding Guarantor heretofore and hereafter delivered to Lender are and shall be true and correct in all material respects and fairly present the financial position of Guarantor as of the dates thereof, and no material adverse change has occurred in the financial condition of Guarantor reflected in the financial statements and other financial information regarding Guarantor heretofore delivered to Lender since the date of the last statement thereof; and

(f)    As of the date hereof, and after giving effect to this Guaranty and the obligations evidenced hereby, (i) Guarantor is and will be solvent, (ii) the fair saleable value of Guarantor's assets exceeds and will continue to exceed its liabilities (both fixed and contingent), (iii) Guarantor is and will continue to be able to pay its debts as they mature, and (iv) if Guarantor is not an individual, Guarantor has and will continue to have sufficient capital to carry on its business and all businesses in which it is about to engage.

6.    <u>Covenants</u>.  Guarantor hereby covenants and agrees with Lender as follows:

(a)    Guarantor shall not, so long as its obligations under this Guaranty continue, transfer or pledge any material portion of its assets for less than full and adequate consideration; and

(b)    Guarantor shall promptly furnish to Lender from time to time such financial statements and other financial information of Guarantor as Lender may reasonably require, in form and substance satisfactory to Lender; provided, however, if, pursuant to the other Loan Documents, Guarantor is obligated to provide financial statements to Lender at specific times and in a specific format, those provisions shall control over this Section 6(b); and

(c)    Guarantor shall promptly furnish to Lender such additional information concerning Guarantor as Lender may reasonably request; and

(d)    Guarantor shall comply with all terms and provisions of the Loan Documents that apply to Guarantor; and

(e)    Guarantor shall promptly inform Lender of (i) any litigation or governmental investigation against Guarantor or affecting any security for all or any part of the Guaranteed Indebtedness or this Guaranty which, if determined adversely, might reasonably be expected to have a material adverse effect upon the financial condition of Guarantor or upon such security or might reasonably be excepted to cause a default under any of the Loan documents, (ii) any claim or controversy which might reasonably be expected to become the subject of such litigation or governmental investigation, and (iii) any material adverse change in the financial condition of Guarantor.;

7.    <u>Consent and Waiver.</u>

(a)    Guarantor waives (i) promptness, diligence and notice of acceptance of this Guaranty and notice of the incurring of any obligation, indebtedness or liability to which this Guaranty applies or may apply and, except as expressly required by this Guaranty or the other Loan Documents, waives presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, diligence in enforcement and indulgences of every kind, and (ii) the taking of any other action by Lender, including, without limitation, giving any notice of default or any other notice to, or making any demand on, Borrower, any other guarantor of all or any part of the Guaranteed Indebtedness or any other party.

(b)    Guarantor waives any rights Guarantor has under, or any requirements imposed by, (i) **Chapter 43 of the Texas Business and Commerce Code, as amended (except rights under Section 43.004);** (ii) Section 17.001 of the Texas Civil Practice and Remedies Code, as amended, (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended, and (iv) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended

(c)    Lender may at any time, without the consent of or notice to Guarantor, without incurring responsibility to Guarantor and without impairing, releasing, reducing or affecting the obligations of Guarantor hereunder:  (i) change the manner, place or terms of payment of all or any part of the Guaranteed Indebtedness, or renew, extend, modify, rearrange or alter all or any part of the Guaranteed Indebtedness; (ii) change the interest rate accruing on any of the Guaranteed Indebtedness (including, without limitation, any periodic change in such interest rate that occurs because such Guaranteed Indebtedness accrues interest at a variable rate which may fluctuate from time to time); (iii) sell, exchange, release, surrender, subordinate,

1776540 v3 (73825.00002.000)

BN 11974323v1

realize upon or otherwise deal with in any manner and in any order any collateral for all or any part of the Guaranteed Indebtedness; (iv) neglect, delay, omit, fail or refuse to take or prosecute any action for the collection of all or any part of the Guaranteed Indebtedness or this Guaranty or to take or prosecute any action in connection with any of the Loan Documents; (v) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (vi) settle or compromise all or any part of the Guaranteed Indebtedness and subordinate the payment of all or any part of the Guaranteed Indebtedness to the payment of any obligations, indebtedness or liabilities which may be due or become due to Lender or others; (vii) apply any deposit balance, fund, payment, collections through process of law or otherwise or other collateral of Borrower to the satisfaction and liquidation of the indebtedness or obligations of Borrower to Lender, if any, not guaranteed under this Guaranty; and (viii) apply any sums paid to Lender by Guarantor, Borrower or others to the Guaranteed Indebtedness in such order and manner as Lender, in its sole discretion, may determine.

(d)    Should Lender seek to enforce the obligations of Guarantor hereunder by action in any court or otherwise, Guarantor waives any requirement, substantive or procedural, that (i) Lender first enforce any rights or remedies against Borrower or any other person or entity liable to Lender for all or any part of the Guaranteed Indebtedness, including, without limitation, that a judgment first be rendered against Borrower or any other person or entity, or that Borrower or any other person or entity should be joined in such cause, or (ii) Lender shall first enforce rights against any collateral which shall ever have been given to secure all or any part of the Guaranteed Indebtedness or this Guaranty. Such waiver shall be without prejudice to Lender's right, at its option, to proceed against Borrower or any other person or entity, whether by separate action or by joinder.

(e)    In addition to any other waivers, agreements and covenants of Guarantor set forth herein, Guarantor hereby further waives and releases all claims, causes of action, defenses and offsets for any act or omission of Lender, its directors, officers, employees, representatives or agents in connection with Lender's administration of the Guaranteed Indebtedness, except for Lender's willful misconduct and gross negligence.

8.    <u>Obligations Not Impaired.</u>

(a)    Guarantor agrees that its obligations under this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (i) the death, disability or lack of corporate power of Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, (ii) any receivership, insolvency Bankruptcy, disability or other proceedings affecting Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness, or any of their respective property; (iii) the partial or total release or discharge of Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness, or any other person or entity from the performance of any obligation contained in any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, whether occurring by reason of law or otherwise; (iv) the taking or accepting of any collateral for all or any part of the Guaranteed Indebtedness or this Guaranty; (v) the taking or accepting of any other guaranty for all or any part of the Guaranteed Indebtedness; (vi) any failure by Lender to acquire, perfect or continue any lien or security interest on collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty;

5

1776540 v3 (73825.00002.000)

(vii) the impairment of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty;  (viii) any failure by Lender to sell any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty in a commercially reasonable manner or as otherwise required by law; (ix) any invalidity or unenforceability of or defect of deficiency in any of the Loan Documents; or (x) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower, Guarantor or any other guarantor of all or any part of the Guaranteed Indebtedness.

(b)     This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of all or any part of the Guaranteed Indebtedness is rescinded or must otherwise be returned by Lender upon the insolvency, Bankruptcy or reorganization of Borrower, Guarantor, any other guarantor of all or any part of the Guaranteed Indebtedness, or otherwise, all as though such payment had not been made.

(c)     None of the following shall affect Guarantor's liability hereunder:  (i) the unenforceability of all or any part of the Guaranteed Indebtedness against Borrower by reason of the fact that the Guaranteed Indebtedness exceeds the amount permitted by law; (ii) the act of creating all or any part of the Guaranteed Indebtedness is ultra vires; or (iii) the officers or partners creating all or any part of the Guaranteed Indebtedness acted in excess of their authority. Guarantor hereby acknowledges that withdrawal from, or termination of, any ownership interest in Borrower now or hereafter owned or held by Guarantor shall not alter, affect or in any way limit the obligations of Guarantor hereunder.

9.     Insolvency.  Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could reasonably be expected to suspend or otherwise adversely affect the rights and remedies of Lender granted hereunder, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of Guarantor to Lender (without regard to whether Borrower is then in default under the Loan Documents or whether the Guaranteed Indebtedness, or any part thereof is then due and owing by Borrower to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

10.     Subrogation.  Until the Guaranteed Indebtedness has been paid, in full, Guarantor hereby covenants and agrees that it shall not assert, enforce, or otherwise exercise (a) any right of subrogation to any of the rights or liens of Lender against Borrower or any other guarantor of the Guaranteed Indebtedness or any collateral or other security, or (b) unless such rights are expressly made subordinate to the Guaranteed Indebtedness (in form and upon terms acceptable to Lender) and the rights of Lender under this Guaranty and the Loan Documents, any right of recourse, reimbursement, contribution, indemnification, or similar right against Borrower or any other guarantor of all or any part of the Guaranteed Indebtedness.

6

11.    <u>Subordinate Debt</u>.  All principal of and interest on all indebtedness, liabilities, and obligations of Borrower to Guarantor (the "<u>Subordinated Debt</u>") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Indebtedness.  Until such time as the Guaranteed Indebtedness is paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from Borrower with respect to the Subordinated Debt at anytime an Event of Default or Default under the Loan Documents has occurred and is continuing; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Indebtedness.  If Guarantor has executed a separate subordination agreement ("<u>Subordination Agreement</u>") applicable to the Subordinated Debt, the Subordination Agreement shall control over any inconsistent provision in this Section 11.

12.    <u>No Fraudulent Transfer</u>.  It is the intention of Guarantor and Lender that the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to Guarantor.  Accordingly, notwithstanding anything to the contrary contained in this Guaranty or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Indebtedness, the amount of the Guaranteed Indebtedness guaranteed by Guarantor by this Guaranty shall be limited to that amount which after giving effect thereto would not (a) render Guarantor insolvent, (b) result in the fair saleable value of the assets of Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in clauses (a), (b) and (c) of this Section 12, are determined under applicable law, if the obligations of Guarantor hereunder would otherwise be set aside, terminated, annulled or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court.  For purposes of this Guaranty, the term "applicable law" means as to Guarantor each statute, law, ordinance, regulation, order, judgment, injunction or decree of the United States or any state or commonwealth, any municipality, any foreign country, or any territory, possession or tribunal applicable to Guarantor.

13.    <u>Actions against Guarantor</u>.  In the event of a default in the payment or performance of all or any part of the Guaranteed Indebtedness, or if an Event of Default occurs under any Loan Document, when all or any portion of the Guaranteed Indebtedness becomes due, whether by its terms, by acceleration or otherwise, Guarantor shall, upon demand, promptly pay the amount due thereon to Lender, in lawful money of the United States, at Lender's address set forth above.  One or more successive or concurrent actions may be brought against Guarantor, either in the same action in which Borrower is sued or in separate actions, as often as Lender deems advisable.  The exercise by Lender of any right or remedy under this Guaranty or under any other agreement or instrument, at law, in equity otherwise, shall not preclude concurrent or subsequent exercise of any other right or remedy.  The books and records of Lender shall be admissible in evidence in any action or proceeding involving this Guaranty and

BN 11974323v1

1776540 v3 (73825.00002.000)

shall be prima facie evidence of the payments made on, and the outstanding balance of, the Guaranteed Indebtedness.

14.    Notice of Sale. Except as otherwise required by law, in the event that Guarantor is entitled to received any notice under the Uniform Commercial Code, as it exists in the state governing any such notice, of the sale or other disposition of any collateral securing all or any part of the Guaranteed Indebtedness or this Guaranty, reasonable notice shall be deemed given when such notice is deposited in the United States mail, postage prepaid, at the address for Guarantor set forth above, ten (10) days prior to the date any public sale, or after which any private sale of any such collateral is to be held; provided, however, that notice given in any other reasonable manner or at any other reasonable time shall be sufficient.

15.    Waiver by Lender. No delay on the part of Lender in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right. In no event shall any waiver of the provisions of this Guaranty be effective unless the same be in writing and signed by an officer of Lender, and then only in the specific instance and for the purpose given.

16.    Successors and Assigns. This Guaranty is for the benefit of Lender, its successors and assigns.  This Guaranty is binding upon Guarantor and Guarantor's heirs, executors, administrators, personal representatives and successors, including, without limitation, any person or entity obligated by operation of law upon the reorganization, merger, consolidation or other change in the organizational structure of Guarantor.

17.    Setoff Rights. Lender shall have the right to set off and apply against the Guaranteed Indebtedness, any and all deposits owing from Lender to Guarantor if Guarantor's obligation to remit all or any portion of the Guaranteed Indebtedness has matured under this Guaranty irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty.  The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

18.    Costs and Expenses. Guarantor shall pay on demand by Lender all costs and expenses, including, without limitation, all reasonable attorneys' fees incurred by Lender in connection with the enforcement and/or collection of this Guaranty. This covenant shall survive the payment of the Guaranteed Indebtedness.

19.    Severability. If any provision of this Guaranty is held by a court of competent jurisdiction to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, shall not impair or invalidate the remainder of this Guaranty, and the effect thereof shall be confined to the provision held to be illegal, invalid or unenforceable.

20.    No Obligation. Nothings contained herein shall be construed as an obligation on the part of Lender to extend or continue to extend credit to Borrower.

21.    Amendment. No modification or amendment of any provision of this Guaranty, nor consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing and signed by an officer of Lender, and then shall be effective only in the specific instance and for the purpose for which given.

8

1776540 v3 (73825.00002.000)

22.    Cumulative Rights.  All rights and remedies of Lender hereunder are cumulative of each other and of ever other right or remedy which Lender may otherwise have at law or in equity or under any instrument or agreement, and the exercise of one or more of such rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of any other rights or remedies.

23.    Compliance with Applicable Usury Laws.  Notwithstanding any other provision of this Guaranty or of any instrument or agreement evidencing, governing or securing all or any part of the Guaranteed Indebtedness, Guarantor and Lender by its acceptance hereof agree that Guarantor shall never be required or obligated to pay interest in excess of the maximum nonusurious interest rate as may be authorized by applicable law for the written contracts which constitute the Guaranteed Indebtedness.  It is the intention of Guarantor and Lender to conform strictly to the applicable laws which limit interest rates, and any of the aforesaid contracts for interest, if and to the extent payable by Guarantor, shall be held to be subject to reduction to the maximum nonusurious interest rate allowed under said law.

24.    Descriptive Headings.  The headings in this Guaranty are for convenience only and shall not define or limit the provisions hereof.

25.    Gender.  Within this Guaranty, words of any gender shall be held and construed to include the other gender.

26.    Further Assurances.  Guarantor will, on request of Lender, promptly (a) correct any defect, error or omission which may be discovered in the contents of this Guaranty or in any other Loan Document; (b) execute, acknowledge, authorize, deliver and record or file such further instruments (including, without limitation, further guaranty agreements) and (c) do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Guaranty.

27.    Entire Agreement.  This Guaranty contains the entire agreement between Guarantor and Lender regarding the subject matter hereof and supersedes all prior written and oral agreements and understandings, if any, regarding same; provided, however, this Guaranty is in addition to and does not replace, cancel, modify or affect any other guaranty of Guarantor now or hereafter held by Lender that related to Borrower and different indebtedness.

28.    GOVERNING LAW AND VENUE.   THIS GUARANTY IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN MONTGOMERY COUNTY, TEXAS AND THE LAWS (EXCLUDING CHOICE OF LAW PROVISIONS) OF SUCH STATE SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS GUARANTY, EXCEPT TO THE EXTENT FEDERAL LAWS OTHERWISE GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF ALL OR ANY PART OF THIS GUARANTY.   ALL LEGAL ACTIONS RELATED TO THIS GUARANTY SHALL BE BROUGHT IN THE APPROPRIATE COURT OF LAW LOCATED IN MONTGOMERY COUNTY, TEXAS, TO THE EXCLUSION OF ALL OTHER VENUES.

1776540 v3 (73825.00002.000)

BN 11974323v1

29.    WAIVER OF RIGHT TO JURY.  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY BORROWER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS.

30.    NO ORAL AGREEMENTS.  THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Signature Page Follows]

1776540 v3 (73825.00002.000)

BN 11974323v1

EXECUTED as of the date first above written.

GUARANTOR:

_____

PAT CAIN, individually

1776540 v3 (73825.00002.000)

BN 11974323v1

# EXHIBIT "4"

EXHIBIT B PAGE 000126

# COMMERCIAL DEED OF TRUST

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from this instrument before it is filed for record in the public records: your Social Security number or your driver's license number.**

| | |
|---|---|
| Date: | _____ __, 2012 |
| Grantor: | LCV Properties, LLC, a Texas Limited Liability Company |
| Grantor's Mailing Address (including county): | 1875 Century Park East, Suite 700 Los Angeles, California 90067 |
| Trustee: | Peter Graf |
| Trustee's Mailing Address (including county): | 2626 Howell Street, 10th Floor Dallas, TX 75204 |
| Lender: | David Seror in his capacity as Chapter 7 Trustee of Double S Development, LLC Bankruptcy Estate, pending as Case No. 1:09:bk-12032 MT in the Unites States Bankruptcy Court for the Central District of California. |
| Lender's Mailing Address (including county): | Ezra Brutzkus Gubner, LLP, 21650 Oxnard St Ste 500, Woodland Hills, CA 91367 |

Obligation

Note(s)

Date: _____ ___, 2012

Original principal amount: $670,950.00

Borrower:     LCV Properties, LLC, a Texas Limited Liability Company

BN 11974581v1

Lender:        David Seror in his capacity as Chapter 7 Trustee of Double S
               Development, LLC Bankruptcy Estate, pending as Case No.
               1:09-bk-12032 MT in the Unites States Bankruptcy Court for the
               Central District of California.


Maturity date: _____ ___, 2012


Other Debt: Property (including any improvements): None.


Prior Lien(s) (including recording information):    Restrictions recorded in the real property records
of Montgomery County, Texas.


Other Exceptions to Conveyance and Warranty:    Restrictions recorded in the real property records
of Montgomery County, Texas.


For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in
trust. Grantor warrants and agrees to defend the title to the Property, subject only to the Other Exceptions
to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed
of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

### Clauses and Covenants

**A. Grantor's Obligations**

Grantor agrees to—

1.    keep the Property in good repair and condition;
2.    pay all current taxes and assessments on the Property and cure any delinquency in
      property taxes on or before January 31, 2013;
3.    defend title to the Property subject to the Other Exceptions to Conveyance and Warranty
      and preserve the lien's priority as it is established in this deed of trust;
4.    obey all laws, ordinances, and restrictive covenants applicable to the Property;
5.    keep any buildings occupied as required by the Required Insurance Coverages;
6.    notify Lender of any change of address.

**B. Lender's Rights**

1.    Lender may appoint in writing a substitute trustee, succeeding to all rights and
      responsibilities of Trustee.
2.    If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender
      is subrogated to all the rights and liens of the holders of any debt so paid.
3.    Notwithstanding the terms of the Note to the contrary, and unless applicable law
      prohibits, all payments received by Lender from Grantor with respect to the Obligation
      or this deed of trust may, at Lender's discretion, be applied first to amounts payable
      under this deed of trust and then to amounts due and payable to Lender with respect to
      the Obligation, to be applied to late charges, principal, or interest in the order Lender in
      its discretion determines.
4.    If Grantor fails to perform any of Grantor's obligations, Lender may perform those

BN 11974581v1

obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will also be secured by this deed of trust.

5. If there is a default on the Obligation or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, then Lender may—

    a. declare the unpaid principal balance and earned interest on the Obligation immediately due and payable;

    b. direct Trustee to foreclose this lien, in which case notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

    c. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

6. Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

## C. Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will—

1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2. sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3. from the proceeds of the sale, pay, in this order—

    a. expenses of foreclosure, including a reasonable fee to Trustee;

    b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c. any amounts required by law to be paid before payment to Grantor; and

    d. to Grantor, any balance; and

4. be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust or the power of sale created herein, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## D. General Provisions

1. If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2. Recitals in any trustee's deed conveying the Property will be presumed to be true.

3. Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4. This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5. If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6. Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation,

and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.      Assignment of Rents.

     a.      Grantor hereby irrevocably, presently and unconditionally assigns to Lender all rents, royalties, issues, profits, revenue, income, accounts, proceeds and other benefits of the Property, whether now due, past due or to become due (some or all collectively, as the context may require, "Rents") as security for the performance of the Obligation, it being the intention of Grantor and Lender that this conveyance be unconditional, presently and immediately effective.   Lender shall have all rights, privileges, and benefits available to a lender under Chapter 64 of the Texas Property Code (the "Act").

     b.      Indemnification.  Failure or discontinuance by Lender, at any time or from time to time, to collect Rents shall not in any manner impair the subsequent enforcement by Bank of the right, power and authority herein conferred upon Lender.

     c.      Reliance Upon Notice of Enforcement.  Lender may (in its sole discretion), upon the occurrence of an event of default, deliver a notice in substantially the form set forth in Section 64.056 of the Act sent by Lender or Trustee to a lessee demanding payment by the lessee to Lender of all unpaid accrued Rents and all unaccrued Rents as they accrue ("Notice of Enforcement").  All Notices of Enforcement shall be delivered to lessees in accordance with the Act.  Upon receipt from Lender of a Notice of Enforcement, each lessee is authorized and directed to pay directly to Lender all Rents thereafter accruing, and the receipt of Rents by Lender shall be a release of such lessee to the extent of all amounts so paid.  The receipt by a lessee of a Notice of Enforcement shall be sufficient authorization for such lessee to make all future payments of Rents directly to Lender and each such lessee shall be entitled to rely on the Notice of Enforcement and shall have no liability to Grantor for any Rents paid to Lender after receipt of the Notice of Enforcement.  Notwithstanding the provisions of Section 64.058 of the Act, Grantor agrees that Rents so received by Lender for any period prior to foreclosure under this Deed of Trust or acceptance of a deed in lieu of such foreclosure may be applied by Lender to the payment of the following (in such order and priority as Lender shall determine):   (a) all operating expenses of the Property; (b) all expenses incident to taking and retaining possession of the Property and/or collecting Rent as it becomes due and payable; and (c) the Obligation. The Obligation will not be reduced under this Section D.7(c) except to the extent, if any, that Lender actually receives and applies any Rents to the Obligation, it being recognized that there is no obligation by Lender to do

BN 11974581v1

so.  Grantor further acknowledges that Lender shall have no obligation to apply any Rents received by Lender toward the expenses of protecting or maintaining the Property.  Without impairing its rights hereunder, Lender may, at its option, at any time and from time to time, release to Grantor any Rents so received by Lender.  As between Grantor and Lender, and any person claiming through or under Grantor, other than any lessee who has not received a Notice of Enforcement, this assignment is intended to be unconditional, presently, and immediately effective.  The Notice of Enforcement is intended solely for the benefit of the lessees and shall never inure to the benefit of Grantor or any person claiming through or under Grantor, other than a lessee who has not received such Notice of Enforcement.  It shall never be necessary for Lender to institute legal proceedings of any kind whatsoever to enforce the provisions of this Deed of Trust with respect to Rents.  GRANTOR SHALL HAVE NO RIGHT OR CLAIM AGAINST ANY LESSEE FOR THE PAYMENT OF ANY RENTS TO LENDER HEREUNDER AND GRANTOR SHALL INDEMNIFY, DEFEND, AND HOLD FREE AND HARMLESS EACH LESSEE FROM AND AGAINST ALL LIABILITY, LOSS, COST, DAMAGE, OR EXPENSE SUFFERED OR INCURRED BY SUCH LESSEE BY REASON OF SUCH LESSEE'S COMPLIANCE WITH ANY NOTICE OF ENFORCEMENT

8.    Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.    Grantor shall not encumber the Property without Lender's prior written consent which may be granted or withheld by Lender in its sole and absolute discretion.

10    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

11.    Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon—

    a.    the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and

    b.    the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is—

    a.    a corporation, the dissolution of the corporation or the sale, pledge,

BN 11974581v1

encumbrance, or assignment of any shares of its stock;

b.   a limited liability company, the dissolution of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests;

c.   a general partnership or joint venture, the dissolution of the partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint venturer; or

d.   a limited partnership, (1) the dissolution of the partnership, (2) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (3) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (4) the withdrawal from or admission into it of any controlling limited partner or partners.

If granted, consent may be conditioned upon—

a.   the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and

b.   the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

12.   When the context requires, singular nouns and pronouns include the plural.

13.   The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

14.   This deed of trust binds, benefits, and may be enforced by the successors in interest and assignees of all parties.

15.   If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

16.   Grantor and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

17.   If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

18.   The term "Lender" includes any mortgage servicer for Lender.

19.   Grantor represents that this deed of trust and the Note are given for the following purposes:

DATED: July, __ 2012          LCV Properties, LLC, a Texas Limited Liability Company


                              By:_____

                                   Name: Josh Rothstein
                                   Title: Member


BN 11974581v1

By:_____
     Name: Ron Regwan
     Title: Member


By:_____
     Name: Stefan Pardoe
     Title: Member


By:_____
     Name: Pat Cain
     Title: Member

BN 11974581v1

# ALL PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA                              }
COUNTY OF _____} ss.


On _____ before me, _____,
personally appeared _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____                    (NOTARY SEAL)

BN 11974581v1

# EXHIBIT "5"

### Deed without Warranty

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from this instrument before it is filed for record in the public records: your Social Security number or your driver's license number.**

Date:                                    _____ __, 2012

Grantor:                                 David Seror in his capacity as Chapter 7 Trustee
                                         of Double S Development, LLC Bankruptcy
                                         Estate, pending as Case No. 1:09:bk-12032 MT
                                         in the Unites States Bankruptcy Court for the
                                         Central District of California.

Grantor's Mailing Address:               Ezra Brutzkus Gubner, LLP, 21650 Oxnard St
                                         Ste 500, Woodland Hills, Los Angeles County
                                         California 91367

Grantee:                                 LCV Properties, LLC

Grantee's Mailing Address:               1875 Century Park East, Suite 700
                                         Los Angeles, California 90067

Consideration:

Cash and a note of even date executed by Grantee and payable to the order of DAVID SEROR, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE DOUBLE S DEVELOPMENT, LLP BANKRUPTCY ESTATE, and his successors and assigns in the principal amount of _____($__). The note is secured by a first and superior vendor's lien and superior title retained in this deed and by a first-lien deed of trust of even date from Grantee to Peter Graf, trustee.

A note of even date executed by Grantee and payable to the order of The note is secured by a first and superior vendor's lien and superior title retained in this deed and by a first-lien deed of trust of even date from Grantee to Peter Graf, trustee.

Property (including any improvements):    See legal description attached as Exhibit "A"

Reservations from Conveyance:             None

Exceptions to Conveyance:

Restrictions recorded in the real property records of Montgomery County, Texas.

BN 11974145v1

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes, which Grantee assumes and agrees to pay and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes/but not subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantor assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever, without express or implied warranty. All warranties that might arise by common law as well as the warranties in section 5.023 of the Texas Property Code (or its successor) are excluded.

This conveyance is intended to include any property interests obtained by after-acquired title.

As a material part of the Consideration for this deed, Grantor and Grantee agree that Grantee is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Grantor that the Property has a particular financial value or is fit for a particular purpose. Grantee acknowledges and stipulates that Grantee is not relying on any representation, statement, or other assertion with respect to the Property condition but is relying on Grantee's examination of the Property. Grantee takes the Property with the express understanding and stipulation that there are no express or implied warranties.

When the context requires, singular nouns and pronouns include the plural.

_____

David Seror in his capacity as Chapter 7 Trustee of Double S Development, LLC Bankruptcy Estate, pending as Case No. 1:09:bk-12032 MT in the Unites States Bankruptcy Court for the Central District of California

BN 11974145v1

# EXHIBIT "A"

EXHIBIT B PAGE 000138

# EXHIBIT "A"

LOTS NINE (9), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), TWENTY-NINE (29), THIRTY-FIVE (35) AND THIRTY-SIX (36), IN BLOCK ONE (1), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), THREE (3), FOUR (4), FIVE (5), EIGHT (8), NINE (9), TEN (10), ELEVEN (11), TWELVE (12) AND THIRTEEN (13), IN BLOCK TWO (2), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TEN (10), FIFTEEN (15), SIXTEEN (16), SEVENTEEN (17), TWENTY-NINE (29), THIRTY-ONE (31), THIRTY-TWO (32), FORTY-FOUR (44) AND FORTY-FIVE (45) IN BLOCK THREE (3), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWENTY-FIVE (25), FORTY-SIX (46) AND FIFTY-THREE (53) IN BLOCK FOUR (4), OF LAKE CONROE VILLAGE, PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS SEVENTY-ONE (71), SEVENTY-TWO (72), SEVENTY-THREE (73), SEVENTY-FOUR (74), SEVENTY-FIVE (75), SEVENTY-SIX (76), SEVENTY-SEVEN (77) AND SEVENTY-EIGHT (78), IN BLOCK FIVE (5), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THIRTY (30), THIRTY-TWO (32) FIFTY-SIX (56), FIFTY-EIGHT (58) AND FIFTY-NINE (59), IN BLOCK SIX (6), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), THIRTY (30), THIRTY-ONE (31), THIRTY-THREE (33), THIRTY-SIX (36), THIRTY-SEVEN (37), FORTY-TWO (42), FORTY-THREE (43), FIFTY-ONE (51), FIFTY-THREE (53), FIFTY-FOUR (54), SIXTY (60), SIXTY-TWO (62), SIXTY-THREE (63), SIXTY-SIX (66), SIXTY-SEVEN (67), SEVENTY-SIX (76), SEVENTY-SEVEN (77), ONE HUNDRED FOUR (104), ONE HUNDRED FIVE (105), ONE HUNDRED SIX (106), ONE HUNDRED SEVEN (107); AND ONE HUNDRED ELEVEN (111), IN BLOCK SEVEN (7), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TEN (10), ELEVEN (11) AND TWELVE (12) IN BLOCK EIGHT (8), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), FOUR (4), FIVE (5), TWELVE (12), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-NINE (29), THIRTY (30), THIRTY-ONE (31), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-SIX (36), THIRTY-SEVEN (37), THIRTY-EIGHT (38), THIRTY-NINE (39), FORTY-ONE (41), FORTY-TWO (42), FORTY-FOUR (44), FORTY-FIVE (45), FORTY-EIGHT (48), FIFTY (50), FIFTY-ONE (51), FIFTY-TWO (52), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-FIVE (55), FIFTY-SIX (56), SIXTY-TWO (62), SIXTY-THREE (63), SIXTY-FOUR (64), SIXTY-FIVE (65), SIXTY-SIX (66), SIXTY-SEVEN (67), SIXTY-NINE (69), SEVENTY-SEVEN (77), EIGHTY-SIX (86), EIGHTY-SEVEN (87), EIGHTY-NINE (89), NINETY-SEVEN (97) AND NINETY-EIGHT (98), IN BLOCK NINE (9), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FIVE (5), NINE (9) AND SIXTEEN (16), IN BLOCK TEN (10), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), SIX (6), NINE (9), TEN (10), ELEVEN (11), SIXTY-TWO (62), SIXTY-THREE (63),

SIXTY-FOUR (64), SIXTY-FIVE (65), SIXTY-SIX (66) AND EIGHTY-FOUR (84) IN BLOCK ELEVEN (11), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWENTY-SEVEN (27), TWENTY-EIGHT (28), TWENTY-NINE (29), THIRTY-ONE (31), THIRTY-TWO (32), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-FIVE (35), THIRTY-SIX (36), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-FIVE (55), FIFTY-NINE (59), SIXTY-TWO (62), SIXTY-NINE (69), SEVENTY (70), SEVENTY-FOUR (74), SEVENTY-FIVE (75), SEVENTY-SIX (76), SEVENTY-SEVEN (77), SEVENTY-EIGHT (78), SEVENTY-NINE (79), EIGHTY (80), EIGHTY-ONE (81) AND EIGHTY-FIVE (85), IN BLOCK TWELVE (12), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FOUR (4), FIVE (5), SEVEN (7), EIGHT (8), TEN (10), ELEVEN (11), THIRTEEN (13), FIFTEEN (15), SIXTEEN (16), SEVENTEEN (17), EIGHTEEN (18), NINETEEN (19), TWENTY (20), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-EIGHT (28), TWENTY-NINE (29), THIRTY (30), THIRTY-ONE (31), THIRTY-TWO (32), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-FIVE (35), FORTY-FIVE (45), FORTY-SIX (46), FORTY-SEVEN (47), FORTY-EIGHT (48), FORTY-NINE (49), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-FIVE (55), FIFTY-SIX (56), FIFTY-NINE (59), SIXTY-THREE (63), SIXTY-SIX (66), SIXTY-SEVEN (67), SEVENTY-ONE (71), SEVENTY-TWO (72), SEVENTY-THREE (73) AND SEVENTY-FIVE (75), IN BLOCK THIRTEEN (13), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FIVE (5), SIX (6), EIGHT (8), SIXTEEN (16), SEVENTEEN (17), EIGHTEEN (18), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-SIX (26), SEVENTEEN (27), TWENTY-EIGHT (28), THIRTY (30), FORTY (40), FORTY-ONE (41), FORTY-THREE (43), FORTY-SIX (46), FIFTY-TWO (52), FIFTY-THREE (53), FIFTY-SIX (56), FIFTY-SEVEN (57), FIFTY-NINE (59), SIXTY (60), SIXTY-SIX (66), SIXTY-SEVEN (67), SIXTY-EIGHT (68), AND SIXTY-NINE (69), IN BLOCK FOURTEEN (14), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), FOUR (4), FIVE (5), SIX (6), SEVEN (7), NINE (9), TEN (10), FOURTEEN (14), FIFTEEN (15), SIXTEEN (16), TWENTY-SIX (26) AND TWENTY-SEVEN (27), IN BLOCK FIFTEEN (15), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), FIVE (5), SIX (6), SEVEN (7), NINE (9), THIRTEEN (13), SEVENTEEN (17), EIGHTEEN (18), NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), THIRTY-FIVE (35), THIRTY-SIX (36), THIRTY-SEVEN (37), FORTY (40), FORTY-TWO (42), FORTY-THREE (43), FORTY-FOUR (44), FORTY-FIVE (45), FORTY-SIX (46), FORTY-SEVEN (47), FORTY-EIGHT (48), FORTY-NINE (49), FIFTY (50), FIFTY-ONE (51), FIFTY-THREE (53), FIFTY-FOUR (54), FIFTY-SIX (56), FIFTY-SEVEN (57), FIFTY-NINE (59), SIXTY-TWO (62), SIXTY-THREE (63), SIXTY-FIVE (65) AND SIXTY-SEVEN (67), IN BLOCK SIXTEEN (16), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THREE (3), SIXTEEN (16) AND SIXTY-FOUR (64) IN BLOCK SEVENTEEN (17), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), THREE (3), FOUR (4), FIVE (5), NINE (9), ELEVEN (11), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY (24), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), THIRTY (30), THIRTY-SIX (36), FORTY-SIX (46), FORTY-SEVEN (47), FIFTY-NINE (59), SIXTY-FOUR (64), SEVENTY-ONE (71) AND SEVENTY-THREE (73), IN BLOCK TWENTY (20), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS ONE (1), TWO (2), THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), NINE (9) AND TEN (10), IN BLOCK TWENTY-ONE (21), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), NINE (9), SIXTEEN (16), TWENTY-NINE

(29), THIRTY (30), THIRTY-FOUR (34), THIRTY-NINE (39), FORTY-THREE (43), FORTY-SIX (46), FIFTY-TWO (52), FIFTY-SIX (56), FIFTY-SEVEN (57), FIFTY-EIGHT (58), FIFTY-NINE (59), SIXTY (60), SIXTY-ONE (61) AND SIXTY-TWO (62), IN BLOCK TWENTY-TWO (22), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), NINE (9), TEN (10), TWELVE (12), THIRTEEN (13), FIFTEEN (15), SEVENTEEN (17), EIGHTEEN (18), NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-EIGHT (28) AND TWENTY-NINE (29), IN BLOCK TWENTY-THREE (23), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), TWELVE (12), THIRTEEN (13), FOURTEEN (14), EIGHTEEN (18), NINETEEN (19), TWENTY (20) AND TWENTY-ONE (21), IN BLOCK TWENTY-FOUR (24), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), TEN (10), ELEVEN (11), TWELVE (12), SIXTEEN (16), EIGHTEEN (18), NINETEEN (19), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-EIGHT (28), TWENTY-NINE (29) AND SIXTY-NINE (69), IN BLOCK TWENTY-FIVE (25), AT LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26) AND TWENTY-SEVEN (27), IN BLOCK TWENTY-SIX (26), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS SIX (6), SEVEN (7), EIGHT (8), ELEVEN (11), TWELVE (12), THIRTEEN (13), FOURTEEN (14), TWENTY-FIVE (25), TWENTY-SIX (26), TWENTY-SEVEN (27), TWENTY-NINE (29), THIRTY (30), THIRTY-ONE (31), THIRTY-TWO (32), THIRTY-THREE (33) AND THIRTY-SIX (36), IN BLOCK TWENTY-SEVEN (27), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOTS TWO (2), THREE (3), FIVE (5), FIFTEEN (15), SIXTEEN (16), SEVENTEEN (17), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23), TWENTY-FOUR (24), TWENTY-FIVE (25), TWENTY-SIX (26), THIRTY-TWO (32), THIRTY-THREE (33), THIRTY-FOUR (34), THIRTY-FIVE (35), THIRTY-SIX (36), THIRTY-EIGHT (38), FORTY-ONE (41) AND FORTY-TWO (42), IN BLOCK TWENTY-EIGHT (28), OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, SHEET 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

LOT 21, BLOCK 1, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOT 26, BLOCK 3, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOTS 42 AND 47, BLOCK 4, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 12, 29, 33 AND 55, BLOCK 6, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 48 AND 52, BLOCK 7, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 6, 11, 19, 21 AND 43, BLOCK 9, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOT 6, BLOCK 10, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 4, 5, 8, 12, 13, 15, 16, 17 AND 18, BLOCK 11, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOTS 4, 39, 56, 58, 71, 73, 82 AND 83, BLOCK 12, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 12 AND 74, BLOCK 13, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 44, 48, 54 AND 55, BLOCK 14, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 2, 3, 8 AND 13, BLOCK 15, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED ON PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 3, 10, 14, 15, 60, 61 AND 64, BLOCK 16, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS,

LOTS 12, 35, 38, 57, 61 AND 69, BLOCK 20, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 33, 38 AND 40, BLOCK 22, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 3, 16 AND 17, BLOCK 24, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOT 17, BLOCK 25, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

LOTS 1, 6, 7, 14 AND 18, BLOCK 28, OF LAKE CONROE VILLAGE, AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET F, PAGE 6B, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

Note: The Company is prohibited from insuring the area or quantity of the land described herein. Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.